Peter Strojnik, 6464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-297-3019
Facsimile: 602-297-3176
E-mail: Strojnik@aol.com
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Sky Land Investments, LLC, A Nevada Limited Liability Company <br><br> Plaintiff, <br><br> vs. <br><br> CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer, <br><br> Defendants. | ) NO. <br> ) <br> ) <br> ) **COMPLAINT** <br> ) <br> ) Declaratory Judgment (28 U.S.C. § 2201) <br> ) Declaratory Judgment (12 A.R.S. § 1831) <br> ) Negligence <br> ) Breach of Covenant of Good Faith and Fair <br> ) Dealing <br> ) <br> ) **DEMAND FOR TRIAL BY JURY** <br> ) |

## THE PARTIES, JURISDICTION AND VENUE

1.  Plaintiff Sky Land Investments, LLC is a Nevada limited liability company.

2.  Chicago Title Insurance Company is a Missouri corporation in the business of insuring titles and mortgages in various jurisdictions in the United States.

3.  The amount of controversy exceeds $75,000.00.

4.  The United States District Court of the State of Arizona has jurisdiction over this matter by virtue of 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §1332 (diversity of citizenship).

5.  Venue is proper pursuant to 28 U.S.C. 1391 for the reason that Defendant Corporation is subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

6.  On May 25, 2005, Defendant issued a policy of title insurance insuring certain mortgage commonly referred to as the "Mocco Mortgage" under Chicago Title Policy Number 72107-2576598 ("Title Policy") (Exhibit 1)

7.  Schedule A describes the "insured mortgage and assignments thereof…as":

> Mortgage made by Lorraine Mocco, to First Connecticut Consulting Group, Inc. dated September 26, 1996, and recorded in the Somerset County Clerk/Register's Office in Mortgage Book 2693, Page 865 in the amount of $2,000,000.00. Said mortgage was amended and restated by two certain instruments both dated September 25, 1996 and recorded in Book 2699 Page 442 and Boo9k 2702 Page 339 of said records. Said mortgage was part of an Asset Purchase Agreement pursuant to Federal Bankruptcy Court approved action, in which said interest went to SWJ Holding, LLC. Said SWJ Holdings LLC assigned said mortgage, among others, to Cobra/Venture Equities, LLC. Said Cobra/Venture Entities, LLC subsequently assigned their interest in said mortgage to said Advertising Management and Consulting Services, Inc. Said Advertising Management and Consulting Services, Inc. finally assigned their interest in said mortgage to Sky Land Investment, LLC, a Nevada Limited Liability Company, which document in interest is the subject of this policy.

8.  The insuring clause provides insurance in the face amount of $2,000,000.00 against:

> Loss or damage…sustained or incurred by the insured by reason of:
>
> 1.  Title to the estate or interest described in Schedule A being vested other than as stated therein;
> 2.  Any defect in or lien or encumbrance on the title;
> 3.  Unmarketability of title;
> 4.  …
> 5.  The invalidity or unenforceability of the lien of the insured mortgage upon the title;
> 6.  The priority of any lien or encumbrance over the lien of the insured mortgage;
> 7.  Lack of priority of lien…
> 8.  The validity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment as shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

9.  The term "unmarketability of title" is defined in the Title Policy as:

> [a]n alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest

described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

10. The endorsement to Schedule B, Section II, declares:

> This company has verified, through its due diligence, a) That the amount currently due and owing upon the subject mortgage, herein stated, with respect to the subject premises noted in this commitment is no less than $3,000,000.00; b) that the amount due and owing upon the subject mortgage constitutes a valid and enforceable first lien against the obligations of the mortgagor; and c) that the mortgagor has no apparent, enforceable defenses, offsets and or counterclaims with respect to the obligation secured by the subject mortgage.
>
> ***
>
> This endorsement is made a part of said policy or certificate and is subject to the schedules, conditions and stipulations therein, except as modified by the provisions hereof.

11. Under New Jersey law, the Mocco Mortgage is not marketable[1].

12. Defendant's agent, to wit, one Michael O'Donnell, Esq. of the firm Riker, Danzig, Scherer, Hyland & Perretti LLP, advised Plaintiff on or about December 15, 2006, that (i) EMP Whole Loan I, LLC holds a claim adverse to the Plaintiff with respect to the Mocco Mortgage; and (ii) That an adverse claim is being asserted in *Titan Management, L.P. v. James Licata*, Cause No. ESX-C-280-98 (Exhibit 2)

13. Chicago Title's knowledge regarding these adverse interests was confirmed by Vincent J. Sharkey, Jr., Esq., Riker, Danzig, Scherer, Hyland & Perretti LLP in his e-mail dated December 26, 2006:

---

[1] Under New Jersey law, the term "marketable title" has been defined as a title free from reasonable doubt, that which a reasonable buyer would be willing to accept, or which is "salable." *Bier v. Walbaum*, 102 N.J.L. 368, 370 (E. & A. 1926). Stated differently, title is not marketable where there is a doubt concerning either the facts or law on which it is founded. *Webster-Art Strength B. & L. Ass'n v. Armando*, 128 N.J. Eq. 219 (Ch. 1940) If it is reasonably probable that the purchaser would be exposed to litigation not of a frivolous nature concerning the title, or would have to bring an action to quiet title, then specific performance would be denied to the prospective seller and the title would be considered unmarketable. *Tillotson v. Gesner*, 33 N.J. Eq. 313, 326-327 (E. & A. 1880); *Gaub v. Nassau Homes, Inc.*, 53 N.J. Super. 209, 223 (App. Div. 1958).

As Mike has also discussed with you, however, facts have been brought to the attention of Chicago Title which might affect the validity, enforceability and/or priority of your mortgage, based upon matters alleged and pending in the consolidated New Jersey actions and bankruptcy action referred to in Mike's previous correspondence to you.

Exhibit 3.

14. Chicago Title's own investigations revealed that the Mocco Mortgage is vested other than as stated in the Policy; that it contains defects in title; and that it is unmarketable, invalid and unenforceable.

15. In its endorsement dated May 25, 2005, Chicago Title "verified, through it due diligence … that the amount currently due and owing upon the subject mortgage, herein stated, with respect to the subject premises noted in this commitment is no less than $3,000,000.00".

16. Defendant's due diligence verification is defective.

17. On July 2, 2007, Plaintiff made a demand on Defendant to indemnify Plaintiff under the Title Policy. (Exhibit 4)

18. Defendant refused to make payment pursuant to the terms of the Policy. (Exhibit 5)

19. Plaintiff has complied with all conditions precedent to filing this action.

## COUNT ONE
(Declaratory Judgment 28 U.S.C. 2201)

20. Plaintiff realleges all allegations heretofore set forth.

21. There is actual controversy between Plaintiff and Defendant regarding Defendant's obligations pursuant to the Title Policy: Plaintiff claims that Defendant must make a payment in the amount of $2,000,000 to Plaintiff, while Defendant claims that the claim is premature.

-4-

22. Defendant has breached the terms of the Title Policy, damaging Plaintiff in an amount no less than $2,000,000.00

23. This action arises out of contract, entitling the prevailing party an award of costs and attorney's fees.

24. The damages are in the amount certain, entitling Plaintiff to and pre and post judgment interest at the highest legal rate of no less than 10% per annum.

25. WHEREFORE, Plaintiff prays for judgment as follows:

      a.  For a declaration that the Title Policy requires payment to Plaintiff in the amount of no less than $2,000,000.00; and

      b.  For damages in the amount of no less than $2,000,000.00; and

      c.  For pre judgment and post judgment interest thereon at the highest legal rate but in no event less than 10% per annum; and

      d.  For costs and attorney's fees; and

      e.  For such other and further relief as the Court may deem just and proper.

## COUNT TWO
(Declaratory Judgment 12 A.R.S. § 1831)

26. Plaintiff realleges all allegations heretofore set forth.

27. There is actual controversy between Plaintiff and Defendant regarding Defendant's obligations pursuant to the Title Policy: Plaintiff claims that Defendant must make a payment in the amount of $2,000,000 to Plaintiff, while Defendant claims that the claim is premature.

28. Defendant has breached the terms of the Title Policy, damaging Plaintiff in an amount no less than $2,000,000.00

29. This action arises out of contract, entitling the prevailing party an award of costs and attorney's fees.

30. The damages are in the amount certain, entitling Plaintiff to and pre and post judgment interest at the highest legal rate of no less than 10% per annum.

31. WHEREFORE, Plaintiff prays for judgment as follows:

    a.  For a declaration that the Title Policy requires payment to Plaintiff in the amount of no less than $2,000,000.00; and

    b.  For damages in the amount of no less than $2,000,000.00; and

    c.  For pre judgment and post judgment interest thereon at the highest legal rate but in no event less than 10% per annum; and

    d.  For costs and attorney's fees; and

    e.  For such other and further relief as the Court may deem just and proper.

## COUNT THREE
### (Negligence)

32. Plaintiff realleges all allegations heretofore set forth.

33. Defendant conducted due diligence pursuant to Schedule B, Section II of the Title Policy in which Defendant stated, warranted and affirmed to Plaintiff that:

> [Defendant] has verified, through its due diligence, a) That the amount currently due and owing upon the subject mortgage, herein stated, with respect to the subject premises noted in this commitment is no less than $3,000,000.00; b) that the amount due and owing upon the subject mortgage constitutes a valid and enforceable first lien against the obligations of the mortgagor; and c) that the mortgagor has no apparent, enforceable defenses, offsets and or counterclaims with respect to the obligation secured by the subject mortgage.

***

This endorsement is made a part of said policy or certificate and is subject to the schedules, conditions and stipulations therein, except as modified by the provisions hereof.

34. Defendant's performance of due diligence was negligent.

35. Plaintiff has been proximately damaged by Defendant's negligent conduct of due diligence in the amount of $3,000,000.00

36. This action arises out of contract, entitling the prevailing party an award of costs and attorney's fees.

37. The damages are in the amount certain, entitling Plaintiff to and pre and post judgment interest at the highest legal rate of no less than 10% per annum.

38. WHEREFORE, Plaintiff prays for judgment as follows:

    a. For compensatory damages in the amount of $3,000,000.00; and

    b. For pre judgment and post judgment interest thereon at the highest legal rate but in no event less than 10% per annum; and

    c. For costs and attorney's fees; and

    d. For such other and further relief as the Court may deem just and proper.

## COUNT FOUR
(Breach of Covenant of Good Faith and Fair Dealing)

39. Plaintiff realleges all allegations heretofore set forth.

40. The Title Policy included an implied covenant that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract".

41. Defendant breached the covenant of good faith and fair dealing in the following respects:

    a.  It failed to conduct proper due diligence as promised;

    b.  It failed to deal with Plaintiff fairly; and

    c.  It destroyed or injured the right of the Plaintiff to receive the fruits of the contract.

42. Plaintiff has been damaged by Defendant's breach of the implied covenant of good faith and fair dealing.

43. The conduct by Defendant is especially egregious, entitling Plaintiff to an award of punitive damages sufficient to deter this Defendant and others in Defendant's position from engaging in like conduct in the future, but in no event less than $5,000,000.00.

44. WHEREFORE, Plaintiff prays for judgment as follows:

    a.  For compensatory damages in the amount of $3,000,000.00; and

    b.  For punitive damages in the amount of no less than $5,000,000.00; and

    c.  For pre judgment and post judgment interest thereon at the highest legal rate but in no event less than 10% per annum; and

    d.  For costs and attorney's fees; and

    e.  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on issues triable by a jury.

RESPECTFULLY submitted this 10th day of July, 2007.

Peter Strojnik
Attorney for Plaintiff