**Quarles & Brady** LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
TELEPHONE 602.229.5200

Attorneys for Defendant
Chicago Title Insurance Company

John Maston O'Neal (#015945)
joneal@quarles.com

Nicole M. Goodwin (#024593)
ngoodwin@quarles.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SKY LAND INVESTMENTS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br>vs.<br><br>CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer,<br><br>Defendant. | **NO. CV07-01328-PHX-SRB**<br><br>**DEFENDANT'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**<br>**AND**<br>**ALTERNATIVE MOTION TO DISMISS FOR FORUM NON CONVENIENS**<br><br>[Assigned to the Hon. Susan R. Bolton]<br>(Oral Argument Requested) |

Defendant Chicago Title Insurance Company ("Chicago Title") moves the Court pursuant to 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the District of New Jersey.  Alternatively, Chicago Title moves the Court to dismiss this case on *forum non conviens* grounds.  This Motion is supported by the attached Memorandum of Points and Authorities and the Declarations of Vincent J. Sharkey, Jr. ("Sharkey Decl."), David Cohn ("Cohn Decl."), Michael R. O'Donnell ("O'Donnell Decl.") attached as Exhibits "1", "2", and "3" respectively.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION.**

This diversity action arises out of a title insurance coverage dispute between Plaintiff Sky Land Investments, LLC ("Sky Land") and Defendant Chicago Title Insurance Company ("Chicago Title").  Transfer of this action to the District of New Jersey is warranted for the convenience of the parties and witnesses and in the interest of justice.  The insurance policy at issue was negotiated, prepared, executed and issued in New Jersey.  The insured interest, a mortgage encumbering New Jersey property, was executed and recorded in New Jersey and is governed by New Jersey law.  And, the alleged adverse interest, which forms the basis for Sky Land's coverage dispute, is being asserted in litigation pending in New Jersey state court.  New Jersey law will govern the interpretation of the insurance policy at issue.  Almost all of the witnesses reside in New Jersey.  In sum, neither the insurance policy at issue, nor the insured interest or the vast majority of witnesses to the underlying events have any substantial nexus to Arizona.

**II.   FACTUAL BACKGROUND.**

**A.   The Parties.**

This action for coverage arises under a title insurance loan policy provided by Chicago Title to Sky Land (the "Loan Policy").  [See Complt. ¶ 6, 21-24.]  Chicago Title is a Missouri corporation with a principal place of business in Chicago, Illinois.  [See Sharkey Decl., Exh. "1" at ¶ 2]  Chicago Title is a title insurer that conducts business and insures property located in New Jersey and maintains offices, employs personnel and has appointed agents to act on its behalf in New Jersey.  [See id.]  The Loan Policy was issued by Horizon Title Agency, Inc. ("Horizon").  Horizon is a New Jersey corporation and a licensed New Jersey title agent.  [See Cohn Decl., Exh. "2" at ¶ 2.]  Virtually all of Horizon's business is conducted in New Jersey and relates to property situated in New Jersey.  [See id.]  All of Horizon's employees live in New Jersey or New York.  [See id.]

Its only office is in New Jersey.

Sky Land is a Nevada limited liability company.  [See Complt. ¶ 1.]  Sky Land alleges that it is subject to personal jurisdiction in Arizona.  [See Complt. ¶ 5.]  Searches of reputable on-line databases, including those maintained by Lexis-Nexis, ChoicePoint and the Arizona Corporation Commission, do not reveal an Arizona address or phone number for Sky Land.  [See O'Donnell Decl., Exh. "3" at ¶ 2.]

### B.     The Mortgage and Assignments.

On September 26, 1996, Lorraine Mocco ("Mocco") gave First Connecticut Consulting Group, Inc. ("FCCG") a mortgage (the "Mortgage") on the property located at 41 & 81 Clark Road, Bernardsville, New Jersey (the "N.J. Property" or "Subject Property"), and recorded in the Somerset County, New Jersey Clerk/Register's Office in Mortgage Book 2693, Page 865.  [See Complt. ¶ 6-7; O'Donnell Decl., Exh. "3" at ¶ 3.]  Mocco is a New Jersey resident.  [See O'Donnell Decl., Exh. "3" at ¶ 4.]  FCCG is a Connecticut corporation.  [See Complt. ¶ 6-7.]  The Mortgage was executed in New Jersey.  [See O'Donnell Decl., Exh. "B" thereto.]  The Mortgage was amended and restated by two instruments, dated September 25, 1996, and recorded in Book 2699 Page 442 and Book 2702 Page 339 in the Somerset County, New Jersey Clerk/Register's Office.  [See Complt. ¶ 7; O'Donnell Decl., Exh. "3" at ¶ 5.]  The instruments were executed in New Jersey.  [See O'Donnell Decl., Exh. "3".]  The interpretation and enforcement of the Mortgage is governed by New Jersey law.  [See id., Exh. "D and E" thereto, pg. 28.]  On September 26, 1996, FCCG assigned the Mortgage to EMP Whole Loan I, LLC ("EMP").  [See O'Donnell Decl., Exh. "3" at ¶ 7.]  FCCG's interest in the Mortgage subsequently went to SWJ Holdings, LLC ("SWJ") as part of an asset purchase agreement pursuant to a Federal Bankruptcy Court approved action.  [See Complt. ¶ 7.]  SWJ is a Delaware limited liability company with an address of 219 E 69th St., Apt. 4-H,

New York, New York.  [See O'Donnell Decl., Exh. "3" at ¶ 8.]  SWJ's principals include Cobra/Ventura Equities and Stephen Podell ("Podell").  [See id., Exh. "I" thereto.] Cobra/Ventura Equities, LLC ("Cobra/Ventura") is a New Jersey limited liability company with a principle place of business at 35 Birch Run Avenue, Denville, New Jersey.  [See id., Exh. "J" thereto.]  Cobra/Ventura's principal, William Mournes ("Mournes"), resides at the same address.  [See id., Exh. "K" thereto.]

SWJ subsequently assigned the Mortgage to Cobra/Ventura on May 25, 2005.  [See Complt. ¶ 7; O'Donnell Decl., Exh. "3" at ¶ 12.]  The assignment was executed and recorded in New Jersey.  [See O'Donnell Decl., Exh. "L" thereto.]  On May 25, 2005, Cobra/Ventura then assigned the Mortgage to Advertising Management Consulting, Inc. ("Advertising Management").  [See id., Exh. "M" thereto.]  Advertising Management is an Arizona corporation.  [See id., Exh. "N" thereto.]  Its principal is Greg Crane, who is also the principal of Sky Land.  [See id.]  The assignment was recorded in the Somerset County, New Jersey Clerk/Register's Office on November 14, 2005.  [See id., Exh. "M" thereto.]  On November 16, 2005, Advertising Management assigned its interest in the Mortgage to Sky Land, a Nevada Corporation.  [See id., Exh. "3" at ¶ 15-16".]

### C. **The Loan Policy.**

In connection with the assignment of the Mortgage to Advertising Management, Horizon Title Agency issued the Loan Policy in the amount of $2 million on May 25, 2005.  [See Cohn Decl., Exh. "2" at ¶ 3.]  The Loan Policy was initially negotiated by Horizon personnel, Mournes and Podell – all of whom reside and work in the New York/New Jersey metropolitan area.  [See Cohn Decl., Exh. "2" at ¶ 5.]  These negotiations took place over the phone and in person at Horizon's office in New Jersey. [See Cohn Decl., Exh. "2" at ¶ 5.]  Horizon personnel exchanged e-mails and phone calls from their New Jersey office with Greg Crane, acting on behalf of Advertising

Management. [See Cohn Decl., Exh. "2" at ¶ 6.]  In short, the Loan Policy was prepared, executed and issued at Horizon's office.  [See Cohn Decl., Exh. "2" at ¶ 7.]

In connection with assignment of Advertising Management's interest in the mortgages to Sky Land, on May 23, 2006, Horizon issued an endorsement that amended the Loan Policy to name Sky Land as the insured (the "Endorsement").  [See Cohn Decl., Exh. "2" at ¶ 8.]  Negotiations on the Endorsement took place in a face-to-face meeting between Greg Crane and Horizon personnel at Horizon's New Jersey office.  [See Cohn Decl., Exh. "2" at ¶ 9.]  Crane also had communications with Horizon in New Jersey regarding the Endorsement via phone and via e-mail.  [See Cohn Decl., Exh. "2" at ¶ 9.] The Endorsement was prepared, executed and issued at Horizon's New Jersey office.  [See Cohn Decl., Exh. "2" at ¶ 10.]

At no time did Horizon or Chicago Title ever take any action – or intend to take any action – with respect to the Loan Policy outside of New Jersey.  [See Cohn Decl., Exh. "2" at ¶ 11.]  All of the documents relevant to this matter in Horizon's and Chicago Title's possession are located in New Jersey.  [See Cohn Decl., Exh. "2" at ¶ 12; Sharkey Decl., Exh. "1" at ¶ 4.]

### D. The Alleged Adverse Interest That Forms The Basis of Sky Land's Claim.

In mid-December 2006, Chicago Title notified Sky Land that claims concerning the Mortgage appear to be made by both EMP and Mocco in matters that were consolidated in the New Jersey Superior Court, Chancery Division, Essex County.  [See O'Donnell Decl., Exh. "3" at ¶ 18.][1]  The claims of Mocco and EMP regarding the Mortgage have not been resolved, and Sky Land, whose assignment of the Mortgage has

---

[1] Although Sky Land was not named as a defendant in that litigation, Chicago Title requested permission from Sky Land to contact the parties in the litigation to ascertain whether their claims to the Mortgage were adverse to that of Sky Land. [See O'Donnell Decl., Exh. "3" at ¶ 19.] Sky Land refused to give Chicago Title permission to make these necessary inquiries, however. [See O'Donnell Decl., Exh. "3" at ¶ 19.]

been recorded, has not been named as a defendant in the litigation. [See Complt. ¶ 12.]

### III. TRANSFER TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY IS NECESSARY FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES AND IS IN THE INTEREST OF JUSTICE.

28 U.S.C. § 1404(a) provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision of whether to transfer a case is within the broad discretion of the Court and requires an "individualized, case-by-case consideration of convenience and fairness." Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). Two requirements must be met to warrant transfer under 28 U.S.C. § 1404(a). First, venue and jurisdiction must be appropriate in the proposed transferee district such that the suit "might have been brought" in that district. Hoffman v. Blaski, 363 U.S. 335, 344 (1960). Second, transfer must be for the convenience of the parties and witnesses and in the interest of justice. Id.; Jones, 211 F.3d at 499; Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).

#### A. The District of New Jersey is an Adequate and Proper Alternative Forum In Which This Action Might Have Been Brought.

Establishing the existence of an alternative forum in which an action "might have been brought" is a "test easy to pass." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1178 (9th Cir. 2006). "Generally, an alternative forum is available where the defendant is amenable to service of process and the forum provides 'some remedy' for the wrong at issue." Id. (quotation omitted). This lawsuit obviously could have been commenced in the District of New Jersey. Venue is proper in that District under 28 U.S.C. § 1391(a)(1) because Chicago Title resided in New Jersey at the time the suit was instituted, as evident by the fact that it maintained offices and did business in New

Jersey at that time. [<u>See</u> Sharkey Decl., Exh. "1" at ¶ 2; <u>see also</u> 28 U.S.C. § 1391(c) ("a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.")] Venue in New Jersey is also warranted under 28 U.S.C. § 1391(a)(2) because virtually all of the events or omissions giving rise to Sky Land's claim occurred in New Jersey, including the negotiation, preparation and issuance of the policy, the assertion of the alleged adverse interests in New Jersey state court and the execution and recording of the Mortgage. [<u>See</u> Complt. ¶ 12; Cohn Decl., Exh. "2" at ¶ 9-10.] It is also clear that Sky Land could seek the same type of remedies in the District of New Jersey that it seeks in the District of Arizona.

### B.  The Convenience of the Parties and Witnesses and the Interest of Justice Favor Transfer.

Since this suit could have been brought initially in New Jersey, a transfer pursuant to 28 U.S.C. § 1404(a) is appropriate upon a finding that such transfer would be in the interest of justice. <u>Jones</u>, 211 F.3d at 499; <u>Hatch</u>, 758 F.2d at 414 (9th Cir. 1985). In <u>Jones v. GNC Franchising, Inc.</u>, the Ninth Circuit set forth the following factors relevant to the determination of whether a 28 U.S.C. § 1404 transfer comports with the interest of justice (the "Jones Factors"):

(1) The location where the relevant agreements were negotiated and executed;
(2) The state most familiar with the governing law;
(3) The plaintiff's choice of forum;
(4) The respective parties' contacts with the forum;
(5) The contacts relating to the plaintiff's cause of action in the chosen forum;
(6) The differences in the costs of litigation in the two forums;
(7) The availability of compulsory process to compel attendance of

unwilling non-party witnesses; and

(8) The ease of access to sources of proof.

Jones, 211 F.3d at 498-99; Les Schwimley Motors, Inc. v. Chrysler Motors Corp., 270 F. Supp. 418 (E.D. Cal. 1967).

### 1. **The Location Where the Relevant Agreement was Negotiated and Executed Favors Transfer to New Jersey.**

The first of the Jones Factors considers the state in which the relevant contract was negotiated and executed. Jones, 211 F.3d at 489-99. The contractual document at the center of this matter – the Loan Policy, as modified by the Endorsement – was prepared, executed and issued by Horizon personnel in Horizon's New Jersey office. [See Cohn Decl., Exh. "2" at ¶ 7, 10 (indicating that the Loan Policy was issued by Horizon from its New Jersey address).] In addition, the document purportedly insured by the Loan Policy, and which Sky Land now claims is unmarketable, i.e., the Mortgage, was executed and recorded in New Jersey, along with its assignments. [See O'Donnell Decl., Exh. "B" thereto.]

Similarly, most of the substantive negotiations regarding the initial issuance of the Loan Policy to Advertising Management took place between Horizon personnel and Cobra/Ventura personnel in New Jersey. [See Cohn Decl., Exh. "2" at ¶ 5.] Face-to-face negotiations between Crane and Horizon personnel regarding the language of the Endorsement transferring the Loan Policy to Sky Land also took place in New Jersey at Horizon's office. [See Cohn Decl., Exh. "2" at ¶ 9.] All of Horizon's e-mail and phone communications originated and/or took place in New Jersey. [See Cohn Decl., Exh. "2" at ¶ 9.] At no time did Horizon or Chicago Title personnel ever take any action – or intend to take any action – with respect to the Loan Policy outside of New Jersey. [See Cohn Decl., Exh. "2" at ¶ 11.]

2. **New Jersey Courts are More Familiar with the Governing Law.**

The second Jones Factor considers which state is most familiar with the governing law. <u>Jones</u>, 211 F.3d at 498-99. Sky Land conceded the applicability of New Jersey law by alleging that: "Under New Jersey law, the Mocco Mortgage is not marketable." [<u>See</u> Complt. ¶ 11; FN 1 (citing New Jersey case law).] Thus, there can be little question that the U.S. District Court for the District of New Jersey is more familiar with the governing law than an out-of-state Court. <u>Rhodes v. Barnett</u>, 117 F. Supp. 312, 316 (S.D.N.Y. 1953) (noting "there is at least some circumstantial probability that both counsel and court will exhibit more familiarity with the governing law" if the case is tried in the forum the laws of which govern the dispute).

Even if Sky Land had not conceded the applicability of New Jersey law, a choice of law analysis requires the same conclusion that New Jersey law governs this dispute. In suits arising under diversity jurisdiction the choice of law principles of the forum in which the case is situated – in this case Arizona – are applied. <u>Lange v. Penn Mutual Life Ins.</u>, 843 F.2d 1175, 1178 (9th Cir. 1988). Arizona uses the Restatement (Second) of Conflicts of Law ("Restatement") to determine the governing law of a case in the absences of an express contractual provision. <u>Beckler v. State Farm Mut. Auto Ins. Co.</u>, 987 P.2d 768, 771-72 (Ariz. Ct. App. 1999).

Several separate provisions of the Restatement make clear that New Jersey law is to be applied to this lawsuit. Pursuant to Restatement §§ 235 and 228, the legal issues regarding the marketability of the Mortgage and the nature, extent and priority of Sky Land's interest in the Mortgage should be determined by New Jersey law. <u>See</u> Restatement § 235 ("The existence and extent of an equitable interest in land are determined by the law that would be applied by the courts of the situs."); Restatement § 228 ("Whether a mortgage creates an interest in land and the nature of the interest created are determined by the law that would be applied by the courts of the situs."). This

is because the property purportedly encumbered by the Mortgage is situated in New Jersey. [See O'Donnell Decl., Exh. "3" at ¶ 3.]

Restatement § 193 also suggests that New Jersey law should govern this coverage dispute. It states: "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk. . . ." Restatement § 193. While this provision does not specifically address title insurance, the principle it sets forth – that the laws of the state in which an insured's interest is located determines a party's rights under the insurance contract – applies with equal force to a title insurance loan policy. Because the Mortgage allegedly insured by the Loan Policy was recorded and encumbers property located in New Jersey, the dispute should be decided by New Jersey law. [See O'Donnell Decl., Exh. "3" at ¶ 3.]

Finally, in accord with Restatement § 188(1), New Jersey law should govern this dispute because New Jersey had the most significant relationship to the transaction and the parties. Aries v. Palmer Johnson, Inc., 735 P.2d 1373, 1380-81 (Ariz. Ct. App. 1978); Restatement § 188 ("The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties. . ."). New Jersey was the state in which the contractual document at issue – the Loan Policy as modified by the Endorsement – was prepared, executed and issued by Horizon, a licensed New Jersey title agent. [See Cohn Decl., Exh. "2" at ¶ 2, 7, 9.] The substantive negotiations regarding the Loan Policy took place in New Jersey. [See Cohn Decl., Exh. "2" at ¶ 5.] Moreover, the Loan Policy allegedly insures a mortgage that: (1) was executed in New Jersey (2) recorded in New Jersey; (3) is governed by New Jersey law; and (4) allegedly encumbers property located in New Jersey. [See O'Donnell Decl., Exh. "3" at ¶ 3.]

Finally still, the alleged adverse interest upon which Sky Land has based this lawsuit is a claim to the Mortgage that is being asserted in the Chancery Division of the New Jersey Superior Court. [See Complt. at ¶ 12.] Given these facts, the State of New Jersey has a strong public policy interest in ensuring that this suit is decided in a manner consistent with its established legal principles.

### 3. **Plaintiff's Choice of Forum Lacks Any Significant Connection to the Claims Alleged and is Outweighed By the Inconvenience to the Parties.**

The third Jones Factor is the plaintiff's choice of forum. Jones, 211 F.3d at 498-99. Although a plaintiff's choice of forum is a factor, less deference to the plaintiff is warranted where the forum lacks any "significant connection to the activities alleged in the complaint." Chrysler Capital Corp. v. Woehling, 663 F. Supp. 478, 482 (D. Del. 1987). Indeed, where "the operative facts have not occurred within the forum of the original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled to only minimal consideration." Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968). As noted above, not only is Sky Land not an Arizona corporation, but, more importantly, the operative facts in this case did not occur within Arizona. Arizona has no particular interest in the Loan Policy, Mortgage or N.J. Property. Pan American Bank of Miami v. Gully, 220 F. Supp. 405, 407 (W.D. Pa. 1963) (finding plaintiff's choice of forum was of little weight where the only contact was that one party was a citizen of the forum).

### 4. **There Are No Substantial Contacts With Arizona Relating to Plaintiff's Cause of Action or Chicago Title.**

The fourth and fifth Jones Factors consider which state bears more substantial contacts to the parties and to the causes of action at issue. Jones, 211 F.3d at 498-99. Taken together, the parties themselves – neither of which are Arizona corporations – bear

more substantial contact with New Jersey than with Arizona in connection with this matter. All of the individuals acting on behalf of Chicago Title in connection with this matter, including several Horizon personnel, reside and/or conduct business in New Jersey. [See Cohn Decl., Exh. "2" at ¶ 2.] Sky Land also has had contact with New Jersey because its principal, Crane, visited New Jersey on at least one occasion to discuss this matter. [See Cohn Decl., Exh. "2" at ¶ 9.] On the other hand, no Chicago Title or Horizon personnel involved with this matter reside or work in Arizona. [See Cohn Decl., Exh. "2" at ¶ 2.] In addition, numerous internet searches reveal that Sky Land itself does not maintain a formal place of business or presence in Arizona. [See O'Donnell Decl., Exh. "3" at ¶ 2.]

More importantly, the claims raised by Sky Land bear no substantial contact or nexus with Arizona. No meeting took place in Arizona; there is no disputed property in Arizona; and the contractual document at issue was not executed in Arizona. [See Cohn Decl., Exh. "2" at ¶ 9; O'Donnell Decl., Exh. "3" at ¶ 3.] Indeed, the only possible connections between the causes of action raised by Sky Land and Arizona are the facts that Advertising Management – Sky Land's predecessor-in-interest and not a party to this lawsuit – is an Arizona corporation and that Crane purportedly lives in Arizona.

> 5. **Litigating in Arizona Would be Costly and Inconvenient Due to the Non-Availability of Third Party Witnesses and the Difficulty in Accessing Sources of Proof Located in New York.**

The remaining Jones Factors consider the location of evidence, the cost of litigation and the availability of compulsory process. Jones, 211 F.3d at 498-99. Each of these factors similarly weigh in favor of transferring this litigation to New Jersey.

The bulk of the tangible evidence relevant to the issues raised in Sky Land's Complaint is located in New Jersey. For example, all of the documents relating to the Loan Policy and Endorsement maintained by Horizon and Chicago Title are located in

New Jersey. [See Cohn Decl., Exh. "2" at ¶ 12; Sharkey Decl., Exh. "1" at ¶ 4.] Moreover, the documents relating to Chicago Title's investigation of Sky Land's claim are located in New Jersey. [See O'Donnell Decl., Exh. "3" at ¶ 20.] Indeed, the relevant Mortgage and assignments were recorded in New Jersey. While discovery has not yet commenced in this action, Chicago Title also believes that the documents maintained by Cobra/Ventura, Mournes and Podell relating to the Loan Policy and the Mortgage are held in New Jersey or surrounding area. Similarly, Chicago Title believes that documents relating to the Mortgage given by New Jersey resident Lorraine Mocco are kept in New Jersey. Documents relating to the allegedly adverse claims are on file with the Chancery Division of the New Jersey Superior Court. Chicago Title believes that additional documents relating to the alleged adverse claims are maintained by the New Jersey attorneys representing Mocco and EMP. There is no basis to believe that Mournes, Podell, Mocco, EMP or Cobra/Ventura maintain relevant documents in Arizona.

Further, almost all of the potential witnesses in this case reside and/or work in the northern New Jersey metropolitan area. The following list of potential witnesses, their places of residence, and their relevant personal knowledge is instructive:

- Dino R. Cancellieri, in New Jersey. Horizon Title employee with general knowledge of the relevant transactions

- David Cohn, in New York. Horizon Title employee with knowledge of negotiation, drafting and execution of the Loan Policy and Endorsement.

- William Mournes, in New Jersey. Cobra/Ventura principal with knowledge of negotiation of Loan Policy and assignment of Mortgage to Advertising Management

- Lorraine Mocco, in New Jersey. Owner of subject property with knowledge of Initial Mortgage, Amended Mortgage and Second Amended Mortgage.

- Stephen Podell, in New York. Principal of SWJ with knowledge of assignment of Mortgage to Cobra/Ventura

- Greg Crane, in Arizona. Principal of Sky Land and Advertising Management with knowledge of assignment of Mortgage to those companies and the Loan Policy

As set forth above, at least five of the known potential witnesses reside in New Jersey or neighboring area. Each of these New Jersey witnesses has substantial personal knowledge relevant to the claims and defenses at issue. Only one potential witness, Greg Crane, is believed to live in Arizona.

Since live testimony is a primary reason underlying concerns regarding the convenience of witnesses, Sackett v. Denver & R.G.W.R. Co., 603 F. Supp. 260, 262 (D. Colo. 1985), a forum where non-party witnesses will fall within the court's subpoena power is favored. Commercial Solvents Corp. v. Liberty Mut. Ins. Co., 371 F. Supp. 247, 250 (S.D.N.Y. 1974) ("Requiring a party to try his case with depositions because the place of trial is such as to prevent the party from compelling attendance of material witnesses is unacceptable when the case could be transferred to a district where attendance could be compelled and which would be convenient in other respects for both parties."). The need for subpoena power is especially important in a case like this where the majority of the witnesses are not parties to the lawsuit.

Even if the cooperation of third-party witnesses was obtained, requiring the majority of witnesses to travel over 2000 miles to litigate this dispute would greatly increase the cost of this litigation and pose an undue burden and expense on both parties. Seeking to conduct document discovery over 2000 miles away from where most of the documents are believed to be held would also pose an unnecessary burden and expense on the parties. Litigating in New Jersey, however, would be convenient for the majority of the witnesses with personal knowledge relevant to this matter and would greatly facilitate discovery. Also, because the witnesses and documents are located in New Jersey, they are more accessible in New Jersey for trial purposes.

On balance, there can be no question that convenience of the parties and witnesses

favors transfer. See Cinema Amusements, Inc. v. Loew's Inc., 85 F. Supp. 319, 326 (D.C. Del. 1949) ("In most cases, if the convenience of the parties and witnesses will be served by transfer, it usually follows that justice will also be served by transfer."). In addition, this litigation is in its earliest stages and transfer will not cause Plaintiff any undue prejudice or inconvenience.

## IV. SHOULD SKY LAND CONTEND THAT TRANSFER TO THE DISTRICT OF NEW JERSEY IS INAPPROPRIATE, THIS MATTER SHOULD BE DISMISSED ON FORUM NON CONVENIENS GROUNDS.

As set forth above, this matter should be transferred to the District of New Jersey in accordance with 28 U.S.C. § 1404(a). Nevertheless, should Sky Land maintain that this case should not be transferred to the District of New Jersey, the matter should be dismissed pursuant to the doctrine of *forum non conveniens*.

A case may be dismissed on grounds of *forum non conveniens* "when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, . . ." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 127 S. Ct. 1184, 1190 (U.S. 2007) (quotations omitted) (ellipses in original). This includes situations where the state court of a different jurisdiction "serves litigation convenience the best." Id. at 1190. Two factors must be established in order to qualify for a *forum non conveniens* dismissal: (1) an adequate alternative forum exists; and (2) the balance of relevant private and public interest factors favors dismissal. Alpha Therapeutic Corp. v. Nippon Hoso Kyokai, 199 F.3d 1078, 1090 (9th Cir. 1999); Creative Tech. Ltd. v. Aztech System, Pte., Ltd., 61 F.3d 696, 699 (9th Cir. 1995). Should Chicago Title's application to transfer this action to the District of New Jersey be denied, the case should be dismissed because both of these criteria are met in this case.

The requirement for an adequate alternative forum is met because Chicago Title is

"amenable to service of process in the alternative forum." Magellan Real Estate Inv. Trust v. Losch, 109 F. Supp. 2d 1144, 1149 - 50 (D. Ariz. 2000) (citing Creative Tech., Ltd., 61 F.3d at 699). Specifically, pursuant to New Jersey Rule of Court 4:4-4(a)(6), Chicago Title may be served with process in New Jersey in connection with this matter because it has individuals authorized to accept service of process in New Jersey, maintains a place of business in New Jersey and has employees in the state.

Moreover, a balancing of the private interest factors also militates in favor of this dismissal of this matter. The private interest factors to be balanced include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; and (4) all other factors that render trial of the case expeditious and inexpensive. Magellan, 109 F. Supp. at 1150; Creative Tech. Ltd., 61 F.3d at 703. As set forth above, almost all of the witnesses and documentary evidence of which Chicago Title is aware are located in New Jersey. Most of the witnesses in this matter are third-parties who are not subject to compulsory process in Arizona. Even if the cooperation of all the third-parties were obtained (and it is not clear that it could), it would inefficient and uneconomical to litigate this matter in Arizona.

Finally, a balancing of the public interest factors strongly tilts in favor of the dismissal of this matter. The public interest factors to be balanced are: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies tried at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; and (5) the avoidance of unnecessary problems in conflicts of law. Magellan, 109 F. Supp. 2d at 1154; Creative Tech. Ltd., 61 F.3d at 703-704. As set forth above, this dispute involves an insurance policy

prepared, executed and issued in New Jersey that purportedly insures a Mortgage that was executed and recorded in New Jersey, is governed by New Jersey law and encumbers New Jersey property.  New Jersey law governs this case; there can be no question that the New Jersey state courts are the best equipped to apply that law.  In addition, the allegedly adverse interests, upon which Sky Land relies as the basis for its coverage claim, is being asserted in a New Jersey state court.  Clearly, New Jersey has a strong interest in the outcome of this matter.  On the contrary, Arizona has little, if any, real connection to the case other than the fact that Crane resides there.

In sum, both the public and private interest factors weigh strongly in favor of dismissing this matter so that it can be filed in a New Jersey state court.

## V.   CONCLUSION.

For all the foregoing reasons, Defendant Chicago Title respectfully requests that the Court enter an order transferring this matter to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a), or in the alternative, dismissing that matter in accord with the doctrine of *forum non conveniens*.

RESPECTFULLY SUBMITTED this 31st day of August, 2007.

QUARLES & BRADY LLP
Renaissance One, Two North Central Avenue
Phoenix, AZ  85004-2391

By */s/ John Maston O'Neal*
   John Maston O'Neal / joneal@quarles.com
   Nicole M. Goodwin / ngoodwin@quarles.com
Attorneys for Defendant
Chicago Title Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on August 32, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik           Strojnik@aol.com
*Attorney for Plaintiff*

/s/Karen Elms