Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

Attorneys for Defendant
Chicago Title Insurance Company

John Maston O'Neal (#015945)
joneal@quarles.com

Nicole M. Goodwin (#024593)
ngoodwin@quarles.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SKY LAND INVESTMENTS, LLC, a Nevada limited liability company, | NO. CV07-01328-PHX-SRB |
| Plaintiff, | DECLARATION OF VINCENT J. SHARKEY, JR. UNDER 28 U.S.C. § 1746 |
| vs. | |
| CHICAGO TITLE INSURANCE COMPANY, a Missouri domiciled insurer, | |
| Defendant. | |

I, Vincent J. Sharkey, Jr., hereby declare as follows:

1.     I am Senior Vice President of Chicago Title Insurance Company ("Chicago Title"). As such, I am fully familiar with the facts stated herein. I make this Declaration in support of Chicago Title's motion for the entry of an Order transferring this matter to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a), or in the alternative, dismissing that matter in accord with the doctrine of *forum non conveniens* (the "Motion").

2.     Chicago Title is a Missouri corporation with a principal place of business in

Chicago, Illinois.  Chicago Title is a title insurer that conducts business and insures property located in New Jersey.  To that end, Chicago Title maintains offices, employs personnel and has appointed agents to act on its behalf in New Jersey.

3.    A Chicago Title insurance loan policy was issued to Sky Land by Horizon Title Agency (the "Loan Policy").  A true and correct copy of the Loan Policy is attached hereto as Exhibit A.

4.    All Chicago Title personnel involved with the Loan Policy and any documents related thereto are located in New Jersey.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 30, 2007

_____
Vincent J. Sharkey, Jr.

-2-

# EXHIBIT A

AMERICAN LAND TITLE ASSOCIATION
LOAN POLICY
(10-17-92)

**Policy No. 72107- 2576598**

# CHICAGO TITLE INSURANCE COMPANY

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*In Witness Whereof*, CHICAGO TITLE INSURANCE COMPANY has caused this policy to be signed and sealed as of Date of Policy shown in Schedule A, the policy to become valid when countersigned by an authorized signatory.

CHICAGO TITLE INSURANCE COMPANY
By:

President

By:

Secretary

# CHICAGO TITLE INSURANCE COMPANY

### ENDORSEMENT

May 25,, 2005

Attached to and made a part of Commitment Number HTA-2005-171 and Policy Number 72107-2576598

SCHEDULE B, SECTION II, ITEM # 9:

Please add the following statement/language to the said item above-referenced;

This company has verified, through its due diligence, a) That the amount currently due and owing upon the subject mortgage, herein stated, with respect to the subject premises noted in this commitment is no less than $3,000,000.00; b) that the amount due and owing upon the subject mortgage constitutes a valid and enforceable first lien against the obligation of the mortgagor; and c) that the mortgagor has no apparent, enforceable defenses, offsets and or counterclaims with respect to the obligation secured by the subject mortgage.

The total liability of the Company under said policy or certificate and under this and any prior endorsements thereto shall not exceed, in the aggregate, the amount of liability stated on the face of said policy or certificate, as the same may be specifically amended in dollar amount by this or any prior endorsements, and the costs which the Company is obligated to pay under the Conditions or Stipulations of the Policy.

This endorsement is made a part of said policy or certificate and is subject to the schedules, conditions and stipulations therein, except as modified by the provisions hereof.

Nothing herein contained shall be construed as extending or changing the effective date of the aforesaid policy or certificate unless otherwise expressly stated.

CHICAGO TITLE INSURANCE COMPANY

By_____

Amendment for Lender/Purchaser

# CHICAGO TITLE INSURANCE COMPANY

### ENDORSEMENT

Attached to and made a part of Policy Number 72107-2576598

SCHEDULE A, ITEM #1:

Amend "Name of Insured" to read; Sky Land Investments, LLC, a Nevada Limited Liability Company.

SCHEDULE A, ITEM #4:

Please amend same to read as is shown on attached amended Loan Policy.

SCHEDULE B, PART 1, ADD AS ITEM#10:

Terms conditions, etc. of said Assignment of Mortgage from Advertising Management and Consulting Services, Inc., a Arizona corporation to Sky Land Investments, LLC, a Nevada Limited Liability Company dated November 16, 2005 and recorded in the Somerset County Clerk's Office on November 23, 2005 as Instrument # 2005088751 and Book 5830 Page 3827.

SCHEDULE B, PART 1, ITEM # 7:

Please amend said item by removing the word "Collateral" in front of "Assignment of Mortgage". The balance of the said item remains intact as shown therein.

The total liability of the Company under said policy or certificate and under this and any prior endorsements thereto shall not exceed, in the aggregate, the amount of liability stated on the face of said policy or certificate, as the same may be specifically amended in dollar amount by this or any prior endorsements, and the costs which the Company is obligated to pay under the Conditions or Stipulations of the Policy.

This endorsement is made a part of said policy or certificate and is subject to the schedules, conditions and stipulations therein, except as modified by the provisions hereof.

Nothing herein contained shall be construed as extending or changing the effective date of the aforesaid policy or certificate unless otherwise expressly stated.

Dated: May 23, 2006

CHICAGO TITLE INSURANCE COMPANY

By

(RESIGNED JUNE 8, 2006)

Amendment for Lender/Purchaser

# CHICAGO TITLE INSURANCE COMPANY

## .SCHEDULE A

POLICY NUMBER : 72107-2576598

Amount of Insurance: $2,000,000.00

Date of Policy:        May 25, 2005

Office File Number:    HTA-2005-171

1. **Name of Insured:**

   Advertising Management and Consulting Services, Inc., an Arizona Corporation, its successors and/or assigns as their interest may appear

2. **Title to the estate or interest in the land is at date of policy vested in:**

   Lorraine Mocco, by deed from Jin P. Soh and Susan J. Soh, his wife, dated June 29, 1987, recorded July 7, 1987 in the Somerset County Clerk/Register's Office in Deed Book 1642, Page 293. (As to Parcel 1).

   And by deed from Jeffrey Zak Limited and Lorraine Mocco, to Lorraine Mocco, dated July 27, 1990, recorded July 30, 1990 in Deed Book 1784, Page 616 (As to Parcel 2).

3. **The estate or interest in the land which is encumbered by mortgage is:**

   Fee Simple

4. **The insured mortgage and assignments thereof, if any, are described as follows:**

   Mortgage made by Lorraine Mocco , to First Connecticut Consulting Group, Inc., dated September 26, 1996, and recorded in the Somerset County Clerk/Register's Office in Mortgage Book 2693, Page 865 in the amount of $2,000,000.00. Said mortgage was amended and restated by two certain instruments both dated September 25, 1996 and recorded in Book 2699 Page 442 and Book 2703 Page 339 of said records. Said mortgage was part of an Asset Purchase Agreement pursuant to Federal Bankruptcy Court approved action, in which said interest went to SWJ Holdings, LLC. Said SWJ Holdings LLC assigned said mortgage, among others, to Cobra/ Ventura Equities, LLC. Said Cobra/ Ventura Equities, LLC subsequently assigned their interest in said mortgage to said Advertising Management and Consulting Services, Inc.. Said Advertising Management and Consulting Services, Inc. finally assigned their interest in said mortgage to Sky Land Investments, LLC, a Nevada Limited Liability Company, which document and interest is

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

the subject of this policy.

**THIS POLICY INSURES THAT THE MORTGAGE HEREIN IS A VALID FIRST LIEN.**

**SEE SCHEDULE C, DESCRIPTION ATTACHED.**

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE B

### Part I

**Policy Number 72107-2576598**

**This policy does not insure against loss or damage by reason of the following:**

1. Any facts about the land which a correct survey would disclose, and which are not shown by the public record.

2. This property is subject to the current year's taxes levied or to be levied, and not yet certified to by the Hudson County Board of Taxation in accordance with Chapter 397, Laws of 1941, as amended and supplemented.

3. Restrictions as set forth in Deed Book 1376 Page 440.

4. Easements as set forth in Deed Book 1385 Page 81, Deed Book 1374 Page 446, Deed Book 1733 Page 321, Deed Book Y-22 Page 410, Deed Book 1439 Page 546, Deed Book 1114 Page 326, Deed Book 1447 Page 147.

5. Lien for Added Assessments arising pursuant to the Farmland Assessment Act of 1964, N.J.S.A. 54:4.23.1 et seq. (Affects Parcels 1 and 2 )

6. Subject to the rights of others in and to Clark Road ( Affects Parcels 1 and 2 )

7. Terms, conditions, etc. of said Collateral Assignment of Mortgage from SWJ Holdings, Inc. to Cobra/Ventura Equities, LLC., dated May 25, 2005.

8. Terms, conditions, etc. of said Assignment of Mortgage from Cobra/Ventura Equities, LLC to Advertising Management and Consulting Services, Inc., dated May25,2005.

9. Regularity of all terms, conditions, decisions, orders, etc. of said Federal Bankruptcy Court proceedings in connection with the Asset Purchase Agreement to SWJ Holdings, LLC referred to in Schedule A, Item # 4 herein.

**NOTE: Unless Schedule B Part II is attached there are no subordinate matters that affect the title to the estate or interest referred to in Schedule A.**

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

**SCHEDULE B**

### PART II

Policy Number 72107-2576598

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to lien or charge of the insured mortgage upon said estate or interest:

NONE

COUNTERSIGNED

Authorized Signature

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

Policy Number 72107-2576598

### SCHEDULE C, DESCRIPTION

All that certain lot., tract or parcel of land and premises, situate, lying and being in the Borough of Bernardsville, County of Somerset and State of New Jersey, being further described as follows:

PARCEL ONE:

BEGINNING at a point in the easterly side of Clark Road said point being the most northwesterly corner of Lot 47 in Block 2 as shown on the Borough of Bernardsville Tax Map and running thence:

1.   Along the easterly side of Clark Road, North 20 degrees 46 minutes 00 seconds West, 66.71 feet to a point; thence

2.   Still along the easterly side of Clark Road, North 00 degrees 12 minutes 00 seconds East, 430.97 feet to a point; thence

3.   Still along the easterly side of Clark Road, North 00 degrees 39 minutes 00 seconds West, 507.32 feet to a point; thence

4.   Still along the easterly side of Clark Road, on a curve bearing to the left, having a radius of 200.00 feet, an arc distance of 11.05 feet to a point; thence

5.   On a curve bearing to the right having a radius of 25.00 feet, an arc distance of 35.98 feet to a point; thence

6.   North 78 degrees 39 minutes 12 seconds East, 330.57 feet to point; thence

7.   On a curve bearing to the right, having a radius of 218.09 feet, an arc distance of 220.77 feet to a point, returning to the place of BEGINNING; thence

8.   North 20 degrees 13 minutes 30 seconds East, 57.55 feet to a point; thence

9.   North 50 degrees 55 minutes 00 seconds East, 424.62 feet to a point; thence

10.  North 44 degrees 35 minutes 00 seconds East, 321.69 feet to a point; thence

11.  North 06 degrees 46 minutes 40 seconds West, 491.38 feet to the end of the 7th course herein.

PARCEL TWO

BEGINNING at an iron on the northeasterly line of Clark Road (50 feet wide) in the southerly line of land now or formerly of Thomas and Mina Gordon; thence

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

1.  The following four courses and distances along land of Gordon, North 20 degrees 10 minutes 20 seconds East, 57.55 feet to an iron; thence

2.  Along the center of a driveway, North 50 degrees 51 minutes 50 seconds East, 424.62 feet to an iron; thence

3.  North 44 degrees 31 minutes 50 seconds East, 321.69 feet; thence

4.  South 41 degrees 20 minutes 40 seconds East, 441.49 feet to a marble monument; thence

5.  (The next two courses by new lines through lands or grantors herein), South 63 degrees 59 minutes West, 216.95 feet; thence

6.  South 53 degrees 43 minutes 20 seconds West, 689.02 feet to the northeasterly line of Clark Road; thence

7.  Along the northeasterly line of Clark Road, North 29 degrees 01 minutes 10 seconds West, 54.18 feet to a monument; thence

8.  Still along Clark Road, North 20 degrees 51 minutes 10 seconds West, 252.08 feet to the point and place of BEGINNING.

The premises to be insured known as Lot(s) 29, Block 2on the Tax Map of the Borough of Bernardsville, County of SomersetState of New Jersey.

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

### SURVEY ENDORSEMENT
### (Without Survey)

Attached to and made a part of  Commitment Number HTA-2005-171 and Policy #72107-2576598

If this endorsement is attached to a Loan Policy, exception number 1 in Schedule B of this policy is hereby deleted and the Company insures against loss or damage which the insured shall sustain by reason of any encroachments, overlaps, boundary line disputes, or easements not set forth in Schedule B of Policy.

If this endorsement is attached to an Owner's Policy, this endorsement is void.

This endorsement is made a part of the policy and is subject to all the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

This endorsement shall not be valid or binding until countersigned by an authorized signatory as designated below.

CHICAGO TITLE INSURANCE COMPANY

By

Survey Endorsement - No Survey

# Title Policy Jacket

*AMERICAN LAND TITLE ASSOCIATION*
*LOAN POLICY*
*(10-17-92)*

### Policy No. 72107- 2576598

# CHICAGO  TITLE  INSURANCE  COMPANY

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*In Witness Whereof,* CHICAGO TITLE INSURANCE COMPANY has caused this policy to be signed and sealed as of Date of Policy shown in Schedule A, the policy to become valid when countersigned by an authorized signatory.

CHICAGO TITLE INSURANCE COMPANY
By:

President

By

Secretary

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or

   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

      (a) to timely record the instrument of transfer; or

      (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

**1. DEFINITION OF TERMS**

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

   (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

   (ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

   (iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE**

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

## 3.  NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

## 4.  DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

## 5.  PROOF OF LOSS OR DAMAGE

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect, in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall

provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 6.  OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs (b)(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 7.  DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8. LIMITATION OF LIABILITY**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all, as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10. LIABILITY NONCUMULATIVE**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11. PAYMENT OF LOSS**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT**

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13. ARBITRATION**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15. SEVERABILITY**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16. NOTICES, WHERE SENT**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at the issuing office or to: