# EXHIBIT E



JOHN BATKOWSKI                    (Seal)
                                 -Borrower
MARGARET BATKOWSKI                (Seal)
                                 -Borrower
                                 (Seal)
                                 -Borrower

BK 2 7 0 3 PG 338

36.0pt 85 Check16k

This Second Amended and Restated Mortgage (the "Mortgage"), dated as of September 25th, 1996, is from Lorraine Mocco, an individual residing at 81 Clark Lane, Bernardsville, NJ (the "Mortgagor") to First Connecticut Consulting Group, Inc., 301 Merritt 7 Corporate Park, Norwalk, CT 06851 (the "Mortgagee")

WITNESSETH

WHEREAS, the Mortgagor is the present owner in fee of certain real property and the improvements thereon (the "Improvements") located at 81 and 41 Clark Lane, Bernardsville, NJ;

WHEREAS, Mortgagor, pursuant to the confirmed plan in her bankruptcy proceeding in the United States District Court for the District of New Jersey, under Index Number 94-31932 Mortgagor is required to grant this Mortgage;

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the Mortgagor agrees as follows:

That in order to secure (i) the payment of an indebtedness in the original principal amount of $2,000,000.00 (the "Principal Amount") in lawful money of the United States, and (ii) all other sums, obligations and liabilities of the Mortgagor due or to become due to the Mortgagee under this Mortgage, or any other document executed by Mortgagor or any affiliated of Mortgagor relating to the Mortgage (collectively the "Loan Documents", individually a "Loan Document"), together with all interest on said indebtedness, obligations, liabilities, amounts, sums and expenses (all of the aforesaid items referred to in clauses (i) through and including (iii) of this paragraph shall hereinafter be collectively referred to as the "Indebtedness"), the Mortgagor hereby mortgages, grants, bargains, sells, warrants, conveys, alienates, remises, releases, assigns, sets over and confirms to the Mortgagee the following real and other property and all substitutions for and all replacements, reversions and remainders of such property, whether now owned or held or hereafter acquired by the Mortgagor (collectively, the "Premises")

All that certain plots, pieces or parcels of land (the "Land") located in the Borough of Bernardsville, County of Somerset and State of New Jersey and more particularly described in Exhibit "A" annexed hereto and made a part hereof;

TOGETHER with all of the buildings and improvements now or hereafter located on the Land and all right, title and interest of the Mortgagor in and to the streets and roads abutting the Land to the center lines thereof, strips and gores within or adjoining the Land, the air space and right to use said air space above the Land, all development and zoning bonuses and rights relating to the Premises, all rights of ingress and egress by motor vehicles to parking facilities on or within the Land, all easements now or hereafter affecting or inuring for the benefit of the owner of the Land, including, without limitation, the Mortgagor's rights under easements and related agreements and royalties and all rights appertaining to the use and enjoyment of the Land, including, without limitation, alley, vault, drainage, mineral, water, oil and gas rights, together with any and all other

F:\REDO OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd

RECORD AND RETURN:
LAND TITLE AGENCY INC.
464 VALLEY BROOK AVE.
LYNDHURST, N.J. 07071
(201) 804-8844

BK 2 7 0 3 PG 3 3 9          96-LT-0393.

R  10-24-96


1996136807

rights, privileges and interests appurtenant thereto (the said buildings, improvements, aforesaid rights and Land shall hereinafter be collectively referred to as the "Real Estate")

TOGETHER with all fixtures and articles of personal property and all appurtenances and additions thereto and substitutions or replacements thereof, currently owned or hereafter acquired by the Mortgagor and now or hereafter attached to, contained in, or used in connection with the Real Estate (though not attached thereto) or placed on any part thereof (collectively, the "Equipment"), including, but not limited to, all screens, awnings, shades, blinds, curtains, draperies, carpets, rugs, furniture and furnishings, heating, electrical, mechanical, lighting, plumbing, ventilating, air conditioning, refrigerating, incinerating and elevator equipment and systems, stoves, ranges, vacuum cleaning systems, call systems, sprinkler systems and other fire prevention and extinguishing apparatus and materials, motors, machinery, pipes, appliances, equipment, fittings and fixtures, and the trade name, good will and books and records relating to the business operated on the Real Estate. Without limiting the foregoing, the Mortgagor hereby grants to the Mortgagee a security interest in all of its present and future "equipment" and "general intangibles" (as said quoted terms are defined in the Uniform Commercial Code of the state where the Land is located [the "State"]) and the Mortgagee shall have, in addition to all rights and remedies provided in this Mortgage, and in any other agreements, commitments and undertakings made by the Mortgagor to the Mortgagee, all of the rights and remedies of a "secured party" under the aforesaid Uniform Commercial Code. To the extent permitted under applicable law, this Mortgage shall be deemed to be a "security agreement" (as defined in the aforesaid Uniform Commercial Code). If the lien of this Mortgage is subject to a security interest covering any such personal property, then all of the right, title and interest of the Mortgagor in and to any and all such "equipment" and "general intangibles" is hereby assigned to the Mortgagee, together with the benefits of all deposits and payments now or hereafter made thereon by the Mortgagor;

TOGETHER with all leases, lettings, subleases, concessions, rental agreements, occupancy agreements and licenses, if any, which now or may hereafter affect the Real Estate or any portion thereof, and all guarantees, modifications, renewals and/or extensions of same (collectively, the "Leases"), and all right, title and interest of the Mortgagor in and to the Leases, including, without limitation, the rights of the Mortgagor, as landlord, in respect of all documents and instruments made or hereafter made with respect to the Leases, together with all of the cash, promissory notes, security deposits, rents, issues, revenues, income and profits due or to become due or to which the Mortgagor is now or hereafter may become entitled, arising out of the Leases, the Real Estate or any portion thereof, and any other sums payable thereunder or in connection with any rights or options granted therein and the right to receive and collect all of the foregoing (collectively, the "Profits")

TOGETHER with all unearned premiums, accrued, accruing or to accrue under insurance policies now or hereafter obtained, or caused to be obtained, by the Mortgagor and the Mortgagor's interest in and to all proceeds of the conversion, voluntary or involuntary, of the Premises or any part thereof into cash or liquidated claims, including, without limitation, proceeds of casualty insurance, title insurance or any other insurance maintained on the Real Estate and the Equipment or any part of either thereof, and all awards and/or other compensation hereafter made to the present and all

EXHIBITO OF LOAN/2nd Amend A Restate Clark Land Mortgage.wpd



2

TOGETHER with all unearned premiums, policies now or hereafter obtained, or caused to be obtained, by the Mortgagor and the Mortgagee's interest in and to all proceeds of the conversion, voluntary or involuntary, of the Premises or any part thereof into cash or liquidated claims, including, without limitation, proceeds of casualty insurance, title insurance or any other insurance maintained on the Real Estate and the Equipment or any part of either thereof, and all awards and/or other compensation hereafter made to the present and all

subsequent owners of the Real Estate and the Equipment or any part of either thereof by any governmental or other lawful authorities for the taking by eminent domain, condemnation or otherwise, of all or any part of the Premises or any easement or other right therein, including for any change of grade of streets (collectively, the "Awards"); and

TOGETHER with all extensions, improvements, betterments, substitutes and replacements of, and all additions and appurtenances to, the Real Estate and the Equipment, hereafter acquired by or released to the Mortgagor or constructed, assembled or placed on the Real Estate, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further mortgage, conveyance, assignment or other act by the Mortgagor, shall become subject to the lien of this Mortgage as fully and completely, and with the same effect, as though now owned by the Mortgagor and specifically described in this Mortgage.

TO HAVE AND TO HOLD the Premises unto the Mortgagee and its successors and assigns until the Indebtedness is paid in full.

Notwithstanding anything contained herein to the contrary, the maximum principal amount of Indebtedness secured or which by any contingency may be secured hereby, or at any time hereafter, by this Mortgage is $2,000,000.00, plus the repayment to the Mortgagee of any sums advanced or paid by the Mortgagee under the terms of this Mortgage (i) for real estate taxes, charges and assessments that may be imposed by law upon the Premises; (ii) for premiums on insurance policies covering the Premises; (iii) for expenses incurred in upholding the lien of this Mortgage, including, but not limited to, the expenses of any litigation to prosecute or defend the rights and liens created by this Mortgage; and/or (iv) to which the Mortgagee becomes subrogated, upon payment, under principles of law or equity, or under express statutory authority, in each case, with interest thereon at the Delinquency Rate (hereinafter defined)

ARTICLE 1 - Covenants of the Mortgagor

The Mortgagor covenants and agrees with the Mortgagee as follows:

Section 1.01. Payment of the Indebtedness. The Mortgagor punctually shall pay the Indebtedness in immediately available funds, as provided in this Mortgage, all in the coin and currency of the United States of America which is legal tender for the payment of public and private debts.

Section 1.02. Title to the Premises. The Mortgagor represents and warrants that: (i) it has good and marketable title to the Real Estate, subject only to those matters (collectively, the "Title Matters") set forth on Schedule B of Title Report No. 96-LT-0393. D & E of Chicago Title Insurance Company, dated 9/26/96 copies of which are set forth on Exhibit B, which is attached hereto and made part hereof; (ii) it has full power and lawful authority to encumber the Premises in the manner and form herein set forth; (iii) it owns all the Equipment, free and clear of liens and claims, other

E:\REDO OF LOAN\2nd Amend & Restate Clut Lane Mortgage.wpd                          3

BK 2 7 0 3 PG 3 4 1

than the Title Matters; (iv) this Mortgage is and will remain a valid and enforceable lien on the Premises, subject only to the Title Matters; and (v) it will preserve such title and will forever warrant and defend the same to the Mortgagee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons, entities and parties whomsoever.

Section 1.03. Maintenance of the Real Estate and the Equipment. The Mortgagor represents, warrants and covenants that it shall maintain the Real Estate and the Equipment in good repair, shall comply with the requirements (each, a "Requirement") of any governmental authority having jurisdiction over the Real Estate and/or the Equipment within thirty (30) days after an order or other form of notice containing such Requirement has been issued by such authority in respect of the Real Estate or the Equipment (or if compliance cannot be effected within such period of time, then the Mortgagor shall commence compliance within such period of time and thereafter diligently pursue such compliance) and shall permit the Mortgagee to enter upon the Real Estate at all reasonable hours and without prior notice to inspect the Real Estate and the Equipment to ensure such compliance. The Mortgagor shall not, without the prior written consent of the Mortgagee, threaten, commit, permit or suffer to occur any waste, material alteration, demolition or removal of the Real Estate or the Equipment or any part thereof; provided, however, that the Equipment may be removed from the Real Estate if the Mortgagor concurrently therewith replaces the same with similar (as to utility and quality) items of equal or greater value, free of any lien, charge or claim of superior title. For purposes of the immediately preceding sentence, a "material alteration" shall mean an alteration, the cost of which, when aggregated with the costs of all other alterations that were commenced or continued at any time in the twelve (12) month period immediately preceding the commencement of such alteration, exceeds Twenty-Five Thousand and 00/100 Dollars ($25,000.00).

Section 1.04. Insurance; Restoration.

(a) The Mortgagor represents, warrants and covenants that it shall maintain (i) "casualty" insurance insuring the Real Estate and the Equipment now or hereafter constituting a part of the Premises against damage by fire and the other hazards covered by a standard all-risk coverage insurance policy for the full insurable value thereof (which, unless the Mortgagee shall otherwise agree in writing, shall mean the full repair and replacement value thereof without reduction for depreciation or co-insurance, but in no event less than the aggregate outstanding amount of the Indebtedness, (ii) "use and occupancy" insurance covering business interruption and rental income from the Real Estate in an amount not less than twelve (12) months' anticipated gross rental income and (iii) Comprehensive General Liability Insurance, including a contractual liability endorsement, with respect to the operation of the Real Estate and the Equipment with limits of liability of not less than Three Million and 00/100 Dollars ($3,000,000.00) combined single limit. In addition, the Mortgagee may require Mortgagor to carry such other insurance on the Real Estate and the Equipment in such amounts as may, from time to time, be reasonably required by institutional lenders, against insurable casualties which at the time are commonly insured against in the case of premises similarly situated, due regard being given to the site and the type of the building, and the construction, location, utilities and occupancy or any replacements or substitutions therefor, including, without limitation, flood insurance (including surface waters) if the Real Estate is located



lenders, against insurable casualties which at the ~~~ ~~~ ~~~ premises similarly situated, due regard being given to the site and the type of the ~~~, construction, location, utilities and occupancy or any replacements or substitutions therefor, including, without limitation, flood insurance (including surface waters) if the Real Estate is located

F:\REDO OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd

BK 2 7 0 3 PG 3 4 2

in an area identified by the Secretary of Health and Human Services as having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (or any successor act thereto) in an amount at least equal to the outstanding amount of the Indebtedness or the maximum limit of coverage available under said Act with respect to the buildings and improvements now or hereafter located on the Land, whichever is less; Builder's Risk insurance; insurance against earthquakes (including subsidence); insurance against risks of war and nuclear explosion; and contingent liability insurance coverage against any loss arising from the fact that any building is deemed to be non-conforming property. In addition, from time to time, upon the occurrence of any change in the use, operation or value of the Real Estate or the Equipment, or in the availability of insurance in the area in which the Real Estate is located, the Mortgagor shall, within five (5) days after demand by the Mortgagee, obtain such additional amounts and/or such other kinds of insurance as the Mortgagee may reasonably require. Otherwise, the Mortgagor shall not obtain or continue to maintain any separate or additional insurance which is contributing in the event of loss unless it is properly endorsed and otherwise satisfactory to the Mortgagee in all respects. The proceeds of insurance paid on account of any damage or destruction to the Real Estate or the Equipment or any part of either thereof (all such proceeds shall hereinafter be collectively referred to as the "Proceeds") shall be paid over to the Mortgagee to be applied as hereinafter provided.

(b) All insurance policies required pursuant to this Section 1.04 shall be endorsed to name the Mortgagee as named insured thereunder, as its interest may appear, with loss payable to the Mortgagee, without contribution, under along form non-contributory endorsement. All such insurance policies and endorsements shall be fully paid for and contain such provisions and expiration dates and be in such form as approved by the Mortgagee, in its sole discretion, and issued by such insurance companies licensed to do business in the state in which the Real Estate is located, with a rating of "A-VI" or better as established by Best's Rating. Each policy shall provide that such policy may not be canceled, non-renewed or materially changed except upon thirty (30) days' prior written notice to the Mortgagee of the intention of non-renewal, cancellation or material change and that no act or thing done by the Mortgagor shall invalidate the policy as against the Mortgagee. In the event the Mortgagor fails to maintain insurance in compliance with this Section 1.04 or, in the event that a notice of non-renewal, cancellation or material change is given to the Mortgagee, as aforesaid, if, within fifteen(15) days after the delivery of such notice, the Mortgagor shall fail to deliver to the Mortgagee evidence of the purchase of a substitute policy of insurance or a renewal of the existing policy of insurance, the Mortgagee may, but shall not be obligated to, obtain such insurance and pay the premium therefor and the Mortgagor shall, on demand, reimburse the Mortgagee for all sums, advances and expenses incurred in connection therewith, together with interest thereon at the Delinquency Rate, from the date such amounts are advanced or incurred until the same are repaid to the Mortgagee. The Mortgagor shall deliver to the Mortgagee a certificate of insurance with respect to such liability insurance issued to the Mortgagee, and copies of all original policies of insurance, certified to the Mortgagee by the insurance company or authorized agent as being true copies, together with the endorsements thereof required under this Mortgage, which policies and endorsements shall be assigned to the Mortgagee so, and in such manner and form, that the Mortgagee and its successors and assigns shall at all times have and hold the said policies as

F:\REDO OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd                                    5

collateral and further security for the payment of the Indebtedness, until the full payment thereof. Notwithstanding anything to the contrary contained in this Mortgage or the laws of the State, the proceeds of insurance policies coming into the possession of the Mortgagee shall not be deemed trust funds and the Mortgagee shall be entitled to dispose of such proceeds as provided in this Mortgage.

(c) In the event of damage or destruction to the Real Estate or the Equipment or any portion of either thereof, whether insured or uninsured, the Mortgagor promptly shall give written notice thereof to the Mortgagee and promptly shall commence and diligently shall continue to repair, restore and rebuild the portion of the Real Estate and Equipment so damaged or destroyed (hereinafter referred to as the "work"), to restore the Real Estate and the Equipment in full compliance with all legal requirements and so that the Real Estate and the Equipment shall be at least equal in value and quality and general utility as they were prior to the damage or destruction and, if the work to be done is structural or if the cost of the work, as estimated by the Mortgagee, shall exceed the sum of Fifteen Thousand Dollars ($15,000.00) (hereinafter referred to as "Major Work"), then the Mortgagor shall, prior to the commencement of the work, furnish or cause to be furnished to the Mortgagee: (i) complete plans and specifications for the work (approved by all governmental authorities whose approval is required) for the Mortgagee's approval, which approval shall not be unreasonably withheld, which plans and specifications shall bear the signed approval thereof by an architect satisfactory to the Mortgagee (the "Architect")and shall be accompanied by the Architect's signed estimate, bearing the Architect's seal, of the entire cost of completing the work; (ii) certified or photostatic copies of all permits and approvals required by law in connection with the commencement and conduct of the work; and (iii) a payment and performance bond for, and/or guaranty of the payment for and completion of, the work, which bond or guaranty shall be in form satisfactory to the Mortgagee, and shall be signed by a surety or sureties, or guarantor or guarantors, as the case may be, who are acceptable to the Mortgagee, and shall be in an amount equal to not less than One Hundred Ten Percent (110%) of the Architect's estimate of the entire cost of completing the work, less the amount of insurance proceeds, if any, then held by the Mortgagee for application toward the cost of the work.

(d) Mortgagor shall not commence any of the work until the Mortgagor shall have complied with the applicable requirements referred to in Subparagraph (c) of this Section 1.04 and, after commencing the work, the Mortgagor shall perform the work diligently in a good and workmanlike manner and in good faith in accordance with the plans and specifications referred to in Subparagraph (c) (i) of this Section 1.04, if applicable, and in compliance with all applicable laws.

(e) (i) The casualty insurance policy carried by Mortgagor shall provide that the Proceeds shall be paid in accordance with the provisions hereof. The Mortgagor promptly shall deliver to the Mortgagee any Proceeds which are paid directly to the Mortgagor by the casualty insurance carrier. All Proceeds delivered to the Mortgagee as aforesaid, together with all Proceeds paid directly to the Mortgagee on account of damage or destruction to the Real Estate and/or the Equipment, less the cost, if any, to the Mortgagee of such recovery and of paying out such Proceeds(including attorneys' fees and costs allocable to inspecting the work and reviewing the plans and specifications there-for), in the Mortgagee's discretion, upon the written request of the Mortgagor and subject to the provisions

6

EARLEND OF LDAM2nd Amend & Restate Clark Lease Mortgage.wpd

BK 2 7 0 3 PG 3 4 4



of this Section 1.04, may be applied by the Mortgagee to the payment of the cost of the work referred to in Subparagraph(c) of this Section 1.04 and shall be paid out, from time to time (but not more often then once a month), to the Mortgagor and/or, at the Mortgagee's option, exercisable, from time to time, directly to the contractor, subcontractors, materialmen, laborers, engineers, architects and other persons or entities rendering services or materials in connection with the work, as said work progresses, except as otherwise hereinafter provided, but subject to the following conditions, any of which the Mortgagee may waive:

(A)    If the work to be done is structural or if it is major work, as determined by the Mortgagee, the Architect shall be in charge of the work.

(B)    Each request for payment shall be made at least ten (10) days prior to the requested date of disbursement and shall be accompanied by a certificate of the Architect, if the work is structural or major work, as determined by the Mortgagee, or a certificate of Guarantor, if the work is not structural or Major Work, stating that (i) all of the work completed has been done in a good and workmanlike manner and in compliance with the approved plans and specifications, if any required under said Subparagraph (c) of this Section 1.04, and in accordance with all provisions of law; (ii) the sum requested is justly required to reimburse The Mortgagor for payments by the Mortgagor to, or is justly due to, the contractor, subcontractors, materialmen, laborers, engineers, architects or other persons or entities rendering services or materials in connection with the work (giving a brief description of such services and materials) and that, when added to all sums previously paid out by the Mortgagee, if any, does not exceed the value of the work done to the date of such certificate; and (iii) the amount of Proceeds remaining in the hands of the Mortgagee, together with other funds otherwise available to the Mortgagor, will be sufficient on completion of the work to pay for the same in full (giving, in such reasonable detail as Mortgagee may require, an estimate of the cost of such completion and if such other funds are required, including a certificate of Guarantor as to the sources of such funds)

(C)    Each request shall be accompanied by waivers or releases of liens, satisfactory to the Mortgagee, covering that part of the work previously paid for, if any, and by a search prepared by a title company or by other evidence satisfactory to the Mortgagee that there has not been filed with respect to the Real Estate or the Equipment, or any part of either thereof, any mechanic's lien or other lien or instrument for the retention of title which had not been discharged of record (by bonding or otherwise) with respect to any part of the work and that there exist no encumbrances on or affecting the Real Estate or the Equipment or any part of either thereof, other than Title Matters and those which may have been expressly approved by the Mortgagee in writing.

(D)    None of the Leases in effect immediately prior to the damage or destruction shall have been canceled, or contain any still exercisable right to cancel, due to such damage or destruction.

F:\RE\DO OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd

7

BK 2 7 0 3 PG 3 4 5

(E)    There shall be no Event of Default (hereinafter defined) on the part of the Mortgagor under this Mortgage or default on the part of the Mortgagor under any other Loan Document.

(F)    The request for any payment after the work has been completed shall be accompanied by a copy of any certificate or certificates required by law to render occupancy and operation of the Real Estate legal.

(ii)    Upon completion of the work and payment in full therefor, or upon failure on the part of the Mortgagor promptly to commence or diligently to continue the work, or at any time upon request by the Mortgagor, the Mortgagee may apply the amount of any Proceeds then or thereafter in the hands of the Mortgagee to the payment of the Indebtedness in accordance with Subparagraph (h) of this Section 1.04; provided, however, that nothing contained in this Mortgage or any other Loan Document shall prevent the Mortgagee from applying at any time the whole or any part of such Proceeds to the curing of any default under this Mortgage.

(f)    In the event the work to be done is not structural or it is not major work as determined by the Mortgagee, then, subject to the provisions of Subparagraph (i) of this Section 1.04, the Proceeds may be paid to the Mortgagor, to be applied toward the cost of the work, subject to the provisions of the foregoing Subparagraphs (c) , (d) and (e) of this Section 1.04, other than those applicable to structural or major work.

(g)    If, within one hundred twenty (120) days after the occurrence of any damage or destruction to the Real Estate and the Equipment or any portion of either thereof requiring structural work or major work in order to restore the Real Estate and the Equipment, the Mortgagor shall not have submitted to the Mortgagee and received the Mortgagee's approval of plans and specifications for the repair, restoration and rebuilding of the Real Estate and the Equipment so damaged or destroyed (approved by all governmental authorities whose approval is required), or if, after such plans and specifications are approved by all such governmental authorities, other parties and the Mortgagee, the Mortgagor shall fail promptly to commence such repair, restoration and rebuilding, or if, thereafter, the Mortgagor fails diligently to continue such repair, restoration and rebuilding or is delinquent in the payment to mechanics, materialmen or others of the costs incurred in connection with such work or, in the case of any damage or destruction to the Real Estate and/or the Equipment or any part of either thereof requiring neither structural work nor major work in order to restore the Real Estate and/or the Equipment, as determined by the Mortgagee, if the Mortgagor shall fail promptly to repair, restore and rebuild the Real Estate and the Equipment so damaged or destroyed, or in any other respect fails to comply with its restoration obligations under this Section 1.04, then, in addition to all other rights set forth in this Mortgage and, after giving the Mortgagor ten (10) days' written notice of the nonfulfillment of one or more of the foregoing conditions, the Mortgagee, or any lawfully appointed receiver of the Real Estate and the Equipment, may, at their respective options, (i) perform or cause to be performed such repair, restoration and rebuilding, and take such other steps as they deem advisable to perform such work or (ii) apply any portion of the Proceeds in accordance with Subparagraph (h) of this Section 1.04; provided, however, that the Mortgagee

EXHIBIT OF LOAN/2nd Amend & Restate Clark Lane Mortgage.wpd



any lawfully appointed receiver in the same such options, (i) perform or cause to be performed such repair, restoration and rebuilding, and take such other steps as they deem advisable to perform such work or (ii) apply any portion of the Proceeds in accordance with Subparagraph (b) of this Section 1.04; provided, however, that the Mortgagee

E\REDO OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd

BK 2 7 8 3 PG 3 4 6

shall be permitted to give such shorter notice (and in such other manner) as is reasonably practical in case of emergency or other special circumstances. The Mortgagee hereby waives, for the Mortgagor and all others holding under the Mortgagor, any claim against the Mortgagee and such receiver arising out of anything done by the Mortgagee or such receiver pursuant hereto and the Mortgagee may apply all or a portion of the Proceeds (without the need to fulfill any other requirements of this Section 1.04) to reimburse the Mortgagee, and/or such receiver, for all amounts expended or incurred by them, respectively, in connection with the performance of such work, and any excess costs shall be paid by the Mortgagor to the Mortgagee upon demand.

(h)     Notwithstanding anything contained herein to the contrary (other than the provisions of Subparagraph (i) of this Section 1.04), the Mortgagee shall have the option, in its sole discretion, to apply all or a portion of the Proceeds it may receive pursuant to this Section 1.04 to the restoration of the Real Estate and the Equipment or to the payment of the Indebtedness as follows: first, to the payment of delinquency or "late" charges, if any; second, to accrued and unpaid interest on the Indebtedness; and third, to the reduction of the principal sum of the Indebtedness and other sums due under this Mortgage.

Section 1.05. Maintenance of Existence.     Mortgagor covenants to do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges under the laws of the state of its formation and promptly shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to the Mortgagor or to the Premises or any part thereof.

Section 1.06. Taxes and Other Charges.

(a)     The Mortgagor shall pay and discharge, before the date on which any fine, penalty, interest or cost may be added or imposed by law for the non payment thereof, all taxes of every kind and nature, water rates, sewer rents and assessments, levies, permits, inspection and license fees and all other charges imposed upon or assessed against the Premises, or any part thereof, or upon the revenues, rents, issues, income and profits of the Real Estate or arising with respect to the occupancy, uses or possession thereof (collectively, "Taxes") and, unless the Mortgagor is making monthly deposits with the Mortgagee in accordance with Section 1.14 of this Mortgage, the Mortgagor shall exhibit to the Mortgagee, within the earlier of thirty (30) days after the same shall have been paid and five (5) days after the same shall have become due, validated receipts showing the payment of the Taxes and other charges which may be or become a prior lien on the Premises or any portion thereof.

Should the Mortgagor default in the payment of any of the Taxes or other charges, the Mortgagee may, but shall not be obligated to, pay the same or any part thereof and the Mortgagor shall, on demand, reimburse the Mortgagee for all amounts so advanced, together with interest thereon at the Delinquency Rate, from the date such amounts are advanced until the same are paid to the Mortgagee.

E\REDO OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd                    9

(b)    Nothing in this Section 1.06 shall require the payment or discharge of any obligation imposed upon the Mortgagor by Subparagraph (a) of this Section 1.06 as long as the Mortgagor shall in good faith and at its own expense contest the same or the validity thereof by appropriate legal proceedings which operate to prevent the collection thereof or other realization thereon and the sale or forfeiture of the Premises or any part thereof to satisfy the same; provided that (i) during such contest, the Mortgagor shall, at the option of the Mortgagee, provide security satisfactory to the Mortgagee, assuring the discharge of the Mortgagor's obligations under this Mortgage and of any additional interest charge, penalty or expense arising from or incurred as a result of such contest; (ii) such proceeding is diligently prosecuted; and (iii) if at any time forfeiture, loss or diminution of the value of the Premises or any portion thereof is threatened, then the Mortgagor shall make such payment in sufficient time to prevent such forfeiture, loss or diminution of value.

Section 1.07   Mechanics' and Other Liens.   The Mortgagor shall pay or bond, from time to time, when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers, and others which, or on the Profits arising therefrom and, in general, the Mortgagor shall do, or any portion thereof, or on the Profits arising therefrom and, in general, the Mortgagor shall do, or cause to be done, at the cost of the Mortgagor and without expense to the Mortgagee, everything necessary to fully preserve the lien of this Mortgage. Within thirty (30) days after the filing of any such lien, the Mortgagor shall release or discharge the same of record, by payment, bonding or otherwise. In the event that the Mortgagor fails to make payment of or bond such claims and demands, the Mortgagee may, but shall not be obligated to, make payment thereof, and the Mortgagor shall, on demand, reimburse the Mortgagee for all sums so expended, together with interest thereon at the Delinquency Rate, from the date such sums are expended until the same are paid to the Mortgagee.

Section 1.08.   Condemnation Awards



(a)    The Mortgagor, immediately upon obtaining knowledge of the institution of any proceedings for the condemnation of the Premises or any portion thereof, shall notify the Mortgagee of the pendency of such proceedings. The Mortgagee, at its election and in its discretion, may participate in any such proceedings and the Mortgagor, from time to time, shall deliver to the Mortgagee all instruments requested by it to permit such participation. All Awards from a condemnation, or other taking or purchase in lieu thereof, of the Real Estate or any portion thereof shall be paid and applied in accordance with the provisions of this Section 1.08. The Mortgagee shall not be limited to the interest paid on the proceeds of any Award, but shall be entitled to the payment by the Mortgagor of interest at the applicable rate provided for in this Mortgage. All Awards from a condemnation, or other taking or purchase in lieu thereof, of the Real Estate, the Equipment or any part of any of the foregoing, are hereby assigned to and shall be paid to the Mortgagee. The Mortgagor, upon request by the Mortgagee, shall make, execute and deliver any and all instruments requested for the purposes of confirming the assignment of the aforesaid Awards and compensation to the Mortgagee free and clear of any liens, charges or encumbrances of any kind or nature whatsoever. The Mortgagor hereby authorizes the Mortgagee to collect and receive such Awards, to give proper receipts and acquittances therefor and, in the Mortgagee's sole discretion, to

10

BK 2 1 0 3 PG 3 4 8

Mortgagee. The Mortgagor ... for the purposes of continuing the assignment ... all instruments requested for the purposes of continuing the assignment ... compensation to the Mortgagee free and clear of any liens, charges or encumbrances of any kind or nature whatsoever. The Mortgagor hereby authorizes the Mortgagee to collect and receive such Awards, to give proper receipts and acquittances therefor and, in the Mortgagee's sole discretion, to

E AREDO OF LOAN/2nd Amend & Restate Clark Lane Mortgage.wpd

BK 2 703 PG 349

apply the same toward the payment of the Indebtedness, notwithstanding the fact that the Indebtedness may not then be due and payable, or to the restoration of the Real Estate and Equipment.

(b)    In the event that the whole of the Real Estate shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, or if any part thereof shall be so taken or condemned and the part thereof not so taken or condemned cannot feasibly be used or reconverted for use as a building or buildings of the type and character existing immediately prior to such taking or condemnation (the foregoing being hereinafter referred to as a "Complete Taking") , then, any Award payable in connection therewith shall be paid to the Mortgagee and applied as follows: first, to the payment of delinquency or "late" charges, if any; second, to accrued and unpaid interest on the Indebtedness; and third, to the reduction of the principal sum of the Indebtedness and other sums due under this Mortgage. Any portion of any Award remaining after full payment of the Indebtedness and satisfaction of this Mortgage, shall be paid to the Mortgagor.   ·

(c)    In the event that a portion of the Real Estate is taken or condemned so that there is less than a Complete Taking, then the Mortgagor promptly shall commence (but in no event later than thirty (30) days after the date of such taking or condemnation) and diligently shall continue to repair, restore, replace or rebuild the Real Estate in accordance with the provisions of Section 1.04 of this Mortgage, as if such taking or condemnation had resulted in "damage or destruction to the Real Estate" (within the meaning of Subparagraph (c) of said Section 1.04), substantially to its condition immediately prior to such taking or condemnation or, if the foregoing is not possible, so as to constitute the same a distinct and functional architectural unit for use as a building or buildings of the type and character existing immediately prior to such taking, and the proceeds of any Award paid to the Mortgagee in connection therewith, in the Mortgagee's discretion, may be applied as provided in Subparagraph (b) of this Section 1.08, or may be made available to the Mortgagor for such purposes; provided, however, that in such event such proceeds shall be disbursed to the Mortgagor in accordance with the provisions of Subparagraphs (c), (d) and (e) of said Section 1.04.

(d)    Notwithstanding anything to the contrary contained in this Mortgage, the Mortgagee shall have the option, in its sole discretion, to apply all or a portion of any Award it may receive pursuant to the provisions hereof to the payment of the Indebtedness or to allow all or a portion of any Award to be used for repair and restoration purposes, as aforesaid. The portion of any Award applied by the Mortgagee to the payment of the Indebtedness shall be applied as provided in Subparagraph (b) of this Section 1.08.

(e)    Notwithstanding any taking by eminent domain, alteration of the grade of any street or other injury to or decrease in value of the Real Estate by any Governmental Authority, the Mortgagor shall continue to make all payments due under this Mortgage.

Section 1.09. Mortgage Authorized. The Mortgagor hereby represents and warrants that (a) the execution and delivery of this Mortgage has been duly authorized and that there is no provision

11

E AREDO OF LOAN/2nd Amend & Restate Clark Lane Mortgage.wpd

in its certificate of incorporation and by-laws, as the same may have been amended, requiring further consent for such action by any other entity or person; (b) it is duly organized, validly existing and in good standing under the laws of the State and it has (i) all necessary licenses, authorizations, registrations and approvals, (ii) filed all necessary certificates and (iii) full power and authority to own it and their property and carry on its businesses as presently conducted; and (c) the execution and delivery by and the performance of the Mortgagor's obligations under this Mortgage will not result in the Mortgagor being in default under any provision of the Mortgagor's certificate of incorporation and by-laws, as the same may have been amended, or of any Lease, credit or other agreement to which the Mortgagor is a party or by which any of its assets are bound.

Section 1.10   Costs of Defending and Upholding the Lien.  If any action or proceeding is commenced to which the Mortgagee is made a party or in which it becomes necessary to defend or uphold the lien of this Mortgage, then the Mortgagor shall, on demand, reimburse the Mortgagee for all expenses including, without limitation, attorneys' fees and disbursements and appellate attorneys' fees and disbursements and all Transfer Tax Expenses (hereinafter defined) incurred by the Mortgagee in connection with any such action or proceeding, together with interest thereon at the Delinquency Rate, from the date of such demand until the same are paid to the Mortgagee. To the extent that the recovery of any of the foregoing costs, expenses and disbursements is prohibited or limited by the provisions of law relating to the recovery of costs, expenses and disbursements, such provisions of law shall prevail and thereby preclude or limit, as the case may be, the recovery of such costs, expenses and disbursements.

Section 1.11   Additional Advances and Disbursements.  The Mortgagor shall pay when due all payments and charges required to be paid by the Mortgagor under each of the Leases and all liens, encumbrances, and security interests which may be or become superior or inferior to the lien of this Mortgage and, in default thereof, the Mortgagee shall have the right, but shall not be obligated, to pay, without notice to the Mortgagor, such payments and charges and the Mortgagor shall, on demand, reimburse the Mortgagee for all amounts so paid and all costs and expenses incurred in connection therewith, together with interest thereon at the Delinquency Rate, from the date such payments and charges are so advanced until the same are paid to the Mortgagee. In addition, upon default of the Mortgagor in the performance of any terms, covenants, conditions or obligations by it to be performed under any such prior or subordinate lien or encumbrance or under any of the Leases, or any other lease or security interest, or upon default of the Mortgagor in the performance of any of the terms, covenants, conditions or obligations by it to be performed under this Mortgage, the Mortgagee shall have the right, but shall not be obligated, to cure such default in the name and on behalf of the Mortgagor, which right to cure any such default is intended by the Mortgagor and the Mortgagee to be in addition to, and not in limitation of, or in lieu of, or as a waiver of, any right which the Mortgagee may have to cure any default under any of the Leases, liens, encumbrances and security interests, as expressly set forth therein. All sums advanced and expenses incurred at anytime by the Mortgagee pursuant to this Section 1.11 or as otherwise provided under the terms and provisions of this Mortgage or under applicable law shall (a) bear interest from the date that such sum is advanced, to and including the date of reimbursement, computed at an interest rate (the "Delinquency Rate") equal to the lesser of (i) TWENTY-FOUR (24%) and (ii) the maximum rate

E:\REDO OF LOAN2nd Amend & Restate Chart Lanc Mortgage.wpd

BK 2 7 0 3 PG 3 5 0

on behalf of the Mortgagor, which right to cure any ~~~~ ~~~~
the Mortgagee to be in addition to, and not in limitation of, or in lieu of, or as a waiver of, any right
which the Mortgagee may have to cure any default under any of the Leases, liens, encumbrances and
security interests, as expressly set forth therein. All sums advanced and expenses incurred at anytime
by the Mortgagee pursuant to this Section 1.11 or as otherwise provided under the terms and
provisions of this Mortgage or under applicable law shall (a) bear interest from the date that such
sum is advanced, to and including the date of reimbursement, computed at an interest rate
(the "Delinquency Rate") equal to the lesser of (i) TWENTY-FOUR (24%) and (ii) the maximum rate

permitted by applicable law, computed from the original due date to the date of receipt of such
payment by the Mortgagee, in good and immediately available funds, and (b) be deemed to be
Indebtedness secured by this Mortgage. The Mortgagor agrees that any such delinquency charges
shall not be deemed to be additional interest or a penalty, but shall be deemed to be liquidated
damages because of the difficulty in computing the actual amount of damages in advance; provided,
however, that any sums collected by the Mortgagee as liquidated damages, as aforesaid, which are
held to be interest in excess of the maximum rate permitted by applicable law, shall be deemed a
payment in reduction of the principal sum then outstanding under this Mortgage and shall be so
applied. Upon written request of the Mortgagor, the Mortgagee shall deliver to the Mortgagor copies
of any receipts or other evidence for amounts paid by the Mortgagee pursuant to this Section 1.11.

Section 1.12. Costs of Enforcement. The Mortgagor agrees to bear and pay all expenses
(including, without limitation, reasonable attorneys' fees and disbursements and appellate attorneys'
fees and disbursements and all Transfer Tax Expenses) of or incidental to the enforcement of any
provision hereof, or the enforcement, compromise or settlement of this Mortgage or the
Indebtedness, and for the curing thereof, or for defending or asserting the rights and claims of the
Mortgagee in respect thereof, by litigation or otherwise. All rights and remedies of the Mortgagee
shall be cumulative and may be exercised singly or concurrently.   Notwithstanding anything
contained in this Mortgage to the contrary, the Mortgagor: (a) shall not (i) at any time, insist upon,
or plead, or in any manner whatever claim or take any benefit or advantage of, any stay or extension
or moratorium law, any exemption from execution or sale of the Premises or any part thereof,
whenever enacted, now or at any time hereafter in force, which may affect the covenants and terms
of performance of this Mortgage, (ii) claim, take or insist upon any benefit or advantage of any law
now or hereafter in force providing for the valuation or appraisal of the Premises, or any part thereof,
prior to any sale or sales thereof which may be made pursuant to any provision in this Mortgage, or
pursuant to the decree, judgment or order of any court of competent jurisdiction or (iii) after any such
sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem
the property so sold or any part thereof and (b) hereby expressly waives all benefit or advantage of
any such law or laws which may, and covenants not to, hinder, delay or impede the execution of any
power granted in this Mortgage or delegated to the Mortgagee, and agrees to suffer and permit the
execution of every power as though no such law or laws had been made or enacted. The Mortgagor,
for itself and all who may claim under it, waives, to the extent that it lawfully may, all right to have
the Premises marshaled upon any foreclosure hereof.

Section 1.13. Mortgage Taxes. The Mortgagor shall pay or cause to be paid any and all
taxes, including, without limitation, Transfer Tax Expenses, charges, filing, registration and
recording fees, excises and levies imposed upon the Mortgagee by reason of its ownership of this
Mortgage, any security instrument with respect to the Equipment or with respect to its interest
therein and any instrument of further assurance, other than income, franchise and doing business
taxes, and shall pay or cause to be paid all stamp taxes and other taxes required to be paid on this
Mortgage. In the event the Mortgagor fails to make such payments or fails to cause such paym~
to be made within five (5) days after written notice thereof from the Mortgagee, then the M~
shall have the right, but shall not be obligated, to pay the amounts due, and The Mortgag~

demand, reimburse the Mortgagee for said amounts, together with interest thereon at the Delinquency Rate, from the date said amounts are so advanced until the same are paid to the Mortgagee.

Section 1.14   Escrow Deposits.  The Mortgagor shall deposit with the Mortgagee, monthly, one-twelfth(1/12th) of the annual charges for Taxes, insurance premiums and other charges which might become a lien upon the Premises or any portion thereof.  In addition, if required by the Mortgagee, the Mortgagor shall, simultaneously therewith, deposit with the Mortgagee a sum of money which, together with the monthly installments will be sufficient to make such payments at least thirty (30) days prior to the date such payments are due.  Should said charges not be ascertainable at the time any deposit is required to be made with the Mortgagee, the deposit shall be made on the basis of the charges for the prior year and, when the charges are fixed for the then current year, the Mortgagor shall deposit any deficiency with the Mortgagee.  All funds so deposited with the Mortgagee may be held by it in a non-interest bearing account, may be commingled by the Mortgagee with its general funds and, provided that the Mortgagee shall not otherwise have used a portion of such funds in accordance with the provisions of this Mortgage, such funds, shall be applied in payment of the aforementioned charges when and as payable, to the extent the Mortgagee shall have such funds on hand. In the event that there shall occur an Event of Default, the funds deposited with the Mortgagee, as aforementioned, maybe applied in payment of the charges for which such funds shall have been deposited or the payment of the Indebtedness or any other charges affecting the security of the Mortgagee, as the Mortgagee determines, in its sole discretion, but no such application shall be deemed to have been made by operation of law or otherwise until actually made by the Mortgagee as provided in this Mortgage. The Mortgagor shall furnish the Mortgagee with bills for the charges for which the aforesaid escrow deposits are required to be made under this Mortgage and/or such other documents necessary for the payment of same, at least thirty (30) days prior to the date on which the charges first become payable.  Upon an assignment of this Mortgage, the Mortgagee shall have the right to pay over the balance of any sums deposited pursuant to this Section 1.14 and in its possession to the assignee and, thereupon, the Mortgagee shall be completely released from all liability with respect to such sums, and the Mortgagor shall look solely to such assignee with respect thereto.

Section 1.15.  Late Charges.

Note

(a)     In the event the Mortgagor fails to make any payment of principal due under this Mortgage , whether by acceleration, prepayment or otherwise, there shall be no grace period and the Mortgagee, in addition to its rights set forth herein, Mortgagor will pay a late charge to Mortgagee. The amount of the charge will be FIVE (5.00%) PERCENT of any overdue payment.

(b)     The Mortgagor agrees that any such delinquency charges shall not be deemed to be additional interest or a penalty, but shall be deemed to be liquidated damages because of the difficulty in computing the actual amount of damages in advance; provided, however, that if any such delinquency charge under Subparagraph (a) of this Section 1.15 is not recognized as liquidated damages (as contemplated by the Mortgagor and the Mortgagee) and is deemed to be interest in

14

E\REDO OF LOAN\2nd  Amend & Restate Cmt. Late Mortgage.wpd



(b)   The Mortgagor agrees that any additional interest or a penalty, but shall be deemed to be liquidated damages because of the difficulty in computing the actual amount of damages in advance; provided, however, that if any such delinquency charge under Subparagraph (a) of this Section 1.15 is not recognized as liquidated damages (as contemplated by the Mortgagor and the Mortgagee) and is deemed to be interest in

excess of the amount permitted to be charged to the Mortgagor under applicable law, the Mortgagee shall be entitled to collect a delinquency charge only at the highest rate permitted by law, and any interest actually collected by the Mortgagee in excess of such lawful amount shall be deemed a payment in reduction of the principal sum then outstanding and shall be so applied.  Until any and all such delinquency charges are paid in full, the amount thereof shall be added to the Indebtedness and shall be secured by this Mortgage and any other collateral held by the Mortgagee to secure the Indebtedness.  Late charges shall be payable immediately.

Section 1.16.  Financial Statements.

(a)     The Mortgagor shall furnish to the Mortgagee, within ninety (90) days after the end of each fiscal year of the Mortgagor's operation of the Real Estate, a balance sheet and statement of profit and loss for the Real Estate for such period, prepared by an independent certified public accountant of recognized standing and reasonably satisfactory to the Mortgagee and certified by the President of Mortgagor.  In addition, within ninety (90) days after the end of each fiscal year and fiscal quarter, the Mortgagor shall furnish operating statements of the Real Estate for such fiscal periods, prepared in accordance with generally accepted accounting principles consistently applied.  In addition, the Mortgagor shall, from time to time, within fifteen (15) days after request by the Mortgagee, furnish balance sheets and statements of profit and loss at such other dates and for such other periods as the Mortgagee shall reasonably require, all certified by a financial officer of Mortgagor, and Mortgagor shall permit the Mortgagee to examine, in the city where the Mortgagor's main office is located or at the Real Estate(at the option of the Mortgagee) , such records, books and papers of the Mortgagor which reflect upon its financial condition and the income and expense relative to the Real Estate, the Mortgagor's operation thereof and the business conducted thereat.  The cost of said examination shall be borne by Mortgagor.  The Mortgagor further agrees that, within ten (10) days after request by the Mortgagee, it shall furnish to the Mortgagee, but not more often than once in each calendar month, a written statement of receipts and disbursements in connection with the Mortgagor's operation of the Real Estate for the twelve (12) months next preceding the first day of the month in which the request is made.  Each such written statement shall be certified as true and correct by a financial officer of Mortgagor.

(b)     All financial statements of the Mortgagor shall be delivered in duplicate and shall be accompanied by the certificate of a financial officer of Mortgagor, dated within five (5) days of the delivery of such statements to the Mortgagee, stating that such financial officer knows of no Event of Default, nor of any event which, after notice or lapse of time or both, would constitute an Event of Default which has occurred and is continuing, or, if such event or Event of Default has occurred and is continuing, specifying the nature and period of existence thereof and what action the Mortgagor has taken or proposes to take with respect thereto and, except as otherwise specified, stating that The Mortgagor has fulfilled all its obligations under this Mortgage which are required to be fulfilled on or prior to the date of such certificate.  The Mortgagee shall have the right to request more frequent operating statements from the Mortgagor if a default or an Event of Default has occurred under this Mortgage or any other Loan Document.

E:\REDG OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd

BK 2 7 0 3 PG 3 5 3

**Section 1.17 Restrictive Covenants.** In advancing the principal sum secured by this Mortgage, the Mortgagee has relied upon, inter alia, the integrity, experience and general reputation of the Mortgagor and Guarantor in operating the Real Estate for the intended purpose. The Mortgagor acknowledges that the value of the Mortgagee's security is directly related to the manner in which the Real Estate will be operated. The Mortgagee, prior to advancing the Principal Amount and agreeing to the terms upon which this Mortgage is made, considered the Mortgagor's and Guarantor's net worth, experience, integrity and general reputation. Accordingly, the Mortgagor covenants and agrees that it shall not, without the prior written consent of the Mortgagee, which consent may be granted or withheld in the Mortgagee's sole and absolute discretion (a) discount rents under any Leases, or collect any rent under the Leases for more than thirty (30) days in advance of the time when the same shall become due, or anticipate the rents thereunder, except for security deposits, not in excess of an amount equal to one (1) month's rent; (b) further assign the Leases or the Profits due or to become due or to which the Mortgagor may now or hereafter become entitled; (c) waive, condone or in any manner discharge any Lessees (as such term is defined in the Assignment) from their obligations under the Leases; (d) cancel, abridge or accept surrender or termination of any of the Leases, unless the Mortgagor shall have entered into a Lease for the space to be vacated as a result thereof, upon the same terms or upon terms (including, without limitation, rentals and terms) more favorable to The Mortgagor, commencing within thirty (30) days after such cancellation, abridgement, surrender or other termination; (e) modify or amend, by sufferance or otherwise, any new or existing Lease for any portion of the Premises; (f) enter into any Lease for any portion of the Premises except on the following conditions: (i) the rental being charged under any such Lease is not less than that previously paid for the same space by the Lessee or Lessees that most recently vacated such space, (ii) the Lease is in substantial compliance with the standard form which has been approved by the Mortgagee, (iii) the base rental is not less than the average base rentals for all Leases or less than the fair market rental for similar space in other buildings similarly situated, and (iv) the term is at least one (1) year but not in excess of five (5)years) ; (g) renew or extend any Lease for any portion of the Premises (except for those currently in existence which permit unilateral tenant renewal or extension and then. only in accordance therewith), (A) unless the 'form and economic terms of the renewal or extension are, as to material terms, substantially similar to, or more advantageous than, the immediately prior Lease, (B) unless the tenant under the renewal or extension remains the same, (C) unless the base rental (at the time of such renewal or extension) is not less than the average base rentals for all Leases or not less than the fair market rental for similar space in other buildings similarly situated and (D) for a term in excess of five (5) years or less than one (1) year; (h) violate any of the provisions of this Mortgage; (i) execute any conditional bill of sale, chattel mortgage or other security instrument covering any of the Equipment or purchase any Equipment so that ownership of the same will not vest unconditionally in the Mortgagor, free form encumbrances on delivery to the Real Estate; (j) further assign any Lease or any of the rights thereunder assigned to the Mortgagee simultaneously herewith except pursuant to this Mortgage; (k) sell, transfer, convey, assign or otherwise dispose of (by operation of law or otherwise), indirectly or directly, any interest in the Premises; (l) further mortgage, pledge, encumber, alienate, hypothecate, grant a security interest in or grant any other interest whatsoever in the Premises or any part thereof, including, without limitation, any development rights in, to or above the Premises; (m) permit, cause or allow any person or entity other than the Mortgagor to enter into any agreement,

E:\REDO OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd

16



or directly, any interest in the Premises, (j) ~~~ ~~~~ hypothecate, grant a security interest in or grant any other interest whatsoever in the Premises or any part thereof, including, without limitation, any development rights in, to or above the Premises; (m) permit, cause or allow any person or entity other than the Mortgagor to enter into any agreement,

E'REDO OF LOAN2nd Amend & Restate Clark Lease Mortgage.wpd

BK 2703 PG 354

lease or other understanding with respect to the Premises or the transferee or owner of the Premises or the Mortgagor's interest therein; (n) permit, cause or allow any person or entity other than a management company owned, operated and/or controlled by Guarantor to act as the property manager of the Premises, it being understood that the Mortgagee's approval shall not be unreasonably withheld to the management of the Premises by another reputable property manager; (o) modify any of the terms of the Loan Documents; or (p) sell, convey or transfer, or permit the sale, conveyance or transfer, whether directly or indirectly, of all or any portion of the Mortgagor or any legal, equitable or beneficial interest in the Mortgagor.

The Mortgagor shall (unless such notice is contained in such tenant's Lease) deliver notice, via certified mail, return receipt requested (with a copy to the Mortgagee) of this Mortgage, which notice shall be accompanied by a copy of clauses (a), (b), (c) (d) , (e),(f), (g) and (j) of this Section 1.17, to all present and future holders of any interest in any Lease, by assignment or otherwise, within ten (10) days of the execution of each such Lease and/or assignment, and shall take such other action as may now or hereafter be reasonably required to afford the Mortgagee the full protections and benefits of this provision. The Mortgagor shall request the recipient of any such notice to acknowledge the receipt thereof; and shall deliver a copy of such receipt to the Mortgagee promptly after the Mortgagor's receipt of same.

Section 1.18.  Estoppel Certificates.

(a)    The Mortgagor, within ten (10) days after request by the Mortgagee, shall furnish to the Mortgagee a written statement, sworn to and duly acknowledged, setting forth the amount due on this Mortgage, the terms of payment and maturity date, the amount of the outstanding sum of the Indebtedness, whether any offsets or defenses exist against the Indebtedness, and, if any are alleged to exist, the nature thereof, in detail.

(b)    The Mortgagee agrees to furnish to the Mortgagor, within fifteen (15) business days after request by the Mortgagor (but not more frequently than four (4)times per annum), a written statement setting forth the outstanding principal amount due hereunder, the terms of payment and the maturity date, and whether the Mortgagee has knowledge of any default by the Mortgagor under this Mortgage.

Section 1.19.  Trust Funds.

(a)    The Mortgagor covenants that it shall receive the advances secured hereby, and shall hold the right to receive such advances, as a trust fund to be applied first for the purpose of paying the cost of the improvements, if any, before using any part of such advances for any other purpose.

(b)    All lease securities of Lessees under Leases, if any, shall be treated as trust funds not to be commingled with any other funds of the Mortgagor. Within ten (10) days after request by the Mortgagee, the Mortgagor shall furnish to the Mortgagee satisfactory evi~~~ compliance with this Subparagraph (b) together with a statement of all Lease securiti~

E'REDO OF LOAN2nd Amend & Restate Clark Lease Mortgage.wpd

BK 2703 PG 355

by the Lessees thereunder and copies of all Leases not theretofore delivered to the Mortgagee, certified by the Mortgagor.

Section 1.20. Indemnity; Provisions Regarding the Transfer Tax.

(a)    The Mortgagor shall indemnify and hold the Mortgagee harmless and defend it against any loss or liability, cost or expense (including, without limitation, attorneys' fees and disbursements) and all claims, actions, procedures and suits arising out of or in connection with any and all lawful action which maybe taken by the Mortgagee to enforce the provisions of this Mortgage whether or not suit is filed in connection with the same.

(b)    The Mortgagor covenants and agrees to pay all taxes, filing fees, interest, penalties and other charges (collectively, the "Transfer Tax Expenses") imposed by the State or payable under the provisions of laws of the State (hereinafter being collectively referred to as the "Transfer Tax Laws"), in connection with any transfer of the Premises or any portion thereof or any interest therein, by the Mortgagor or the Mortgagee, including, without limitation, the making or satisfaction of this Mortgage, the taking of any action permitted to be taken under this Mortgage by the Mortgagee (including, without limitation, foreclosure), the granting of a deed or assignment in lieu of foreclosure or the appointment of a receiver or any transfer pursuant to any sale of the Premises on a foreclosure, or by deed in lieu of foreclosure, of any prior or subordinate mortgage, and in default thereof, the Mortgagee may pay the same and the amount of such payment shall be added to the Indebtedness, together with interest thereon at the Delinquency Rate, from the date that such payment is made to and including the date the same is paid to the Mortgagee, and shall be secured by this Mortgage. The Mortgagor also covenants and agrees to execute, deliver and file all forms, applications, affidavits and other documents or instruments required pursuant to the provisions of the Transfer Tax Laws and to submit fully executed copies of same to the Mortgagee upon request.

(c)    ·(i)    Except as set forth in part (ii), Mortgagor shall, from time to time (but no more than once each year, except as frequently as may be requested after an Event of Default), within fifteen (15) days after request by the Mortgagee, furnish to the Mortgagee a statement (which may be relied upon by any person or entity) setting forth in detail satisfactory to the Mortgagee any and all information Mortgagee may need to comply with the Transfer Tax Laws, which statement shall be certified as true and correct by an officer of Mortgagor and Guarantor, together with copies of detailed supporting evidence of such changes and/or affidavits regarding same, in form satisfactory to the Mortgagee, including, without limitation, copies of all paid invoices and contracts for materials and services furnished.

(ii)    The Mortgagor covenants to deliver to the Mortgagee, within ninety (90) days after the date hereof, the first such statement required by part (i) above.

(e)    Within three (3) days after each transfer of the Premises, whether or not consented to by the Mortgagee, excluding any sale of the Premises on a foreclosure, or by deed in lieu of

LAREDO OF LI\LN2nd Amend & Restate Clerk Lease Mortgage.wpd


II 2 703 #835 b



(ii)    The Mortgagor covenants to deliver to the Mortgagee, within ninety (90) days after the date hereof, the first such statement required by part (i) above.

(e)    Within three (3) days after each transfer of the Premises, whether or not consented to by the Mortgagee, excluding any sale of the Premises on a foreclosure, or by deed in lieu of

E VREDO OF LOAN2nd Amend & Restate Clark Lane Mortgage.wpd

BK 2 703 PG 356

foreclosure, of this Mortgage or of any prior or subordinate mortgage, the Mortgagor covenants that it shall furnish to the Mortgagee true and complete copies of (i) the affidavits and tax returns required by the Transfer Tax Laws as executed by the Mortgagor and the transferee, and (ii) a cancelled check of the Mortgagee or a receipt from the State , marked "paid, " for the amount due pursuant to the Transfer Taxes (the amounts due under the Transfer Tax Law hereinafter collectively referred to as the "Gains and Transfer Taxes") , (iii) all tax returns and affidavits required by the Transfer Tax Law as executed by the Mortgagor and the transferee and (iv) any other forms, affidavits, applications, documents or instruments required pursuant to the Transfer Tax Laws.

(f)    Simultaneously with the transfer of the Premises by way of foreclosure of this Mortgage or deed in lieu of foreclosure, the Mortgagor shall furnish to the Mortgagee true and complete copies of the documents referred to in clauses (i) , (ii) , (iii) , and (iv) of Subparagraph (e) of this Section 1.20. The Mortgagor hereby irrevocably appoints the Mortgagee the attorney-in-fact of the Mortgagor, coupled with an interest, for the purpose of executing and delivering on behalf of the Mortgagor any such documents and any other documents or instruments which the Mortgagee may deem necessary or appropriate in connection with any Transfer Tax Expenses or matters relating to the Transfer Tax Laws.

(g)    Each statement to be furnished pursuant to this Section 1.20 shall include a statement of the amounts paid for any capital improvements made to the Premises by the Mortgagor as well as all other information necessary to determine the original purchase price of the Premises.

(h)    The Mortgagor agrees to indemnify and hold the Mortgagee harmless against any actual loss or liability, cost or expense (including, without limitation, attorneys' fees and disbursements) arising out of, or incurred in connection with, the Mortgagor's failure to comply with and perform its covenants and agreements contained in this Section 1.20.

(i)    The provisions of this Section 1.20 shall survive any sale of the Premises on a foreclosure of this Mortgage or by deed in lieu of foreclosure.

(j)    Nothing in this Section 1.20 shall be deemed to deprive the Mortgagee of its right to refuse consent to any transaction not permitted under this Mortgage without the consent of the Mortgagee, passage of time, the giving of notice or both, would constitute such a default.

(e)    In the event of the occurrence of any event which, with the giving of notice, the passage of time or both, would constitute a default by the Mortgagor in the performance of any of its obligations under the Loan Documents, including, without limitation, any default in the payment of any sums payable thereunder, then, in each and every case, the Mortgagee may, at its option, cause the default or defaults to be remedied and otherwise exercise any and all of the rights of the Mortgagee thereunder in the name of and on behalf of the Mortgagor. The Mortgagor shall, on demand, reimburse the Mortgagee for all advances made and expenses incurred by the Mortgagee in curing any such default(including, without limitation, reasonable attorneys' fees and

E VREDO OF LOAN2nd Amend & Restate Clark Lane Mortgage.wpd

BK 2 703 PG 357

disbursements), together with interest thereon computed at the Delinquency Rate, from the date that such advance is made to and including the date the same is paid to the Mortgagee.



## ARTICLE 2 - Default and Remedies

Section 2.01. Events of Default. Each of the following shall constitute an "Event of Default" under this Mortgage: (a) default in the payment of amounts required to be paid under this Mortgage for Taxes or municipal assessments (whether to Mortgagee or to the applicable taxing authority) or insurance premiums a period of three (3) days after the date they are required to be paid; or (b) default in the payment of the principal amount of the debt when the same shall be due and payable; or (c) default in the due observance or performance of any of the terms, covenants or conditions contained in this Mortgage or in any other Loan Document, other than the payment of money, for a period of twenty (20) days after receipt from the Mortgagee of written notice of such default (unless such default requires work to be performed, acts to be done or conditions to be removed in order to cure such default and the same cannot be performed, done or removed, as the case may be, within such twenty (20) day period, in which case no default shall be deemed to exist as long as the Mortgagor shall have commenced during the same within such twenty (20) day period and shall prosecute the same to completion with diligence); provided, however, that such grace period set forth in this Subparagraph (c) shall not apply to any other Event of Default expressly set forth in this Section 2.01 or to any Event of Default defined as such in any other Loan Document, or to any other covenant or condition with respect to which a grace period is expressly provided in such other Loan Document; or (d) should any representation made in this Mortgage, in any other Loan Document or in any other document given in connection herewith prove to be untrue in any material respect; or (e) default beyond any applicable grace period under any obligation set forth in this Mortgage; or (f) the further assignment, pledge or encumbrance by the Mortgagor of any of the Leases or of the Profits of the Real Estate or any part thereof, without the prior written consent of the Mortgagee; or (g) should the Mortgagor enter into, extend, cancel, terminate, modify or accept the surrender of any of the Leases in violation of the provisions of Section 1.17 of this Mortgage; or (h) the failure of the Mortgagor to pay, before any fine, penalty, interest or cost may be added thereto, all franchise taxes and charges, and other governmental charges, general and special, ordinary and extraordinary, unforeseen as well as foreseen, of any kind and nature whatsoever, including, without limitation, assessments for public improvements or benefits which are assessed, levied, confirmed, imposed or become a lien upon the Real Estate or any part thereof, or become payable during the term of this Mortgage; or the Mortgagor enters into any agreement, either written or oral, which has the effect of deferring the payment of any Taxes or other charges which are or can be assessed, levied, confirmed, imposed or become a lien on the Real Estate, or any part thereof, or become payable during the term of this Mortgage; or (i) the transfer, conveyance, assignment, sale or attempted sale, or other disposition (by operation of law or otherwise) of the Premises or any part thereof (including, without limitation, the Profits therefrom) or any interest in the premises or in the Mortgagor in violation of the provisions of Section 1.17 of this Mortgage, or the further mortgage, pledge, alienation, hypothecation, granting of a security interest in or other encumbrance by the Mortgagor of the Premises or any part thereof or any interest therein (whether superior or inferior to the lien of this Mortgage) in violation of the provisions of Section 1.17 hereof, without, in each case, the prior

20



Premises or any part thereof or any interest therein (whether superior or inferior to the lien of this Mortgage) in violation of the provisions of Section 1.17 hereof, without, in each case, the prior

E:\AERO OF LOAN\2nd Amend & Restat Clark Lane Mortgage.wpd

20

BK 2703 PG 358

written consent of the Mortgagee; or (j) if the Mortgagor or any general partner of the Mortgagor applies for, consents to, or if there shall be appointed, a receiver, liquidator or trustee of the Mortgagor or Guarantor or any of its or their respective properties and/or assets; or (k) if a petition in bankruptcy, an insolvency proceeding or a petition for reorganization shall have been filed against the Mortgagor or Guarantor and same is not withdrawn, dismissed, canceled or terminated within ninety (90) days from the date of such filing; or (1) if the Mortgagor Guarantor is adjudicated bankrupt or insolvent or a petition for reorganization is granted (without regard for any grace period provided for in this Mortgage); or (m) if there is an attachment or sequestration of any of the property and/or assets of the Mortgagor Guarantor and same is not promptly discharged or bonded; or (n) the Mortgagor or Guarantor files or consents to the filing of any petition in bankruptcy or commences or consents to the commencement of any proceeding under the Bankruptcy Reform Act of 1978, as amended, or under any successor thereto or under any other law, now or hereafter in effect, relating to the insolvency or reorganization of the Mortgagor or Guarantor the arrangement or readjustment of the debts of any of the foregoing; or (o) if the Mortgagor or Guarantor shall admit in writing the inability to pay its debts generally as they become due or shall consent to the appointment of a receiver, trustee or liquidator of the Mortgagor or Guarantor or any part of its or their property and/or assets, or (p) if the Mortgagor or Guarantor shall file a petition or answer seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the federal bankruptcy laws or any other applicable law; or (q) if the Mortgagor or Guarantor shall cause, or institute any proceeding for, or if there shall occur the dissolution or termination of the Mortgagor or Guarantor; or (r) if the Mortgagor or Guarantor ceases to do business or terminates its business as presently conducted for any reason whatsoever; or (s) if the Mortgagor or Guarantor shall violate any of the restrictive covenants set forth in Section 1.17 of this Mortgage; or (t) if a default shall occur under that certain Environmental Certificate and Agreement, dated as of the date hereof, by the Mortgagor and Guarantor, as indemnitors, for the benefit of the Mortgagee, as indemnitee; or (u) if the Mortgagor defaults beyond any applicable grace period under any other Loan Document or any other agreement that it has with the Mortgagee; or (v) if a default shall occur under any mortgage which is subordinate to the lien of this Mortgage or the mortgagee under any subordinate mortgage shall commence a foreclosure action in connection with said mortgage, provided that this provision shall not be deemed to be a waiver of Section 1.17 of this Mortgage or any other provisions of this Mortgage.

Section 2.02  Cross Default.  Intentionally deleted..

Section 2.03  Remedies.

(a)  Upon the occurrence of any Event of Default, the Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against the Mortgagor and in and to the Premises or any part thereof, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as the Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of the Mortgagee:  (i) declare the entire unpaid indebtedness to be immediately due and payable; (ii) enter into or upon the Real Estate, either personally or by its

E:\AERO OF LOAN\2nd Amend & Restat Clark Lane Mortgage.wpd

21

BK 2703 PG 359





agents, nominees or attorneys, and dispossess the Mortgagor and its agents and servants therefrom, and thereupon the Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Premises and conduct the business at the Real Estate, (B) complete any construction on the Real Estate, in such manner and form as the Mortgagee deems advisable, (C) make alterations, additions, renewals, replacements and improvements to or on the Premises,(D) exercise all rights and powers of the Mortgagor with respect to the Premises, whether in the name of the Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Profits and other income of the Premises and every part thereof and (E) apply the receipts from the Premises to the payment of the Indebtedness, after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and brokers' fees and all Transfer Tax Expenses) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, assessments, insurance and other charges in connection with the Premises, as well as just and reasonable compensation for the services of the Mortgagee, its counsel, brokers, agents and employees; (iii) institute proceedings for the complete foreclosure of this Mortgage, in which case the Premises or the Mortgagor's interest therein may be sold for cash or credit, in one or more portions: (iv) with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Indebtedness then due and payable, subject to the continuing lien of this Mortgage for the balance of the Indebtedness not then due; (v) sell for cash or credit the Premises or any part thereof and all estate, claim, demand, right, title and interest of the Mortgagor therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, in its entirety or in portions, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Premises, this Mortgage shall continue as a lien on the remaining portion of the Premises; (vi) subject to the provisions of Section 2.08 of this Mortgage, institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained in this Mortgage;(vii) apply for the appointment of a trustee, receiver, liquidator or conservator of the Premises, without regard for the adequacy of the security for the Indebtedness and without regard for the solvency of the Mortgagor or any guarantor or of any person, firm or other entity liable for the payment of the Indebtedness; (viii) cure such Event of Default, and, in such event, (A) the Mortgagor, on demand, shall reimburse the Mortgagee for any and all costs and expenses incurred by the Mortgagee in connection with the curing of any Event of Default, together with interest at the Delinquency Rate, from the date such costs and expenses are incurred until the same are paid to the Mortgagee and (B) the Mortgagee shall be entitled to apply any sums then held by the Mortgagee pursuant to the provisions of this Mortgage to the curing of such Event of Default or to reimburse the Mortgagee for costs and expenses incurred in connection therewith; and/or (ix) pursue such other remedies as the Mortgagee may have under any applicable law.

(b)  The purchase money proceeds or avails of any sale made under or by virtue of this Article 2, together with any other sums which then may be held by the Mortgagee under this Mortgage, whether under the provisions of this Article 2 or otherwise, shall be applied as follows:

22

E:\REDO OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd



(b)  The purchase money proceeds or sums which then may be held by the Mortgagee under this Article 2, together with any other sums which then may be held by the Mortgagee under this Mortgage, whether under the provisions of this Article 2 or otherwise, shall be applied as follows:

First:  To the payment of the costs and expenses of any such sale, including, without limitation, reasonable compensation to the Mortgagee's agents and counsel, and of any judicial proceedings wherein the same may be made, and of all expenses, including, without limitation liabilities and advances made or incurred by the Mortgagee under this Mortgage, and together with interest as provided in this Mortgage on all advances made by the Mortgagee and all taxes or assessments, except any taxes, assessments or other charges subject to which the Premises shall have been sold.

Second: To the payment of delinquency and late charges remaining unpaid under this Mortgage.

Third: To the payment of accrued and unpaid interest, if any, under this Mortgage.

Fourth: To the payment of the entire outstanding principal sum set forth in this Mortgage.

Fifth:  To the payment of any other sums required to be paid by the Mortgagor pursuant to any provision of this Mortgage.

Sixth:  To the payment of the surplus, if any, to whomsoever may lawfully be entitled to receive the same.  The Mortgagee and any receiver of the Premises, or any part thereof, shall be liable to account for only those rents, issues and profits actually received by it.

(c)  The Mortgagee may adjourn, from time to time, any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, the Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)  Upon the completion of any sale or sales made by the Mortgagee under or by virtue of this Article 2, the Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers, a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. The Mortgagee is hereby irrevocably appointed the true and lawful attorney of the Mortgagor, in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Premises and rights so sold and for that purpose the Mortgagee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons or entities with like power, the Mortgagor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof.  Any such sale or sales made under or by virtue of this Article 2, whether made under the power of sale granted under this Mortgage or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Mortgagor in and to the properties and rights so sold,

E:\RE\DO OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd

23

and shall be a perpetual bar both at law and in equity against the Mortgagor and against any and all persons or entities claiming or who may claim the same, or any part thereof, from, through or under the Mortgagor.

(e)    Anything contained in this Mortgage to the contrary notwithstanding, in the event of any sale made under or by virtue of this Article 2 (whether made under the power of sale granted under this Mortgage, or under or by virtue of judicial proceedings or a judgment or decree of foreclosure and sale) the entire Indebtedness, if not previously due and payable, immediately thereupon shall become due and payable.

(f)    Upon any sale made under or by virtue of this Article 2 (whether made under the power of sale granted under this Mortgage, or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale) , the Mortgagee may bid for and acquire the Premises or any part thereof and in lieu of paying cash there for may make settlement for the purchase price by crediting against the sales price the Indebtedness and the expenses of the sale, including Transfer Tax Expenses, and the costs of the action and any other sums which the Mortgagee is authorized to deduct under this Mortgage.

(g)    No recovery of any judgment by the Mortgagee and no levy of an execution under any judgment upon the Premises or upon any property of the Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Premises or any part thereof, or any liens, rights, powers or remedies of the Mortgagee under this Mortgage, but such liens, rights, powers and remedies of the Mortgagee shall continue unimpaired as before.

Section 2.04.  Possession of the Real Estate.  Upon the occurrence of any Event of Default under this Mortgage, it is agreed that the Mortgagor, if it is an occupant of the Real Estate or any part thereof, shall immediately surrender possession of the Real Estate so occupied to the Mortgagee, and if such occupant is permitted to remain in possession, the possession shall be as tenant of the Mortgagee and, on demand, such occupant (a) shall pay to the Mortgagee monthly, in advance, a reasonable rental for the space so occupied and in default thereof, and (b) may be dispossessed by the usual summary proceedings.  The covenants contained in this Mortgage may be enforced by a receiver of the Premises or any part thereof.  Nothing in this Section 2.04 shall be deemed to be a waiver of the provisions of Section 1.17 of this Mortgage.

Section 2.05.  Interest After Default.  If any payment due under this Mortgage is not paid when due, either at stated or accelerated maturity or pursuant to any of the terms hereof, then, and in such event, the Mortgagor shall pay or shall cause to be paid interest thereon from and after the date on which such payment first becomes due at the Delinquency Rate, and such interest shall be due and payable, on demand, at such rate until the entire amount due is paid to the Mortgagee, whether or not any action shall have been taken or proceeding commenced to recover the same or to foreclose this Mortgage.  Nothing in this Section 2.05 or in any other provision of this Mortgage shall constitute an extension of the time of payment of the Indebtedness.

24

E:\8\HO OF LOAN2nd Amend & Restate Clark Lane Mortgage.wpd

BK 2703 PG 362

whether or not any action shall have been taken or proceeding commenced to foreclose this Mortgage. Nothing in this Section 2.05 or in any other provision of this Mortgage shall constitute an extension of the time of payment of the Indebtedness.

BK 2703 PG 342

Section 2.06. The Mortgagor's Actions After Default. After the happening of any Event of Default and immediately upon the commencement of any action, suit or other legal proceedings by the Mortgagee to obtain judgment for the Indebtedness, or of any other nature in aid of the enforcement of this Mortgage, the Mortgagor shall (a) waive the issuance and service of process and enter its voluntary appearance in such action, suit or proceeding, and (b) if required by the Mortgagee, consent to the appointment of a receiver or receivers of the Premises and of all the Profits thereof. The Mortgagee's right to the appointment of a receiver under this Section 2.06 and under Section 2.03 of this Mortgage is an absolute right and shall not be affected by adequacy of security or solvency of the Mortgagor.

Section 2.07. Control be the Mortgagee After Default. Notwithstanding the appointment of any receiver, liquidator or trustee of the Mortgagor, or of any of its property, or of the Premises or any part thereof, upon the occurrence of a default under this Mortgage (without regard to any applicable grace period provided under this Mortgage), the Mortgagee shall be entitled to retain possession and control of all property now and hereafter covered by this Mortgage.

ARTICLE 3 - Miscellaneous

Section 3.01. Credits Waived. The Mortgagor shall not claim nor demand nor be entitled to any credit or credits against the Indebtedness for so much of the taxes assessed against the premises, or any part thereof, as is equal to the tax rate applied to the amount due on this Mortgage, or any part thereof, and no deductions shall otherwise be made or claimed from the taxable value of the Premises or any part thereof by reason of this Mortgage or the Indebtedness.

Section 3.02. Notices.

(a) All notices, demands or requests made pursuant to this Mortgage must be in writing and personally delivered or mailed to the party to which the notice, demand or request is being made, by certified or registered mail, return receipt requested, as follows, and shall be deemed given three (3) business days after being placed in the United States mail or upon personal delivery:

if to the Mortgagee, at the address set forth above, with a copy to:

Theodore Fichtenholtz, Esq.
Three Melrose Drive
Farmington, CT 06032 - 2249

if to the Mortgagor, at the address set forth above, with a copy to:

Pieter J. de Jong, Esq.
3 Beechnut Drive
Long Valley, NJ 07853

E:WPDO OF LOANS\d Amend & Restate Clark Lane Mortgage.wpd                                25

BK 2703 PG 363

or at such different address as either the Mortgagor or the Mortgagee shall hereafter specify by written notice as provided in this Mortgage.

(b)    The Mortgagor covenants and agrees to deliver or cause to be delivered to the Mortgagee within ten (10) days of its execution or adoption, as the case may be, each and every (i) document which assigns, pledges, transfers, encumbers or hypothecates any interest (including a right to receive distributions, allocations or profits) of the Mortgagor and (ii) amendment or agreement which amends the operating agreement and Articles of Organization of the Mortgagor. The Mortgagor also covenants and agrees to deliver to the Mortgagee copies of plans and specifications, schematic diagrams or similar documents relating to improvements made to the Real Estate, after request therefor by the Mortgagee. The Mortgagor also covenants and agrees to deliver or cause to be delivered to the Mortgagee, at least once each month, copies of all Leases for space at the Premises executed during the prior month.

Section 3.03.  Binding Obligations; Successors.  The provisions and covenants of this Mortgage shall run with the land, shall be binding upon the Mortgagor and shall inure to the benefit of the Mortgagee, subsequent holders of this Mortgage and their respective successors, assigns and participants. For the purpose of this Mortgage, the term"Mortgagor" shall mean the Mortgagor named in this Mortgage, any subsequent owner of the Premises, and their respective heirs, executors, legal representatives, successors and assigns.  If there is more than one Mortgagor, all their undertakings hereunder shall be deemed joint and several.

Section 3.04.  Captions.  The captions of the Sections of this Mortgage are for the purpose of convenience only and are not intended to be a part of this Mortgage and shall not be deemed to modify, explain, enlarge or restrict any of the provisions hereof.

Section 3.05.  Further Assurances.  The Mortgagor shall do, execute, acknowledge and deliver, at the sole cost and expense of the Mortgagor, all and every such further acts, deeds, conveyances, mortgages, assignments, estoppel certificates, notices of assignment, transfers and assurances as the Mortgagee may reasonably require, from time to time, in order to better assure, convey, assign, transfer and confirm unto the Mortgagee the rights now or hereafter intended to be granted to the Mortgagee under this Mortgage, any other instrument executed in connection with this Mortgage or any other instrument under which the Mortgagor may be or may hereafter become bound to convey, mortgage or assign to the Mortgagee for carrying out the intention of facilitating the performance of the terms of this Mortgage. The Mortgagor hereby appoints the Mortgagee its attorney-in-fact to execute, acknowledge and deliver for and in the name of the Mortgagor any and all of the instruments mentioned in this Section 3.05, and this power, being coupled with an interest, shall be irrevocable as long as any part of the Indebtedness remains unpaid.

Section 3.06.  Severability.  Any provision of this Mortgage which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability, without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provisions in any other jurisdiction.

26





prohibition or unenforceability, without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provisions in any other jurisdiction.

EVENTO OF LOAN2nd Amend & Restate Clerk Lane Mortgage wpd

26

### Section 3.07. General Conditions

(a) All covenants hereof shall be construed as affording to the Mortgagee rights additional to and not exclusive of the rights conferred under the provisions of the laws of the State or any applicable law of any other state. If there is a conflict between any provision of this Mortgage and the law of the State, the Mortgagor agrees that, to the extent permitted, the applicable provision of this Mortgage shall control.

(b) This Mortgage cannot be altered, amended, modified or discharged orally and no executory agreement shall be effective to modify or discharge it in whole or in part, unless it is in writing and signed by the party against whom enforcement of the modification, alteration, amendment or discharge is sought.

(c) No remedy conferred upon or reserved to the Mortgagee under this Mortgage is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given under this Mortgage or now or hereafter existing at law or in equity or by statute. No delay or omission by the Mortgagee in exercising any right or power accruing upon any Event of Default shall impair any such right or power, or shall be construed to be a waiver of any Event of Default, or an acquiescence therein. Acceptance of any payment after the occurrence of an Event of Default shall not be deemed to waive or cure such Event of Default; and every power and remedy given by this Mortgage to the Mortgagee may be exercised, from time to time, as often as may be deemed expedient by the Mortgagee. Nothing in this Mortgage shall affect the obligation of the Mortgagor to pay the Indebtedness in the manner and at the time and place therein respectively expressed.

(d) No waiver by the Mortgagee will be effective unless it is in writing and then only to the extent specifically stated. Without limiting the generality of the foregoing, any payment made by the Mortgagee for insurance premiums, taxes, assessments, water rates, sewer rentals or any other charges affecting the Premises shall not constitute a waiver of the Mortgagor's default in making such payments and shall not obligate the Mortgagee to make any further payments.

(e) The Mortgagee shall have the right to appearing and defend any action or proceeding, in the name and on behalf of the Mortgagor, which the Mortgagee, in its discretion, feels may adversely affect the Premises or this Mortgage. The Mortgagee also shall have the right to institute any action or proceeding which the Mortgagee, in its discretion, feels should be brought to protect its interest in the Premises or its rights under this Mortgage. All costs and expenses incurred by the Mortgagee in connection with such actions or proceedings, including, without limitation, reasonable attorneys' fees, appellate attorneys' fees and disbursements, shall be paid by the Mortgagor, on demand.

(f) In the event of the passage, after the date of this Mortgage, of any law of any governmental authority having jurisdiction, deducting from the value of land for the purpose of taxation, affecting any lien thereon or changing in any way the laws of the taxation on mortgages or

EVENTO OF LOAN2nd Amend & Restate Clerk Lane Mortgage wpd

27



BK 2 7 0 3 PG 3 6 5

debts secured by mortgages for federal, state or local purposes, or the manner of the collection of any such taxes, so as to affect this Mortgage, then the Mortgagor promptly shall pay to the Mortgagee, on demand, all taxes, costs and charges for which the Mortgagee is or may be liable as a result thereof, provided said payment shall not be prohibited by law or render this Mortgage usurious, in which event the Mortgagee may declare the Indebtedness to be immediately due and payable.

(g)    The Mortgagor hereby appoints the Mortgagee as its attorney-in-fact in connection with the Equipment covered by this Mortgage, where permitted by law, to file on its behalf any financing statements or other statements in connection therewith with the appropriate public office signed only by the Mortgagee, as secured party.  This power, being coupled with an interest, shall be irrevocable so long as any part of the Indebtedness remains unpaid.

(h)    The information set forth on the cover of this Mortgage is hereby incorporated herein.

(i)    The Mortgagor acknowledges that it has received a true copy of this Mortgage.

(j)    For the purposes of this Mortgage, all defined terms contained in this Mortgage shall be construed, whenever the context of this Mortgage so requires, so that the singular shall be construed as the plural and so that the masculine shall be construed as the feminine.

Section 3.08.  Promotional Material.  The Mortgagor authorizes the Mortgagee in consultation with the Mortgagor to issue press releases, advertisements and other promotional materials in connection with the Mortgagee's own business, promotional and marketing activities, describing the loan referred to in this Mortgage and the matters giving rise to such loan.

Section 3.09.  Legal Construction.    The enforcement of this Mortgage shall be governed, construed and interpreted by the laws of the state in which the Premises is located.  Nothing in this Mortgage or in any other agreement between the Mortgagor and the Mortgagee shall require the Mortgagor to pay, or the Mortgagee to accept, interest in an amount which would subject the Mortgagee to any penalty under applicable law.  In the event that the payment of any interest due under this Mortgage or any such other agreement would subject the Mortgagee to any penalty under applicable law, then ipso facto the obligations of the Mortgagor to make such payment shall be reduced to the highest rate authorized under applicable law.

Section 3.10.  Failure to Consent.  If the Mortgagor shall seek the approval by or the consent of the Mortgagee under this Mortgage and the Mortgagee shall fail or refuse to give such consent or approval, the Mortgagor shall not be entitled to any damages for any withholding or delay of such consent by the Mortgagee, it being intended that the Mortgagor's sole remedy shall be to bring an action for an injunction or specific performance, which remedy of an injunction or specific performance shall be available only in those cases where the Mortgagee has expressly agreed under this Mortgage not to unreasonably withhold or delay its consent or approval.

ERKETO OF LOAN/2nd Amend & Restes Clark Lane Mortgage.wpd

28



this Mortgage not to unreasonably withhold or delay its consent or approval.

EAREDO OF LOAN2nd Amend & Restate Clark Lane Mortgage.wpd

28

ⁿ2703ⁿ5366

### Section 1.11. Environmental Protection.

(a)    The Mortgagor represents, warrants and covenants that (i) the Premises has been at all times during the Mortgagor's ownership thereof and is presently free of contamination from any substance or material presently identified to be toxic or hazardous according to any applicable federal, state or local statute, rule or regulation (collectively, the "Law"), including, without limitation, any asbestos, PCB, radioactive substance, methane, volatile hydrocarbons, industrial solvents or any other material or substance which has in the past or could presently or at any time in the future cause or constitute a health, safety or other environmental hazard to any person, entity or property; (ii) the Mortgagor has not caused or suffered to occur, and the Mortgagor will not hereafter cause or suffer to occur, a discharge, spillage, uncontrolled loss, seepage or filtration of oil or petroleum or chemical liquids or solids, liquid or gaseous products or hazardous waste or hazardous substance (a "still") at, upon, under or within the Premises or any contiguous real estate; (iii) neither the Mortgagor nor any other party has been, is or will be, involved in operations at or near the Premises which could lead to the imposition on the Mortgagor or any other owner of the Premises of liability or the creation of a lien on the Premises, under the Law or under any similar applicable laws or regulations; and (iv) the Mortgagor has not permitted and will not permit any tenant or occupant of the Premises to engage in any activity that could lead to the imposition of liability on such tenant or occupant, the Mortgagor or any other owner of the Premises, or any part thereof, or the creation of a lien on the Premises, under the Law or any similar applicable laws or regulations;

(b)    The Mortgagor shall comply strictly and in all respects with the requirements of the Law and related regulations and with all similar applicable laws and regulations and shall notify the Mortgagee promptly in the event of any spill or hazardous substance upon the Premises, and shall promptly forward to the Mortgagee copies of all orders, notices, permits, applications or other communications and reports in connection with any such spill or hazardous substance or any other matters relating to the Law or related regulations or any similar applicable laws or regulations, as they may affect the Premises;

(c)    The Mortgagor, promptly upon the written request of the Mortgagee, from time to time, shall provide the Mortgagee with an environmental site assessment or environmental audit report, or an update of such assessment or report, all in scope, form and content satisfactory to the Mortgagee.

(d)    The Mortgagor shall indemnify the Mortgagee and hold the Mortgagee harmless from and against all loss, liability, damage and expense, including, without limitation, attorneys' fees and disbursements, suffered or incurred by the Mortgagee, whether as holder of this Mortgage, as mortgagee in possession or as successor in interest to the Mortgagor as owner of the Premises by virtue of foreclosure or acceptance of a deed in lieu of foreclosure (i) under or on account of the Law or related regulations or any similar applicable laws or regulations, including the assertion of any lien thereunder; (ii) with respect to any spill or hazardous substance affecting the Premises, whether or

not the same originates or emanates from the Premises or any such contiguous real estate, including any loss of value of the Premises as a result of a spill or hazardous substance; and (iii) with respect to any other matter affecting the Premises within the jurisdiction of the Environmental Protection Agency or the Department of Environmental Protection or their successors; and

(c)    In the event of any spill or hazardous substance affecting the Premises, whether or not the same originates or emanates from the Premises or any such contiguous real estate, and/or if the Mortgagor shall fail to comply with any of the requirements of the Law or related regulations or any other environmental law or regulation, the Mortgagee may at its election, but without the obligation to do so, give such notices and/or cause such work to be performed at the Premises and/or take any and all other actions as the Mortgagee shall deem necessary or advisable in order to remedy said spill or hazardous substance or cure said failure of compliance, and any amounts paid as a result thereof, together with interest thereon at the Delinquency Rate, from the date of payment by the Mortgagee to and including the date the same are paid to the Mortgagee, shall be immediately due and payable by the Mortgagor to the Mortgagee and until paid shall be added to and become a part of the Indebtedness and shall have the benefit of the lien hereby created as a part thereof.

Section 3.12.  Not Joint Venture or Partnership.  The Mortgagor and the Mortgagee intend that the relationship created under this Mortgage be solely that of mortgagor and mortgagee or borrower and lender, as the case may be.  Nothing in this Mortgage is intended to create a joint venture, partnership, tenancy-in-common or joint tenancy relationship between the Mortgagor and the Mortgagee, nor to grant the Mortgagee any interest in the Premises other than that of mortgagee or lender.

Section 3.13.  Brokerage.  The Mortgagor hereby represents and warrants to the Mortgagee that the Mortgagor has not dealt with any broker, finder or like agent in connection with the Loan. The Mortgagor hereby indemnifies and holds harmless the Mortgagee from and against any expense, cost or liability (including, without limitation, attorneys' fees and disbursements) arising from or incurred in connection with any claim by any broker, finder or like agent who shall claim any fee, commission or other compensation in connection with the Loan.  The Mortgagor hereby agrees to pay any expense, cost or liability (including, without limitation, attorneys' fees and disbursements) arising from or incurred in connection with such claim.

Section 3.14.  Power of Attorney.  Whenever in this Mortgage or in any other Loan Document the Mortgagee is appointed to act as attorney-in-fact for the Mortgagor, such appointment may be exercised by the following authorized officers: Cynthia Licata or James J. Licata or any Member of an L.L.C. that is the holder of the Loan.

Section 3.15.  WAIVER OF JURY TRIAL.

THE MORTGAGOR HEREBY WAIVES TRIAL BY JURY IN ANY COURT AND IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE FINANCING



CONNECTION WITH OR IN ANY WAY RELATED TO THE FINANCING

E\WEDO OF LOAN2nd Amend & Restate Clark Lane Mortgage.wpd                    30

**BI 2 7 8 3 PG 3 6 8**

TRANSACTIONS OF WHICH THIS MORTGAGE IS A PART AND/OR THE ENFORCEMENT OF ANY OF YOUR RIGHTS AND REMEDIES, INCLUDING WITHOUT LIMITATION, TORT CLAIMS. THE MORTGAGOR ACKNOWLEDGES THAT MORTGAGOR MAKES THIS WAIVE KNOWINGLY AND VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER. THE MORTGAGOR FURTHER ACKNOWLEDGES THAT THE LENDER HAS NOT AGREED WITH OR REPRESENTED TO MORTGAGOR OR ANY OTHER PARTY HERETO THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

THE MORTGAGOR AND/OR GUARANTORS ACKNOWLEDGE THAT THIS TRANSACTION IS A "COMMERCIAL TRANSACTION" AS SUCH IS DEFINED IN THE LAWS OF THE STATE, AS AMENDED FORM TIME TO TIME, AND HEREBY WAIVES ANY AND ALL RIGHTS THAT THE MORTGAGOR AND/OR GUARANTORS MAY HAVE UNDER THE LAWS OF THE STATE, AS AMENDED FROM TIME TO TIME, INTENDING THEREBY THAT IN THE EVENT OF ANY LEGAL ACTION BETWEEN THE MORTGAGOR AND/OR GUARANTORS AND THE LENDER OR HOLDER ARISING OUT OF THIS MORTGAGE OR THE MORTGAGE GIVEN AS SECURITY FOR THIS MORTGAGE, THE LENDER OR HOLDER MAY INVOKE ANY PREJUDGMENT REMEDY, INCLUDING   BUT NOT BEING LIMITED TO, GARNISHMENT, ATTACHMENT, FOREIGN ATTACHMENT AND REPLEVIN, WITHOUT GIVING THE MORTGAGOR AND/OR GUARANTORS ANY NOTICE OR OPPORTUNITY FOR A HEARING OR OBTAINING A COURT ORDER. THIS WAIVER IS MADE BY THE MORTGAGOR AND/OR GUARANTORS ON BEHALF OF THE MORTGAGOR AND/OR GUARANTORS AND THE MORTGAGOR'S AND/OR GUARANTOR'S SUCCESSORS, HEIRS AND ASSIGNS AND SHALL APPLY TO ANY AND ALL ACTIONS AGAINST SUCH SUCCESSORS, HEIRS AND ASSIGNS.

Section 3.16.  SERVICE OF PROCESS AND JURISDICTION.

MORTGAGOR, AND ITS AFFILIATES CONSENT TO SERVICE OF PROCESS BY CERTIFIED OR REGISTERED MAIL AT MORTGAGOR'S ADDRESS AND IN ACCORDANCE WITH THE PROVISIONS OF SECTION 3.01 HEREOF OR IN ANY OTHER MANNER PROVIDED BY LAW. MORTGAGOR AGREES THAT SERVICE IN THE FOREGOING MANNER SHALL BE DEEMED, IN EVERY RESPECT, EFFECTIVE SERVICES OF PROCESS UPON MORTGAGOR, OR THE APPLICABLE AFFILIATE OF MORTGAGOR, AND BE  TAKEN AND HELD TO BE VALID PERSONAL SERVICE OF PROCESS UPON, AND PERSONAL DELIVERY TO, MORTGAGOR.  MORTGAGOR AGREES THAT MORTGAGOR'S SUBMISSION TO JURISDICTION AND SERVICE OF PROCESS BY MAIL IS MADE FOR THE EXPRESS BENEFIT OF MORTGAGEE.

E\WEDO OF LOAN2nd Amend & Restate Clark Lane Mortgage.wpd                    31

**BI 2 7 0 3 PG 3 6 9**



Exhibit A
Metes and Bounds of Real Estate

EX\DOC\ DF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd



*Land Title Agency, Inc.*
*464 Valley Brook Avenue*
*Lyndhurst, NJ 07071*
*(201)804-8844*

Title No. 96-LT-0393.E

### DESCRIPTION

ALL that certain tract or parcel of land and premises, situate, lying and being in the Borough of Bernardsville, in the County of Somerset, and State of New Jersey, more particularly described as follows:

BEGINNING at an iron on the northeasterly line of Clark Road (50 feet wide) in the southerly line of land now or formerly of Thomas and Mina Gordon, thence

1.   ( the following four courses and distances along lands of Gordon) North 20 degrees 10 minutes 20 seconds East 57.55 feet to an iron, thence

2.   Along the center of a driveway North 50 degrees 51 minutes 50 seconds East 424.62 feet to an iron, thence

3.   North 44 degrees 31 minutes 50 seconds East 321.69 feet, thence

4.   South 41 degrees 20 minutes 40 seconds East 441.49 feet to a marble monument, thence

5.   (the next two courses by new lines through lands of grantors herein) South 63 degrees 59 minutes West 216.95 feet, thence

6.   South 53 degrees 43 minutes 20 seconds West 689.02 feet to the northeasterly line of Clark Road, thence

7.   Along the northeasterly line of Clark Road North 29 degrees 01 minutes 10 seconds West 54.18 feet to a monument, thence

8.   Still along Clark Road North 20 degrees 51 minutes 10 seconds West 252.08 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:

Being known as Lot 47 and Lot 47 Q0003 in Block 2 on the Official Tax Map of the Borough of Bernardsville in the County of Somerset and State of New Jersey.

Being also known as 41 Clark Road.

BK 2703 PG 371



*Land Title Agency, Inc.*
*464 Valley Brook Avenue*
*Lyndhurst, NJ 07071*
*(201)804-8844*

Title No. 96-LT-0393-D

DESCRIPTION

ALL that certain tract or parcel of land and premises, situate,
lying and being in the Borough of Bernardsville, in the County of
Somerset, and State of New Jersey, more particularly described as
follows:

BEGINNING at a point in the easterly side of Clark Road said point
being the most northwesterly corner of Lot 47 in Block 2 as shown
on the Borough of Bernardsville Tax Map and running thence;

1.   Along the easterly side of Clark Road North 20 degrees 46
     minutes 09 seconds West 66.71 feet to a point; thence

2.   Still along the easterly side of Clark Road North 00 degrees
     12 minutes 00 seconds East 430.97 feet to a point; thence

3.   Still along the easterly side of Clark Road North 00 degrees
     39 minutes 00 seconds West 507.32 feet to a point; thence

4.   Still along the easterly side of Clark Road on a curve bearing
     to the left having a radius of 200.00 feet an arc distance of
     11.05 feet to a point; thence

5.   On a curve bearing to the right having a radius of 25.00 feet
     an arc distance of 35.98 feet to a point; thence

6.   North 78 degrees 39 minutes 12 seconds East 330.57 feet to a
     point; thence

7.   On a curve bearing to the right having a radius of 218.09 feet
     an arc distance of 220.77 feet to a point; returning to the
     place of BEGINNING: thence

8.   North 20 degrees 13 minutes 30 seconds East 57.55 feet to a
     point; thence

9.   North 50 degrees 55 minutes 00 seconds East 424.62 feet to a
     point; thence

10.  North 44 degrees 35 minutes 00 seconds East 321.69 feet to a
     point; thence

(Continued)

BK2703PG372

10. North 44 degrees 35 minutes 00 seconds East 321.69 feet to a
point; thence

(Continued)



BK 2703 PG 373

Section 3.17 Prior Mortgage.

This Second Amended and Restated Mortgage amends and restates the Amended and Restated mortgage dated September 25th, 1996 from the undersigned (the "Mortgagor"), to First Connecticut Consulting Group, Inc., 301 Merritt 7 Corporate Park, Norwalk, CT 06851 (the"Mortgage") recorded on September 26th, 1996 in the Somerset County Clerk's office in Book 2609 at Page 442 (the "Prior Mortgage") . Upon recording of this Mortgage, the Prior Mortgage has no further force or effect and this Mortgage is substituted for the Prior Mortgage.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor's duly authorized officer or signatory as of the day and year first above written.


Lisa Cheney

Lorraine Mocco

STATE OF NEW JERSEY)
                    ) ss: Bernardsville, NJ
COUNTY OF Hudson )

On October 16, 1996 , before me personally came Lorraine Mocco , to me known, who, being by me duly sworn did depose and say that she resides at 81 Clark Lane, Bernardsville, NJ; that she is individual described in, and who executed, the foregoing instrument as his free act and deed.

LISA CHENEY
Notary Public OF NEW JERSEY.
My Commission Expires:   MARCH 30, 1999

F:\REDO OF LOAN\2nd Amend & Restate Clark Lane Mortgage.wpd                    32

BK 2703 PG 37