# EXHIBIT K

· LexisNexis®: SmartLinx™ Business Report Results

Source: Public Records > SmartLinx(TM) > **SmartLinx(TM) - Business Summary Reports** ⓘ
Terms: **Not Displayed** (Return to Results)

Permissible Uses: DPPA - 5. Insurer
GLBA - 1. Fraud Prevention or Detection
Click to visualize this report

Name Variations/DBAs (1) | Telephone #s | Addresses (1) | Profile Info
Bankruptcies | Judgments & Liens | Real Property | Additional Property
Licenses | Associated Entities (2) | Sources (2)

FOR INFORMATIONAL PURPOSES ONLY
Copyright 2005 LexisNexis,
a division of Reed Elsevier Inc. All Rights Reserved

| Name | Address | County | Pl |
|---|---|---|---|
| WILLIAM J MOURNES | 35 BIRCH RUN AVE DENVILLE, NJ 07834-9324 | MORRIS | |

## Name Variations

View Name

| Name Variation(s)/DBA(s) | |
|---|---|

| # | Name Variations |
|---|---|
| 1. | WILLIAM J MOURNES |

## Addresses

View Address

**Address Variation(s)**

| # | Address | County | MSA |
|---|---|---|---|
| 1. | 35 BIRCH RUN AVE DENVILLE, NJ 07834 | MORRIS | Newark, NJ - 5640 |

## Associated Entities

Person Associates (1) | Busine
View Person

**Person Associates**

| # | Name | Title(s) | Address |
|---|---|---|---|
| 1. | MOURNES, WILLIAM J | | 35 BIRCH RUN AVE DENVILLE, NJ 07834-9324 |

**Business Associates**

| # | Full Name | Address |
|---|---|---|
| 1. | DARE INVESTMENTS LLC | 1801 N 1120 W PROVO, UT 84604-1180 |

## Sources

**Sources**

2 Source Docum

All Sources

Business Finder                                                   <u>1 Source Docum</u>

Business Contacts                                                 <u>1 Source Docum</u>

**Important:** The Public Records and commercially available data sources used in Smartlinx(TM) Reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the information contained in the Smartlinx(TM) Reports is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.

Source: <u>Public Records</u> > <u>SmartLinx(TM)</u> > **SmartLinx(TM) - Business Summary Reports** 
Terms: **Not Displayed** (Return to Results)
View: Full
Date/Time: Wednesday, November 29, 2006 - 4:45 PM EST

LexisNexis®    <u>About LexisNexis</u>  | <u>Terms & Conditions</u>
<u>Copyright ©</u>  2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT L

3p60 - cash
ttn

## Collateral Assignment of Mortgage

TO ALL PEOPLE TO WHOM THESE PRESENTS COME, GREETING:

KNOW YE THAT, SWJ HOLDINGS, LLC, (SWJ/Assignor), in consideration of the payment specified below received from Cobra/Ventura Equities, LLC, (Assignee), does hereby collaterally assign, transfer and set over, without representation, warranty or recourse of any kind whatsoever, unto the assignee, all the Assignor's right, title and interest in and to that certain mortgage in the original principal sum of two million ($2,000,000) dollars from Lorraine Mocco (Mortgagor) to Assignor (Mortgagee), dated September 26, 1996 and recorded in the office of the Clerk/Register of Somerset County, 1996 133420 New Jersey in Book 2693 at page 865, which mortgage was amended and restated by two certain instruments both dated September 25, 1996 and recorded Book 2699 at page 442 and in Book 2703 at page 339 of said records, plus also that certain mortgage in the original principal sum of fifteen million ($15,000,000.00) dollars from Lorraine Mocco to First Connecticut consulting Group, Inc. Dated September 26, 1996, recorded September 26, 1996 in Mortgage book 5164 Page 55 in the Clerk's Office of the County of Middlesex. N.J., which mortgage was assigned to EMP Whole Loan I, LLC by Assignment dated September 26, 1996, recorded September 26, 1996 in Assignment Book 658 Page 312. Said Mortgage was amended and restated and recorded November 14, 1996 in mortgage Book 5187 Page 815. Said mortgages are collaterally assigned together with the debt or any other obligations therein described or referred to which said mortgage, as modified or amended, secures and the money due thereon with interest, and together with all mortgage loan files and documents including the Mortgagors obligations under her Chapter 11 plan of reorganization evidencing the mortgage with all related loan documents. The said assignor herein has subsequently purchased the rights of said EMP Whole Loan I, LLC, in and to the subject mortgages.

The Assignor has given this collateral assignment so that the Assignee, or his designated assignee, may use this collateral assignment as additional collateral with which to obtain funding. The Assignee represents that he will hold this collateral assignment in escrow until such time as the Assignee or its designated agent shall have received in collected funds the initial advance of ten dollars and other valuable consideration ($10.00). After the initial payment of ten dollars and other valuable consideration ($10.00) dollars the Assignee may then use this collateral assignment to obtain such funding as he determines in his sole discretion.

The Assignor reserves the right to commence foreclosure proceedings against the Mortgagor and in the event it elects to commence said proceedings prior to the release of this assignment the Assignee agrees to join in said proceedings, provided the Assignee shall have no responsibility for the payment of any costs or expenses related to the foreclosure proceedings.

The Assignor covenants that said mortgage secures an obligation in the original principal sum of two million (2,000,000) dollars and the said mortgage in the original





2005076239


SDP

AMB 5811-331
R 10-11-05

principal sum of fifteen million dollars ($15,000,000) together with interest due thereon, all as provided for in the loan documents

IN WITNESS WHEREOF, the said Assignor has hereunto executed this Collateral Assignment of Mortgage on May 15 2005.

# 4894

Witness                                    SWJ Holdings, LLC

                                           By : Stephen Podell
                                           Partner/Principle

Witness                                    SWJ Holdings LLC

                                           By: William J. Mournes
                                           Partner/Principle

State Of New Jersey

County Of Bergen

On May 26TH 2005, before me personally appeared Stephen Podell, to me known, who, being duly sworn did say that he/w is the Partner/Principle of SWJ Holdings, LLC signed his name thereto as his free act and deed and the free act and deed of said company.

                                           Notary Public
                                           My Commission Expires: 5-2-08 (SEAL)

DAVID J. COHN
I.D. # 2304861
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/18/2008

332

State Of New Jersey

County Of Bergen

On May 25TH 2005, before me personally, appeared William J. Mournes, to me known, who, being duly sworn did say that he is the Partner/Principle Of SWJ Holdings, LLC, signed his name thereto as his free act and deed and the free act and deed of said company.

Notary Public
My Commission Expires 8/1/08 (SEAL)

DAVID J. COHN
I.D. # 2304551
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 8/28/2008

Advertising Management + Consulting Svcs. Inc
Greg Crane
4710 E. Falcon Dr. Suite 121
Mesa AZ 85215

333

# EXHIBIT M

EXHIBIT "A"

Advertising Mgmt + Consulting Svcs. Inc
4710 E. Falcon Dr. #121
→ Mesa, AZ 85215



BRETT R. RADI COUNTY CLERK
SOMERSET COUNTY, NJ
2005 NOV 14 09:02:55 AM
BK:6025 PG:188-191
INSTRUMENT # 2005085591

2005085591

# Assignment of Mortgage

TO ALL PEOPLE TO WHOM THESE PRESENTS COME, GREETING:

KNOW YE, THAT, Cobra/Ventura Equities, LLC (Assignor), a New Jersey company, acting herein by William J. Mournes, its manager and/or by Gordon Duval, Esq., as Trustee for Cobra/Ventura Equities, LLC, effective May 25, 2005, in consideration of the payment of good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, from Advertising Management and Consulting Services, Inc., a Arizona corporation (Assignee), does hereby assign, transfer and set over unto the Assignee, all of the right, title and interest in and to that certain mortgage in the original principal sum of two million ($2,000,000) dollars from Lorraine Mocco (Mortgagor), along with any and all supporting documents and claims, to First Connecticut Consulting Group, Inc. (Mortgagee), dated September 26, 1996 and recorded in the office of the Clerk/Register of Somerset County, New Jersey in Book 2693 at page 865, which mortgage was amended and restated by two certain instruments both dated September 25, 1996 and recorded in Book 2699 at page 442 and in Book 2703 at page 339 of said records, together with the debt or any other obligation therein described or referred to which said mortgage, as modified or amended, secures and the money due thereon with interest, and together with all mortgage loan files and documents including the Mortgagor's obligations under her chapter 11 plan of reorganization evidencing the mortgage with all related loan documents.

# 1996 133420

Assignor warrants and represents the following to Assignee:

    a.    The Mortgage is a first lien on the property located at 41 & 81 Clark Road, Bernardsville, New Jersey 07924 and more fully described in the appraisals identified below and incorporated herein by reference; and

1

Initials GC

Assignee - Assignor

Assignment of Mortgage to Advertising Management and Consulting Services, Inc.

b.    The obligations of Mortgagor secured by the Mortgage are no less than Three Million Dollars ($3,000,000) as of the date of this Assignment; and

c.    The Mortgage is now in default and that all obligations of Mortgagor secured by the Mortgage are currently due and payable; and

d.    The Mortgage is a legal, valid, and enforceable lien enforceable through a foreclosure action pursuant to applicable provisions of New Jersey law; and

e.    No claims have been made by any party that the Mortgage is invalid, not binding, disputed or otherwise of lesser value than what is stated herein; and

f.    There are no known defenses to the immediate foreclosure of the Mortgage or the underlying obligations secured thereby; and

g.    The signatory hereon on behalf of Assignor by his signature hereon and on any and all other documents executed with respect to the transaction contemplated herein has full power and authority to bind Corba/Ventura Equities, LLC; and

h.    Assignor holds 100% of all right, title and interest in and to the Mortgage, supporting documents and claims free of any liens, encumbrances or claims of any kind and description; and

i.    The consummation of the Assignment hereunder will not and does not violate any law, rule, judgment, order, obligation, or agreement to which Assignor is subject; and

j.    Assignor shall cooperate with any foreclosure procedures commenced by Assignee or Assignee's agents and/or successors; and

k.    The appraised value of the real property securing the repayment of the Mortgaged is $8,000,000, as further evidenced by National Appraisal Services (Lic# 42RC00059100) appraisals File No. 75673 and 75674 dated 1/13/05 for 81 and 41 Clark Road, Bernardsville, NJ 07924; and

2                    Initials _____  _____
                         Assignee    Assignor

Assignment of Mortgage to Advertising Management and Consulting Services, Inc.

l.  Assignor shall cause a Lenders Policy to be issued in favor of Assignee, insuring but not limited to that the Mortgage, entitlement, position, transfer, assignment and the obligations of Mortgagor are as represented herein; and

m.  No specifically designated national blocked person, entity or embargoed country, State, Nation or entity, as recognized by the Government of the United States, is now, or hereafter will benefit from any transaction contemplated herein and no aspect of such transaction will benefit in any way any country, State, Nation or entity or any person, entity or group or persons or entities engaged directly or indirectly, or intending directly or indirectly to engage, in international terrorism, the financing of international terrorism, money laundering or any other activity deemed unlawful by the United States or any Government or jurisdiction.

IN WITNESS WHEREOF, the said Assignor has hereunto executed this Assignment of Mortgage effectively dated May 25, 2005.

Witness:

Cobra/Ventura Equities, LLC.

By: _Gordon Duval_

Gordon Duval, Esq.,
Trustee for Cobra/Ventura Equities, LLC

STATE OF _UTAH_ )
                          )  ss:
COUNTY OF _UTAH_ )

_Eva L. Carlson_

Notary Public
My Commission Expires: _8-1-06_ (Seal)

EVA L. CARLSON
NOTARY PUBLIC · STATE of UTAH
395 WEST MAIN STREET
AMERICAN FORK, UT 84003
COMM. EXP. 8-1-2006

On this day, before me personally appeared Gordon Duval, Esq., as Trustee for Cobra/Ventura Equities, LLC, both known to me, who, being duly sworn did confirm his position with and authority to bind Cobra/Ventura Equities, LLC. and he signed his name thereto as his free act and deed and the free act and deed of said company.

5

Initials _GC_ _WEM_
Assignee - Assignor

Assignment of Mortgage to Advertising Management and Consulting Services, Inc.

# EXHIBIT N

Arizona Corporation Commission
State of Arizona Public Access System

08/13/2007                                                      11:33 AM

## Jump To...

| Annual Reports | Scanned Documents | Documents Waiting To Be Examined | Amendments | Notices of Pending Administrative Dissolution | Administrative Dissolutions and Reinstatements | Microfil |

---

### Corporate Inquiry

| File Number: -0961424-9 | Check Corporate Status |

**Corp. Name: ADVERTISING MANAGEMENT & CONSULTING SERVICES, INC.**

## Domestic Address

4710 E. FALCON DR.

SUITE 121

MESA, AZ 85205

## Statutory Agent Information

**Agent Name: JOSEPH C MCDANIEL AND ASSOCIAT**

**Agent Mailing/Physical Address:**

4840 E JASMINE ST #110

MESA, AZ 85205

**Agent Status: APPOINTED 01/30/2002**

**Agent Last Updated: 02/14/2002**

## Additional Corporate Information

| Corporation Type: BUSINESS | Business Type: GENERAL CONSULTING |
| Incorporation Date: 08/31/2000 | Corporate Life Period: PERPETUAL |
| Domicile: ARIZONA | County: MARICOPA |
| Approval Date: 08/31/2000 | Original Publish Date: 10/23/2000 |

## Officer Information

Case 2:07-cv-01328-SRB    Document 6-9    Filed 08/31/07    Page 14 of 46

Ariz. Corp. Comm. -- Corporations Division                    Page 2 of 4

```
GREG CRANE
PRESIDENT
4710 E FALCON DR #121
MESA,AZ  85215
Date of Taking Office: 09/06/2000
Last Updated: 07/27/2006
```

## Director Information

```
GREG CRANE
DIRECTOR
4710 E FALCON DR #121
MESA,AZ  85215
Date of Taking Office: 09/06/2000
Last Updated: 07/27/2006
```

## Annual Reports

| Next Annual Report Due: 08/31/2007 | E-FILE An Annual Report Online  << Click Here |
| --- | --- |
| FORMS For Annual Reports To Be Printed And Mailed  << Click Here | |

| File Year | File Month | Date Received | Reason Returned | Date Returned | Extension |
| --- | --- | --- | --- | --- | --- |
| 2006 | 08 | 07/26/2006 | | | |
| 2005 | 08 | 10/28/2005 | | | |
| 2004 | 08 | 10/28/2005 | | | |
| 2003 | 08 | 03/12/2004 | | | |
| 2002 | 08 | 09/19/2002 | | | |
| 2001 | 08 | 06/05/2001 | | | |

Back To Top

## Scanned Documents

### (Click on gray button to view document)

| Document Number | Description | Date Received |
| --- | --- | --- |
| 00319681 | 01 ANNUAL REPORT | 06/05/2001 |
| 00438037 | AGENT APPOINTMENT | 01/30/2002 |
| 00570570 | 02 ANNUAL REPORT | 09/19/2002 |
| 00895191 | 03 ANNUAL REPORT | 03/12/2004 |

Ariz. Corp. Comm. -- Corporations Division                                    Page 3 of 4

| 01298875 | 04 ANNUAL REPORT | 10/28/2005 |
| 01298874 | 05 ANNUAL REPORT | 10/28/2005 |
| 01695309 | 06 ANNUAL REPORT | 07/26/2006 |

Back To Top

## Documents Waiting To Be Examined

| Date Received | Description | Expedited |
|---|---|---|
| 06/25/2007 | 07 ANNUAL REPORT | No |

Back To Top

## Amendments

| Amendment Date | Amendment Type | Publish Date | Publish Exception |
|---|---|---|---|
| 02/14/2002 | NAME CHANGE | 03/18/2002 | |

Back To Top

## Notices of Pending Administrative Dissolution

### (Click on gray button - if present - to view notice)

| Date | Reason |
|---|---|
| 11/24/2004 | DELINQUENT ANNUAL REPORT |
| 01/20/2004 | DELINQUENT ANNUAL REPORT |

Back To Top

## Administrative Dissolutions and Reinstatements

### (Click on gray button - if present - to view notice)

| Administrative Dissolution Date | Administrative Dissolution Reason | Reinstatement Date |
|---|---|---|
| 03/24/2005 | AD-DISSOLVED - FILE A/R | 10/28/2005 |

Back To Top

Ariz. Corp. Comm. -- Corporations Division                              Page 4 of 4

## Name Changes / Mergers

| Description | Corporation Name | Date |
|---|---|---|
| CHANGED FROM | LETS-GO-RACING, INC. | 02/14/2002 |

## Microfilm

| Location | Date Received | Description |
|---|---|---|
| 11419011033 | 08/31/2000 | ARTICLES |
| 20262067036 | 10/23/2000 | PUB OF ARTICLES |
| 31621002247 | 06/05/2001 | 01 ANNUAL REPORT |
| 31650002052 | 01/30/2002 | AGENT APPOINTMENT |
| 11515024023 | 02/14/2002 | AMENDMENT |
| 20304028025 | 03/18/2002 | PUB OF AMENDMENT |
| 31688001818 | 09/19/2002 | 02 ANNUAL REPORT |
| 31781003363 | 01/20/2004 | NOTICE OF PENDING ADMINISTRATIVE DISSOLUTION |
| 31797000964 | 03/12/2004 | 03 ANNUAL REPORT |
| 20334018013 | 10/28/2005 | CERTIFICATE OF REINSTATEMENT |

Back To Top

- Corporate Name Search Instructions
- General Web Site Usage Instructions
- Return to STARPAS Main Menu
- Return to A.C.C. Corporations Division Main Page
- Return to Arizona Corporation Commission Home Page

# EXHIBIT O

Corporation Details - Secretary of State, Nevada

Page 1 of 2

HOME    ABOUT ROSS    NEWS    FAQ    CONTACT US    SEA

## Nevada Secretary of State
Ross Miller



Information Center    Election Center    Business Center    Licensing Center    Securities Center    Online Services

My Data Reports | Business Entity Search | Fee Schedule (Data Reports) | Login (Data Repc

# SKY LAND INVESTMENTS, LLC

PRINT

### Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 11/1/2005 2:21:56 PM |
| Type: | Domestic Limited-Liability Company | Corp Number: | E0736782005-0 |
| Qualifying State: | NV | List of Officers Due: | 11/30/2007 |
| Managed By: | Managers | Expiration Date: | 11/1/2035 |

### Resident Agent Information

| | | | |
|---|---|---|---|
| Name: | CORPORATE ADVISORY SERVICE, INC | Address 1: | 251 JEANELL DR |
| Address 2: | SUITE 3 | City: | CARSON CITY |
| State: | NV | Zip Code: | 89703 |
| Phone: | | Fax: | |
| Email: | | Mailing Address 1: | |
| Mailing Address 2: | | Mailing City: | |
| Mailing State: | | Mailing Zip Code: | |

View all business entities under this resident agent

### Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 0 |

No stock records found for this company

### Officers

☐ Include Inactive Officers

**Manager - STEVEN F STUCKER CHARTERED**

| | | | |
|---|---|---|---|
| Address 1: | 108 E JOHN ST | Address 2: | |
| City: | CARSON CITY | State: | NV |
| Zip Code: | 89706 | Country: | |
| Status: | Active | Email: | |

### Actions\Amendments

Corporation Details - Secretary of State, Nevada

**Click here to view 4 actions\amendments associated with this company**

| New Search |
| Printer Friendly |

You are currently not logged in

Nevada Secretary of State. Ross Miller.   Copyright 2007. All rights reserved.

Corporation Actions - Secretary of State, Nevada



HOME    ABOUT ROSS    NEWS    FAQ    CONTACT US    SEA

| Information Center | Election Center | Business Center | Licensing Center | Securities Center | Online Services |

My Data Reports | Business Entity Search | Fee Schedule (Data Reports) | Login (Data Repo

# Corporation Actions for "SKY LAND INVESTMENTS, LLC"

Sort by   File Date       ◉ descending ○ ascending order   [Re-Sort]

1 - 4 of 4 actions

| Actions\Amendments | | | |
|---|---|---|---|
| Action Type: | Amended List | | |
| Document Number: | 20070094314-20 | # of Pages: | 1 |
| File Date: | 02/07/2007 | Effective Date: | |
| (No Notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | 20060760468-89 | # of Pages: | 1 |
| File Date: | 11/27/2006 | Effective Date: | |
| (No Notes for this action) | | | |
| Action Type: | Initial List | | |
| Document Number: | 20050564178-98 | # of Pages: | 1 |
| File Date: | 11/18/2005 | Effective Date: | |
| (No Notes for this action) | | | |
| Action Type: | Articles of Organization | | |
| Document Number: | 20050520197-01 | # of Pages: | 4 |
| File Date: | 11/01/2005 | Effective Date: | |
| PU BOX SAE 11-2-05 | | | |

## Return to Corporation Details for "SKY LAND INVESTMENTS, LLC"

[ New Search ]

You are currently not logged in

Nevada Secretary of State, Ross Miller.   Copyright 2007. All rights reserved.

# EXHIBIT P

*Return To:*
*Advertising Mgmt & Consulting Svcs., Inc.*
*4710 E. Falcon Dr. Suite 121*
*Mesa, Az 85215*

# Assignment of Mortgage

TO ALL PEOPLE TO WHOM THESE PRESENTS COME, GREETING:

KNOW YE, THAT, **Advertising Management and Consulting Services, Inc.,** a Arizona corporation (Assignor), acting herein through its President Gregory Crane, effective November 16, 2005, in consideration of the payment of good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, from Sky Land Investments, LLC, a Nevada Limited Liability Company (Assignee), does hereby assign, transfer and set over, without representation, warranty or recourse of any kind whatsoever other as than provided herein, unto the Assignee, all of the Assignor's right, title and interest in and to that certain mortgage in the original principal sum of two million ($2,000,000) dollars from Lorraine Mocco (Mortgagor), along with any and all supporting documents and claims, to First Connecticut Consulting Group, Inc. (Mortgagee), dated September 26, 1996 and recorded in the office of the Clerk/Register of Somerset County, New Jersey in Book 2693 at page 865, which mortgage was amended and restated by two certain instruments both dated September 25, 1996 and recorded in Book 2699 at page 442 and in Book 2703 at page 339 of said records, together with the debt or any other obligation therein described or referred to which said mortgage, as modified or amended, secures and the money due thereon with interest, and together with all mortgage loan files and documents including the Mortgagor's obligations under her chapter 11 plan of reorganization evidencing the mortgage with all related loan documents, granted to Assignor from Cobra/Ventura Equities, LLC through the Assignment of Mortgage dated May 25, 2005, a copy attached as Exhibit "A".

Assignor further assigns and transfers to Assignee its position and beneficial interest as Insured Chicago Title Policy #72107-2576598 ("Title Policy"), a copy attached as Exhibit "B".

Page 1 of 3

Initials *GC*
AdMan



BRETT A. RADI COUNTY CLERK
SOMERSET COUNTY, NJ
2005 NOV 23 11:42:25 AM
BK:5930 PG:3827-3846
INSTRUMENT # 2005088751

2005088751

Assignor warrants the following:

a) The signatory hereon on behalf of Assignor by his signature hereon and on any and all other documents executed with respect to the transaction contemplated herein has full power and authority to bind Advertising Management and Consulting Services, Inc.; and

b) Assignor has not otherwise assigned to any other party the right, title and interest granted to Assignor through the Assignment of Mortgage from Cobra/Ventura Equities, LLC dated May 25, 2005; and

c) Assignor shall cooperate with the substitution of Assignee as the Named Insured on Title Policy to be updated by Chicago Title thereby causing Chicago Title's records to properly reflect Assignee as the Named Insured in Chicago Title Policy #72107-2576598 or equivalent; and

d) Assignor shall not object to any subsequent assignments of Assignee's right, title or interest.

e) No specifically designated national blocked person, entity or embargoed country, State, Nation or entity, as recognized by the Government of the United States, is now, or hereafter will benefit from any transaction contemplated herein and no aspect of such transaction will benefit in any way any country, State, Nation or entity or any person, entity or group or persons or entities engaged directly or indirectly, or intending directly or indirectly to engage, in international terrorism, the financing of international terrorism, money laundering or any other activity deemed unlawful by the United States or any Government or jurisdiction.

IN WITNESS WHEREOF, the said Assignor has hereunto executed this

Page 2 of 3

Initials _G L_
        AdMan

Assignment of Mortgage on November 16, 2005.

Witness:                        Advertising Management and Consulting Services,
Inc.

                          By: _____
                              Gregory Crane, its President

STATE OF _Arizona_         )
                           )       ss:
COUNTY OF _Maricopa_       )

On November 16, 2005, before me personally appeared Gregory Crane, as
President of Advertising Management and Consulting Services, Inc. known to
me, who, being duly sworn did confirm his position with Advertising
Management and Consulting Services, Inc. and he signed his name thereto as his
free act and deed and the free act and deed of said company.

                          _____
                          Notary Public
                          My Commission Expires: 7|30|07  (Seal)



Page 3 of 3

Initials _GC_
        AdMan

EXHIBIT "A"

Advertising Mgmt + Consulting Svcs. Inc
4710 E. Falcon Dr. #121
Mesa, AZ 85215

BRETT R. RADI COUNTY CLERK
SOMERSET COUNTY, NJ
2005 NOV 14 09:02:33 AM
BK:5825 PG:188-191
INSTRUMENT # 2005085591

## Assignment of Mortgage

2005085591

TO ALL PEOPLE TO WHOM THESE PRESENTS COME, GREETING:

KNOW YE, THAT, Cobra/Ventura Equities, LLC (Assignor), a New Jersey company, acting herein by William J. Mournes, its manager and/or by Gordon Duval, Esq., as Trustee for Cobra/Ventura Equities, LLC, effective May 25, 2005, in consideration of the payment of good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, from Advertising Management and Consulting Services, Inc., a Arizona corporation (Assignee), does hereby assign, transfer and set over unto the Assignee, all of the right, title and interest in and to that certain mortgage in the original principal sum of two million ($2,000,000) dollars from Lorraine Mocco (Mortgagor), along with any and all supporting documents and claims, to First Connecticut Consulting Group, Inc. (Mortgagee), dated September 26, 1996 and recorded in the office of the Clerk/Register of Somerset County, New Jersey in Book 2693 at page 865, which mortgage was amended and restated by two certain instruments both dated September 25, 1996 and recorded in Book 2699 at page 442 and in Book 2703 at page 339 of said records, together with the debt or any other obligation therein described or referred to which said mortgage, as modified or amended, secures and the money due thereon with interest, and together with all mortgage loan files and documents including the Mortgagor's obligations under her chapter 11 plan of reorganization evidencing the mortgage with all related loan documents. #1996 133420

Assignor warrants and represents the following to Assignee:

a.    The Mortgage is a first lien on the property located at 41 & 81 Clark Road, Bernardsville, New Jersey 07924 and more fully described in the appraisals identified below and incorporated herein by reference; and

1

Initials GC
Assignee - Assignor

Assignment of Mortgage to Advertising Management and Consulting Services, Inc.

b.    The obligations of Mortgagor secured by the Mortgage are no less than Three Million Dollars ($3,000,000) as of the date of this Assignment; and

c.    The Mortgage is now in default and that all obligations of Mortgagor secured by the Mortgage are currently due and payable; and

d.    The Mortgage is a legal, valid, and enforceable lien enforceable through a foreclosure action pursuant to applicable provisions of New Jersey law; and

e.    No claims have been made by any party that the Mortgage is invalid, not binding, disputed or otherwise of lesser value than what is stated herein; and

f.    There are no known defenses to the immediate foreclosure of the Mortgage or the underlying obligations secured thereby; and

g.    The signatory hereon on behalf of Assignor by his signature hereon and on any and all other documents executed with respect to the transaction contemplated herein has full power and authority to bind Corba/Ventura Equities, LLC; and

h.    Assignor holds 100% of all right, title and interest in and to the Mortgage, supporting documents and claims free of any liens, encumbrances or claims of any kind and description; and

i.    The consummation of the Assignment hereunder will not and does not violate any law, rule, judgment, order, obligation, or agreement to which Assignor is subject; and

j.    Assignor shall cooperate with any foreclosure procedures commenced by Assignee or Assignee's agents and or successors; and

k.    The appraised value of the real property securing the repayment of the Mortgaged is $8,000,000, as further evidenced by National Appraisal Services (Lic# 42RC00059100) appraisals File No. 75673 and 75674 dated 1/13/05 for 81 and 41 Clark Road, Bernardsville, NJ 07924; and

2                            Initials GC _____

                                        Assignee   Assignor

Assignment of Mortgage to Advertising Management and Consulting Services, Inc.

l.    Assignor shall cause a Lenders Policy to be issued in favor of Assignee, insuring but not limited to that the Mortgage, entitlement, position, transfer, assignment and the obligations of Mortgagor are as represented herein; and

m.    No specifically designated national blocked person, entity or embargoed country, State, Nation or entity, as recognized by the Government of the United States, is now, or hereafter will benefit from any transaction contemplated herein and no aspect of such transaction will benefit in any way any country, State, Nation or entity or any person, entity or group or persons or entities engaged directly or indirectly, or intending directly or indirectly to engage, in international terrorism, the financing of international terrorism, money laundering or any other activity deemed unlawful by the United States or any Government or jurisdiction.

IN WITNESS WHEREOF, the said Assignor has hereunto executed this Assignment of Mortgage effectively dated May 25, 2005.

Cobra/Ventura Equities, LLC.

Witness:

By: _Gordon Duval_

Gordon Duval, Esq.,
Trustee for Cobra/Ventura Equities, LLC

STATE OF _UTAH_ )
                                    )    ss:
COUNTY OF _UTAH_ )

_Eva L. Carlson_
Notary Public
My Commission Expires: _8-1-06_ (Seal)

EVA L. CARLSON
NOTARY PUBLIC • STATE of UTAH
335 WEST MAIN STREET
AMERICAN FORK, UT 84003
COMM. EXP. 8-1-2006

On this day, before me personally appeared Gordon Duval, Esq., as Trustee for Cobra/Ventura Equities, LLC, both known to me, who, being duly sworn did confirm his position with and authority to bind Cobra/Ventura Equities, LLC, and he signed his name thereto as his free act and deed and the free act and deed of said company.

3

Initials _GC_ _WEM_
Assignee - Assignor

Assignment of Mortgage to Advertising Management and Consulting Services, Inc.

Exhibit "B"

### AMERICAN LAND TITLE ASSOCIATION
### LOAN POLICY
### (10-17-92)

## Policy No. 72107- 2576598

# CHICAGO TITLE INSURANCE COMPANY

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*In Witness Whereof,* CHICAGO TITLE INSURANCE COMPANY has caused this policy to be signed and sealed as of Date of Policy shown in Schedule A, the policy to become valid when countersigned by an authorized signatory.

CHICAGO TITLE INSURANCE COMPANY

By:

*President*

By:

*Secretary*

ALTA Loan Policy (10-17-92)

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE A

POLICY NUMBER : 72107-2576598

Amount of Insurance: $2,000,000.00

Date of Policy:        May 25, 2005

Office File Number:    HTA-2005-171

1.  Name of Insured:

    Advertising Management and Consulting Services, Inc., an Arizona Corporation, its successors and/or assigns as their interest may appear

2.  Title to the estate or interest in the land is at date of policy vested in:

    Lorraine Mocco, by deed from Jin P. Soh and Susan J. Soh, his wife, dated June 29, 1987, recorded July 7, 1987 in the Somerset County Clerk/Register's Office in Deed Book 1642, Page 293. (As to Parcel 1).

    And by deed from Jeffrey Zak Limited and Lorraine Mocco, to Lorraine Mocco, dated July 27, 1990, recorded July 30, 1990 in Deed Book 1784, Page 616 (As to Parcel 2).

3.  The estate or interest in the land which is encumbered by mortgage is:

    Fee Simple

4.  The insured mortgage and assignments thereof, if any, are described as follows:

    Mortgage made by Lorraine Mocco , to First Connecticut Consulting Group, Inc., dated September 26, 1996, and recorded in the Somerset County Clerk/Register's Office in Mortgage Book 2693, Page 865  in the amount of $2,000,000.00. Said mortgage was amended and restated by two certain instruments both dated September 25, 1996 and recorded in Book 2699 Page 442 and Book 2703 Page 339 of said records. Said mortgage was part of an Asset Purchase Agreement pursuant to Federal Bankruptcy Court approved action, in which said interest went to SWJ Holdings, LLC. Said SWL Holdings LLC collaterally assigned said mortgage, among others, to Cobra/ Ventura Equities, LLC. Said Cobra/ Ventura Equities, LLC subsequently assigned their interest in said mortgage to said Advertising Management and Consulting Services, Inc., which document and interest is the subject of this policy.

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

THIS POLICY INSURES THAT THE MORTGAGE HEREIN IS A VALID FIRST LIEN.

SEE SCHEDULE C, DESCRIPTION ATTACHED.

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

Policy Number 72107-2576598

## SCHEDULE C, DESCRIPTION

All that certain lot., tract or parcel of land and premises, situate, lying and being in the Borough of Bernardsville, County of Somerset and State of New Jersey, being further described as follows:

PARCEL ONE:

BEGINNING at a point in the easterly side of Clark Road said point being the most northwesterly corner of Lot 47 in Block 2 as shown on the Borough of Bernardsville Tax Map and running thence:

1.   Along the easterly side of Clark Road, North 20 degrees 46 minutes 00 seconds West, 66.71 feet to a point; thence

2.   Still along the easterly side of Clark Road, North 00 degrees 12 minutes 00 seconds East, 430.97 feet to a point; thence

3.   Still along the easterly side of Clark Road, North 00 degrees 39 minutes 00 seconds West, 507.32 feet to a point; thence

4.   Still along the easterly side of Clark Road, on a curve bearing to the left, having a radius of 200.00 feet, an arc distance of 11.05 feet to a point; thence

5.   On a curve bearing to the right having a radius of 25.00 feet, an arc distance of 35.98 feet to a point; thence

6.   North 78 degrees 39 minutes 12 seconds East, 330.57 feet to point; thence

7.   On a curve bearing to the right, having a radius of 218.09 feet, an arc distance of 220.77 feet to a point, returning to the place of BEGINNING; thence

8.   North 20 degrees 13 minutes 30 seconds East, 57.55 feet to a point; thence

9.   North 50 degrees 55 minutes 00 seconds East, 424.62 feet to a point; thence

10.  North 44 degrees 35 minutes 00 seconds East, 321.69 feet to a point; thence

11.  North 06 degrees 46 minutes 40 seconds West, 491.38 feet to the end of the 7th course herein.

PARCEL TWO

BEGINNING at an iron on the northeasterly line of Clark Road (50 feet wide) in the southerly line of land now or formerly of Thomas and Mina Gordon; thence

Issued by:
**Horizon Title Agency**
**65 East Route 4**
**River Edge, NJ 07661**
**Telephone: 201-226-0096 Fax: 201-226-0093**

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

1. The following four courses and distances along land of Gordon, North 20 degrees 10 minutes 20 seconds East, 57.55 feet to an iron; thence

2. Along the center of a driveway, North 50 degrees 51 minutes 50 seconds East, 424.62 feet to an iron; thence

3. North 44 degrees 31 minutes 50 seconds East, 321.69 feet; thence

4. South 41 degrees 20 minutes 40 seconds East, 441.49 feet to a marble monument; thence

5. (The next two courses by new lines through lands or grantors herein), South 63 degrees 59 minutes West, 216.95 feet; thence

6. South 53 degrees 43 minutes 20 seconds West, 689.02 feet to the northeasterly line of Clark Road; thence

7. Along the northeasterly line of Clark Road, North 29 degrees 01 minutes 10 seconds West, 54.18 feet to a monument; thence

8. Still along Clark Road, North 20 degrees 51 minutes 10 seconds West, 252.08 feet to the point and place of BEGINNING.

The premises to be insured known as Lot(s) 29, Block 2 on the Tax Map of the Borough of Bernardsville, County of Somerset State of New Jersey.

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE B

### Part I

Policy Number 72107-2576598

This policy does not insure against loss or damage by reason of the following:

1. Any facts about the land which a correct survey would disclose, and which are not shown by the public record.

2. This property is subject to the current year's taxes levied or to be levied, and not yet certified to by the Hudson County Board of Taxation in accordance with Chapter 397, Laws of 1941, as amended and supplemented.

3. Restrictions as set forth in Deed Book 1376 Page 440.

4. Easements as set forth in Deed Book 1385 Page 81, Deed Book 1374 Page 446, Deed Book 1733 Page 321, Deed Book Y-22 Page 410, Deed Book 1439 Page 546, Deed Book 1114 Page 326, Deed Book 1447 Page 147.

5. Lien for Added Assessments arising pursuant to the Farmland Assessment Act of 1964, N.J.S.A. 54:4.23.1 et seq. (Affects Parcels 1 and 2 )

6. Subject to the rights of others in and to Clark Road ( Affects Parcels 1 and 2 )

7. Terms, conditions, etc. of said Collateral Assignment of Mortgage from SWJ Holdings, Inc. to Cobra/Ventura Equities, LLC., dated May 25, 2005.

8. Terms, conditions, etc. of said Assignment of Mortgage from Cobra/Ventura Equities, LLC to Advertising Management and Consulting Services, Inc., dated May25,2005.

9. Regularity of all terms, conditions, decisions, orders, etc. of said Federal Bankruptcy Court proceedings in connection with the Asset Purchase Agreement to SWJ Holdings, LLC referred to in Schedule A, Item # 4 herein.

NOTE: Unless Schedule B Part II is attached there are no subordinate matters that affect the title to the estate or interest referred to in Schedule A.

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

Loan Policy

# CHICAGO TITLE INSURANCE COMPANY

SCHEDULE B

## PART II

Policy Number 72107-2576598

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to lien or charge of the insured mortgage upon said estate or interest:

NONE

COUNTERSIGNED

Authorized Signature

Issued by:
**Horizon Title Agency**
65 East Route 4
River Edge, NJ 07661
Telephone: 201-226-0096 Fax: 201-226-0093

# CHICAGO TITLE INSURANCE COMPANY

### SURVEY ENDORSEMENT
(Without Survey)

Attached to and made a part of Commitment Number HTA-2005-171 and Policy #72107-2576598

If this endorsement is attached to a Loan Policy, exception number 1 in Schedule B of this policy is hereby deleted and the Company insures against loss or damage which the insured shall sustain by reason of any encroachments, overlaps, boundary line disputes, or easements not set forth in Schedule B of Policy.

If this endorsement is attached to an Owner's Policy, this endorsement is void.

This endorsement is made a part of the policy and is subject to all the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

This endorsement shall not be valid or binding until countersigned by an authorized signatory as designated below.

CHICAGO TITLE INSURANCE COMPANY

By_____

# CHICAGO TITLE INSURANCE COMPANY

## ENDORSEMENT

May 25,, 2005

Attached to and made a part of  Commitment Number HTA-2005-171 and Policy Number 72107-2576598

SCHEDULE B, SECTION II, ITEM # 9:

Please add the following statement/language to the said item above-referenced;

This company has verified, through its due diligence, a) That the amount currently due and owing upon the subject mortgage, herein stated, with respect to the subject premises noted in this commitment is no less than $3,000,000.00; b) that the amount due and owing upon the subject mortgage constitutes a valid and enforceable first lien against the obligation of the mortgagor; and c) that the mortgagor has no apparent, enforceable defenses, offsets and or counterclaims with respect to the obligation secured by the subject mortgage.

The total liability of the Company under said policy or certificate and under this and any prior endorsements thereto shall not exceed, in the aggregate, the amount of liability stated on the face of said policy or certificate, as the same may be specifically amended in dollar amount by this or any prior endorsements, and the costs which the Company is obligated to pay under the Conditions or Stipulations of the Policy.

This endorsement is made a part of said policy or certificate and is subject to the schedules, conditions and stipulations therein, except as modified by the provisions hereof.

Nothing herein contained shall be construed as extending or changing the effective date of the aforesaid policy or certificate unless otherwise expressly stated.

CHICAGO TITLE INSURANCE COMPANY

By

Amendment for Lender/Purchaser

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or

   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

      (a) to timely record the instrument of transfer; or

      (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

**1. DEFINITION OF TERMS**

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE**

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

### 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

### 5. PROOF OF LOSS OR DAMAGE

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to

provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

### 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs (b)(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

### 7. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or, as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8. LIMITATION OF LIABILITY**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10. LIABILITY NONCUMULATIVE**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11. PAYMENT OF LOSS**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT**

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13. ARBITRATION**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15. SEVERABILITY**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16. NOTICES, WHERE SENT**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at the issuing office or to:

Chicago Title Insurance Company
Claims Department
171 North Clark Street
Chicago, Illinois 60601-3294



BRETT A. RADI
SOMERSET COUNTY CLERK
20 GROVE STREET
P.O. BOX 3000
SOMERVILLE, NJ 08876-1262

Recorded: 11/23/2005 11:42:26 AM

Book:    OPR   5830  Page: 3827-3845

Instrument No.:    2005088751

ASSIGNM   19 PGS   $210.00

Recorder:   VILLANUEVA

# DO NOT DISCARD



*2005088751*

# EXHIBIT Q

# CHICAGO TITLE INSURANCE COMPANY

### ENDORSEMENT

Attached to and made a part of Policy Number 72107-2576598

SCHEDULE A, ITEM #1:

Amend "Name of Insured" to read; Sky Land Investments, LLC, a Nevada Limited Liability Company.

SCHEDULE A, ITEM #4:

Please amend same to read as is shown on attached amended Loan Policy.

SCHEDULE B, PART 1, ADD AS ITEM#10:

Terms conditions, etc. of said Assignment of Mortgage from Advertising Management and Consulting Services, Inc., a Arizona corporation to Sky Land Investments, LLC, a Nevada Limited Liability Company dated November 16, 2005 and recorded in the Somerset County Clerk's Office on November 23, 2005 as Instrument # 2005088751 and Book 5830 Page 3827.

SCHEDULE B, PART 1, ITEM # 7:

Please amend said item by removing the word "Collateral" in front of "Assignment of Mortgage". The balance of the said item remains intact as shown therein.

The total liability of the Company under said policy or certificate and under this and any prior endorsements thereto shall not exceed, in the aggregate, the amount of liability stated on the face of said policy or certificate, as the same may be specifically amended in dollar amount by this or any prior endorsements, and the costs which the Company is obligated to pay under the Conditions or Stipulations of the Policy.

This endorsement is made a part of said policy or certificate and is subject to the schedules, conditions and stipulations therein, except as modified by the provisions hereof.

Nothing herein contained shall be construed as extending or changing the effective date of the aforesaid policy or certificate unless otherwise expressly stated.

Dated: May 23, 2006

CHICAGO TITLE INSURANCE COMPANY

By

(RESIGNED JUNE 8, 2006)

Amendment for Lender/Purchaser

# EXHIBIT R

12-15-2006   12:28   From-RIKER, DANZIG, SCHERER                                    T-106   P.002   F-007

Michael R. O'Donnell
Partner

Direct:
t: 973.451.8476
f: 973.451.8700
modonnell@riker.com
Reply to: Morristown

**RIKER
DANZIG
SCHERER
HYLAND
PERRETTILLP**

Riker
Danzig

─────────────────
A T T O R N E Y S   A T   L A W

December 15, 2006

**VIA FACSIMILE: 602-532-7813 &**
**EMAIL (greg@crane.net)**
Greg Crane
Michael Taylor
Skyland Investments LLC

**VIA FACSIMILE (760-294-6285) &**
**EMAIL (s.laskero@cox.net)**
Steven Laskero
Trinity Trust Investment Group

Re:   Potential Assignment of Mortgage Between Sky Land Investments, LLC and
       TTIG, LLC and/or TTIG, LLC's Assignee on the "Property" Located at
       41-81 Clark Road, Bernardsville, New Jersey

Dear Messrs. Crane, Taylor and Laskero:

As you know, I represent Chicago Title Insurance Company as to an ongoing investigation relating to title matters involving properties of Peter and Lorraine Mocco and any liens and encumbrances put on those lands by certain First Connecticut entities. In Mr. Crane's e-mail yesterday to Ms. Donna Sullivan of Chicago Title Insurance Company ("Chicago Title"), he indicated that "Chicago Title is simply to act as an [escrow] agent and to update the fully assignable current policy to reflect the new named insured [TTIG, LLC]" regarding the above-referenced assignment of mortgage. That title policy, however, cannot be assigned to the proposed new named insured, TTIG, LLC, without TTIG, LLC first being made expressly aware of the claims asserted by (i) EMP Whole Loan I, LLC, namely that it holds a mortgage on the Property as set forth in its November 29, 2006 letter (annexed hereto as Exhibit 1) and (ii) Lorraine and Peter Mocco in the matter pending in the Superior Court of New Jersey consolidated under <u>Titan Management L.P., et al. v. James J. Licata, et al.</u>, Docket No. ESX-C-280-98, wherein the Moccos have filed a recent motion seeking to add SWJ Holdings LLC ("SWJ") to the litigation and to divest James Licata.

Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981 • t: 973.538.0800 f: 973.538.1984
50 West State Street, Suite 1010, Trenton, NJ 08608-1220 • t: 609.396.2121 f: 609.396.4578
500 Fifth Avenue, Suite 4920, New York, NY 10110 • t: 212.302.6574 f: 212.302.6628
www.riker.com

Gregg Crane
Michael Taylor
Steven Laskero
December 15, 2006
Page 2

Cynthia Licata, SWJ, and the First Connecticut entities of any interest in the Moccos' properties (the Moccos' Notice of Motion is annexed hereto as Exhibit 2). It is our understanding that the Moccos are contending that the First Connecticut entities were not the owners of the properties or proper lienholders. As a result of the Moccos' motion, the Court has issued an order (annexed hereto as Exhibit 3) permitting the Moccos' to seek leave to amend their Complaint to add parties and restraining the alienation, selling, transferring, and encumbering of various entities and properties, including the Property. To our knowledge, said motion for leave to amend has not been filed yet. Finally, both Skyland and TTIG should be aware of the recent decisions and orders of the United States Bankruptcy Court of the District of Vermont and the United States District Court of Vermont on the Moccos' motions to dismiss the First Connecticut bankruptcies (said Opinions annexed hereto as Exhibits 4 and 5). These Orders are part of the Licata Bankruptcy and are, accordingly, decisions or orders of the Court referred to in Exclusion Nine of Schedule B, Part I of the Title Policy.

You should also be aware that while EMP Whole Loan I, LLC is not reflected on the chain of title in the Mortgage, the Vermont Bankruptcy Court and District Court discuss EMP's role in the Mocco/First Connecticut transactions in their Opinions and you should be guided accordingly.

In light of the existing claims, any updating and assignment of the mortgage policy to TTIG, LLC and/or TTIG, LLC's Assignee will be subject to an additional endorsement adding to Schedule B, Part I the following item numbers: (11) the regularity of all terms, conditions, decisions, orders, etc. of the Superior Court of New Jersey in the matters consolidated under Titan Management L.P., et al. v. James J. Licata, et al., Docket No. ESX-C-280-98; (12) the rights, claims, interests, etc. of EMP Whole Loan I, LLC as to an interest in the mortgage being assigned to TTIG, LLC and/or TTIG, LLC's Assignee or a preexisting mortgage; and (13) any claim by Lorraine Mocco, Peter Mocco or their related or affiliated entities that First Connecticut Consulting Group, Inc. ("First Connecticut"), James Licata or Cynthia Licata had no ownership interest in the Mortgage other than nominal interest and that any subsequent transfer of the Mortgage by First

TITLE claim

Gregg Crane
Michael Taylor
Steven Laskero
December 15, 2006
Page 3


Connecticut, James Licata, Cynthia Licata, or any subsequent holder of the
Mortgage should be deemed null and void and/or a fraudulent conveyance.

Very truly yours,

Michael R. O'Donnell

cc:        Sharon M. Buscher-Tuttle (via email buschertuttles@ctt.com)
           Tammy Meruin (via email tammy.meruin@ctt.com)


3715860.2