**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sky Land Investments, LLC, | No. CV-07-1328-PHX-SRB |
| Plaintiff, | **ORDER** |
| vs. | |
| Chicago Title Insurance Company, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Transfer under 28 U.S.C. § 1404(a) and Alternative Motion to Dismiss for *Forum Non Conveniens* (Doc. 6). For the reasons that follow, the Court grants the Motion to Transfer under 28 U.S.C. § 1404(a) and denies the Alternative Motion to Dismiss for *Forum Non Conveniens*.

**I.    BACKGROUND**

On September 26, 1996, Lorraine Mocco, a New Jersey resident, obtained a mortgage ("Mortgage")  from First Connecticut Consulting Group, Inc. for the property located at 41 & 81 Clark Road, Bernardsville, New Jersey. (Def.'s Mot. to Transfer under 28 U.S.C. § 1404(a) and Alternative Mot. to Dismiss for *Forum Non Conveniens* ("Mot.") at 3.) The Mortgage was subsequently amended and restated by two instruments. (Mot. at 3.) First Connecticut Consulting Group, Inc. then (1) transferred the Mortgage as part of an asset purchase agreement to SWJ Holding, Inc. ("SWJ") and (2) assigned the Mortgage to EMP

1  Whole Loan I, LLC ("EMP"). (Mot. at 3.) The assignment to EMP was not in the Mortgage
2  description in the Loan Policy. (Compl., Ex. 1, Schedule A ¶ 4.)

3  The Mortgage was assigned by SWJ to Cobra/Venture Equities, LLC
4  ("Cobra/Venture"). Cobra/Venture assigned the Mortgage to Advertising Management
5  Consulting, Inc. ("Advertising Management"), an Arizona corporation, on May 25, 2005.
6  (Mot. at 4.) In connection with this assignment, Advertising Management obtained a title
7  insurance loan policy ("Loan Policy") for $2,000,000 from Defendant, Chicago Title
8  Insurance Company. (Mot at 4.) Defendant, a Missouri corporation, has a principal place of
9  business in Chicago, Illinois. (Mot. at 2.) The Loan Policy was issued by Horizon Title
10 Agency, Inc. ("Horizon"), a New Jersey corporation and licensed title agent. (Mot. at 2.)

11 On November 16, 2005, Advertising Management assigned the Mortgage to Plaintiff,
12 Sky Land Investments, LLC, a Nevada corporation. (Mot. at 4.) Horizon issued an
13 endorsement to the Loan Policy ("Endorsement") on May 23, 2006, naming Plaintiff as the
14 insured. (Mot. at 5.)  In December 2006, Plaintiff, while negotiating the assignment of the
15 Mortgage, requested that Defendant amend the Loan Policy to name TTIG, LLC as the
16 named insured. (Compl., Ex. 2; Mot., Ex. 3 at Ex. R.) Defendant notified Plaintiff that the
17 assignment of the Loan Policy would be subject to an additional endorsement to reflect the
18 adverse claims being made on the Mortgage by EMP and Lorraine Mocco in a consolidated
19 action in New Jersey Superior Court. (Mot. at 5; Mot., Ex. 3 at Ex. R.) Plaintiff has not been
20 named as a party in that litigation. (Mot. at 5-6.)

21 On July 2, 2007, Plaintiff, alleging that the Mortgage was unmarketable under New
22 Jersey law, demanded $2,000,000 from Defendant pursuant to the Loan Policy. (Compl. ¶
23 17; Compl., Ex. 4.) In a letter dated July 6, 2007, Defendant informed Plaintiff that Plaintiff's
24 claim of unmarketability was not ripe. (Compl., Ex. 5.) Plaintiff filed the complaint in this
25 Court on July 10, 2007, requesting a declaration that Defendant pay Plaintiff no less than
26 $2,000,000 in accordance with the Loan Policy. (Compl. ¶¶ 25, 31.)  Plaintiff also alleged
27 that Defendant was negligent in the performance of its due diligence and that Defendant
28 breached the covenant of good faith and fair dealing. Plaintiff requested compensatory

1  damages of $3,000,000 and punitive damages of $5,000,000. (Compl. ¶¶ 35, 42-44.) On
2  August 31, 2007, Defendant filed a motion to transfer the action under 28 U.S.C. § 1404(a)
3  to a New Jersey federal court or, alternatively, to dismiss the action for *forum non conveniens*
4  so that it could be refiled in a New Jersey state court. (Doc. 6.)

**II.     LEGAL STANDARDS AND ANALYSIS**

     **A.     Motion to Transfer under 28 U.S.C. § 1404(a)**

Section 1404(a) grants district courts the discretion to transfer any civil action to another district or division under appropriate circumstances. *See* 28 U.S.C. § 1404(a); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 278-279 (9th Cir. 1980). The purpose of § 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)). The party seeking to transfer has the burden of establishing that there should be a change in forum. *See Commodity Futures*, 611 F.2d at 279; *see also Dow Jones & Co. v. Bd. of Trade of Chicago*, 539 F. Supp. 190, 192 (S.D.N.Y. 1982). In fact, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citing *Mizokami Bros. of Ariz. v. Mobay Chem. Corp.*, 660 F.2d 712, 718 (8th Cir. 1981)).

In order to meet its burden of proof, Defendant must show the following: (1) that the transferee court is one where the action "might have been brought"; and (2) "that the convenience of parties and witnesses in the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal quotation marks omitted). As part of the second element of the transfer inquiry, the court may take into account the relative convenience of the selected forum and the proposed forum for the parties, the witnesses, and the public. *See Decker Coal,* 805 F.2d at 843 (listing private and public interest factors affecting the convenience of the forum). For example, a court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9thCir. 2000). Plaintiff does not dispute that this action could have been brought in New Jersey. Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(a)(1) and (a)(2). Accordingly, the Court must decide whether the convenience of the parties and witnesses in the interest of justice support a transfer of this cause of action to New Jersey.

**1. Location where the agreement was negotiated and executed**

The Loan Policy, as modified by the Endorsement, "was prepared, executed, and issued by Horizon personnel in Horizon's New Jersey office." (Mot. at 8.) In addition, the Mortgage, which was insured by the Loan Policy, was executed and recorded in New Jersey. (Mot. at 8.) Defendant produced evidence that the majority of the negotiations regarding both the initial issuance of the Loan Policy and the language of the Endorsement occurred in New Jersey. (Mot. at 8.) Plaintiff does not dispute that the Loan Policy and Endorsement were negotiated and executed in New Jersey.

**2. The state most familiar with the governing law**

Defendant argues that Plaintiff has conceded the applicability of New Jersey law, by stating that the Mortgage is unmarketable under New Jersey law. (Mot. at 9.) Defendant also argues that New Jersey law would be applied pursuant to the Restatement (Second) of Conflicts of Law. Specifically, Defendant argues that Restatement §§ 193, 235, and 238 require the application of New Jersey law because "the property purportedly encumbered by the Mortgage is situated in New Jersey." (Mot. at 9-10.) Defendant also contends that, "in accord with Restatement § 188(1), New Jersey law should govern this dispute because New Jersey had the most significant relationship to the transaction and the parties." (Mot. at 10.) Plaintiff does not dispute that New Jersey law would be applied in this case.

- 4 -

1  "If questions of substantive state law are raised in a particular action, it is viewed as
2  advantageous to have those issues decided in a federal court sitting in the state whose
3  substantive law governs." *Anderson v. Thompson*, 634 F. Supp. 1201, 1205 (D. Mont. 1986)
4  (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). Consequently, the court's familiarity
5  with the governing state's substantive law is a factor that is properly considered when
6  deciding a motion to transfer venue. *Id.* (citing *Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir.
7  1966)). However, the weight given to this factor is dependent upon "the complexity and/or
8  unsettled nature of the state law issues presented." *Id.* If the substantive law of the forum
9  state and the governing state are not significantly different, this factor is accorded little
10 weight. *Id.* (citing *Marks v. Fireman's Fund Ins. Co.*, 109 F. Supp. 800 (S.D.N.Y. 1953)).
11    The parties agree that New Jersey law applies to the Plaintiff's claim. The state law
12 issues in this case, including the determination of the marketability of title and the
13 interpretation of the Loan Policy, are not complex. However, the outcome of the ongoing
14 litigation in the New Jersey Superior Court will likely have an impact on this action and
15 weighs in favor of transfer.

### 3. The plaintiff's choice of forum

17    Plaintiff contends that, based upon *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 242
18 (1981), the court must show "substantial deference" to the forum chosen by Plaintiff. (Pl.'s
19 Resp. to Mot. ("Resp.") at 10.) Although Defendant acknowledges that Plaintiff's choice of
20 forum is a factor in the transfer decision, Defendant argues that the weight of this factor is
21 minimized since Arizona does not have a significant connection to the parties or the dispute.
22 (Mot. at 11.)
23    In judging the weight to be given to Plaintiff's choice of forum, a court will consider
24 the parties' business contacts with the forum, including those contacts related to the cause
25 of action. *See Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *Lou v.
26 Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). The plaintiff's choice will be given little
27 consideration if the forum has no connection to the operative facts of the action and has no
28 interest in the parties or the subject matter. *Pac. Car & Foundry*, 403 F.2d at 954.

- 5 -

1         In *Pac. Car & Foundry*, an Australian distributor brought an antitrust action against a Washington-based corporation in a Hawaiian court. *Id.* at 951. The court reasoned that, when determining the weight to be given to the plaintiff's choice of forum, the court should consider "the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action." *Id.* at 954. Although the defendant did transact some business in Hawaii, plaintiff had no relationship with the Hawaiian business. *Id.* at 955. In addition, the witnesses and the evidentiary materials were not located in Hawaii. *Id.* The only connection to the forum state was that some negotiations had occurred in Hawaii. *Id.* Thus, the court held that the plaintiff's choice of forum was entitled to little consideration. *Id.*

         Plaintiff is a Nevada limited liability company. (Compl. ¶ 1.) Plaintiff's contacts with the forum state are that (1) Plaintiff was assigned the Mortgage by an Arizona corporation, Advertising Management, and (2) Greg Crane, a principal of both Plaintiff and Advertising Management, is a resident of Arizona. (Mot. at 4.) Defendant, a Missouri corporation, "conducts business and insures property located in New Jersey and maintains offices, employs personnel and has appointed agents to act on its behalf in New Jersey." (Mot. at 2.) Defendant does have business contacts with Arizona, as "Defendant has maintained and continues to maintain a highly competitive profile in the title insurance business in Arizona." (Resp. at 12.)

         Like the plaintiff in *Pac. Car & Foundry*, who did not have a relationship with the business in the forum state, Plaintiff does not appear to have any relationship with Defendant's Arizona business. (Def.'s Reply in Support of its Mot. ("Reply") at 9-10.) The property, which is the subject of dispute, is located in New Jersey. (Mot. at 3.) The Mortgage, Loan Policy, and Endorsement were executed and issued in New Jersey, and the interpretation and enforcement of these documents are governed by New Jersey law. (Reply at 2-3; Mot. at 3-4.) Horizon, a New Jersey corporation, prepared and issued the Loan Policy and the Endorsement. (Reply at 2.) Almost all of the relevant documents, including those items already produced by Plaintiff, are located within New Jersey. (Reply at 9.) The

1 majority of the identified witnesses live or work in New Jersey. (Mot. at 13-14.) Thus,
2 although Defendant has business contacts with Arizona, they are not related to the cause of
3 action. Thus, Plaintiff's choice of forum will be given minimal consideration because all of
4 the operative facts with respect to the cause of action occurred in New Jersey and not in
5 Arizona.

6 **4. The differences in the costs of litigation in the two forums**

7 The differences in the cost of litigation in the two forums depends upon (1) whether
8 witnesses will be required to decide the merits of the action; and (2) if witnesses are required,
9 whether the convenience of the witnesses and access to the sources of proof favor retention
10 in the forum state or transfer to New Jersey.

11 **a. Witnesses may be required in this litigation.**

12 Plaintiff argues that, given Defendant's declarations, the Mortgage is unmarketable
13 as a matter of law, and Defendant's witnesses would be excluded from testifying under the
14 parol evidence rule as the Loan Policy is "a fully integrated contract." (Resp. at 7-10.)
15 Defendant disputes Plaintiff's argument that witness testimony will not be required to resolve
16 the cause of action. Specifically, Defendant argues that (1) Plaintiff's contention that no
17 witnesses are required is contradicted by its Rule 26(a) Initial Disclosure Statement, (2)
18 Plaintiff is not entitled to a decision on the merits based on Defendant's out-of-context
19 statements, and (3) Defendant is allowed to rely on witness testimony to establish the
20 applicability of an exclusion contained in the Loan Policy. (Reply at 5-7.) Thus, the Court
21 will consider whether witnesses would be required to determine if the title is unmarketable
22 or to interpret any of the applicable provisions of the Loan Policy.

23

24 **(1) Marketability of Title**

25 The Court determines the marketability of title. *See Stewart Title Guar. Co. v.*
26 *Greenlands Realty, L.L.C.*, 58 F. Supp. 2d 360, 361 (D.N.J. 1999). "A marketable title is one
27 that is relatively free from doubt, such that in a suit for specific performance a court would
28 compel the prospective purchaser to accept the title." *Keown v. W. Jersey Title & Guar. Co.*,

1  390 A.2d 715, 717 (N.J. Super. Ct. App. Div. 1978). If it is likely that a buyer will be
2  exposed to litigation or will need to bring an action to quiet title, the court will deem the title
3  unmarketable and will not order specific performance. *Id.* Frivolous litigation or an
4  unsubstantiated allegation of defect will not render a title unmarketable. *Donaghy v.*
5  *Roudebush*, 614 F. Supp. 585, 588 (D.N.J. 1985) (citing *Gaub v. Nassau Homes, Inc.*, 147
6  A.2d 73, 81-82 (N.J. Super. Ct. App. Div. 1958)).

In mid-December 2006, Plaintiff was notified that the Mortgage was the subject of two adverse claims: (1) EMP alleges that it still holds a mortgage on the New Jersey property; and (2) the Superior Court of New Jersey Chancery Division ordered on November 27, 2006 that the property, in addition to several other LLCs and properties, should not be alienated, sold, transferred, or encumbered. (Resp., Ex. 3.) Defendant notified Plaintiff about the adverse claims when Plaintiff attempted to assign its position in the Mortgage to a third party. (Compl., Ex. 2 at 2-4.) Thus, this assignee would likely be subject to litigation either directly as a result of these adverse claims or as needed to quiet the title. Alternatively, the assignee would have to be willing to accept whatever exclusions that Defendant felt were necessary to protect itself from liability as a result of the adverse claims. A reasonable assignee would probably be unwilling to assume this risk. Thus, the title is currently unmarketable.

### (2) Interpretation of the Title Policy

The Court also interprets the provisions of a title insurance policy. *See Stewart Title Guar. Co. v. Greenlands Realty, L.L.C.*, 58 F. Supp. 2d 370, 381 (D.N.J. 1999); *Adron, Inc. v. Home Ins. Co.*, 679 A.2d 160, 165 (N.J. Super. Ct. App. Div. 1996). The words of an insurance policy are usually given their "plain, ordinary meaning."*Gibson v. Callaghan*, 730 A.2d 1278, 1282 (N.J. 1999) (citing *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255 (N.J. 1992)). The provisions of the policy should be liberally construed in the insured's favor. *Sandler v. N.J. Realty Title Ins. Co.*, 178 A.2d 1, 5 (N.J. 1962) (citing *Hunt v. Hosp. Serv. Plan of N.J.*, 162 A.2d 561 (N.J. 1960)). In addition, the policy should be interpreted in such a way as to fulfill the insured's "reasonable expectations." *Summonte v. First Am. Title Ins.*

- 8 -

1 *Co.*, 436 A.2d 110, 112 (N.J. Super. Ct. Ch. Div. 1981) (citing *Sandler*, 178 A.2d at 1). Thus,
2 the Court must enforce the unambiguous language of the insurance policy provided that "the
3 terms [of the policy] do not contradict the reasonable expectations of the insured." *Stewart*
4 *Title Guar.*, 58 F. Supp. 2d at 381 (citing *Sparks v. St. Paul Ins. Co.*, 495 A.2d 406 (N.J.
5 1985)).

6     In connection with the assignment of the Mortgage, Plaintiff was named as the insured
7 under the Loan Policy. (Mot. at 5.) The Loan Policy provides:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, [DEFENDANT], a Missouri corporation, . . . insures . . . against loss or damage, not exceeding [$2,000,000], sustained or incurred by the insured by reason of: . . . 3. Unmarketability of the title; . . . .

12 (Compl., Ex. 1. at 1.)

13     The Loan Policy clearly states that Defendant has insured Plaintiff against any loss
14 or damage sustained as a result of unmarketability of title. However, the provision also
15 provides that this insurance is subject to any applicable exclusions from coverage. Thus, it
16 is necessary to ascertain if an exclusion applies in this case.

### (a)   **Application of an Exclusion**

18     A plaintiff bears the initial burden of bringing a claim that falls within the terms of a
19 title insurance policy. *Adron*, 679 A.2d at 165 (citing *Tauriello v. Aetna Ins. Co.*, 82 A.2d
20 226 (N.J. Super. Ct. Law Div. 1951)). The burden then shifts to the defendant to show, if
21 possible, that the claim falls within an exception to the title insurance policy. *See id.* (citing
22 *Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co.*, 483 A.2d 402 (N.J. 1984));
23 *Burd v. Sussex Mut. Ins. Co.*, 267 A.2d 7, 15 (N.J. 1970) (citing *Morie v. N.J. Mfrs. Indem.*
24 *Ins. Co.*, 137 A.2d 41 (N.J. Super. Ct. App. Div. 1957)). When attempting to establish this
25 affirmative defense, the insurer will consider the exclusionary clause as "a condition
26 subsequent of the insurance contract." *Morie*, 137 A.2d at 44.

27     In this case, Plaintiff has shown that there is a loss which was "prima facie" within
28 the Loan Policy's coverage. *See Advance Piece Dye Works, Inc. v. Travelers Indem. Co.*, 166

A.2d 173, 176 (N.J. Super. Ct. App. Div. 1960). Defendant now has the burden to prove that the loss falls within an exclusion of the policy. Defendant can use the testimony of witnesses, as well as the language of the Loan Policy, to prove that an exclusion is applicable in the current situation.

### (b) Another provision of the Loan Policy

The determination that the title is unmarketable does not result in the immediate payout of damages pursuant to the Loan Policy. The Loan Policy also provides:

> If the [Defendant] establishes the title, or removes the alleged defect, lien or encumbrance, or . . . cures the claim of unmarketability of title, . . . in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage thereby.

(Compl., Ex. 1 at 15 ¶ 8.) The determination of whether Defendant is acting in a "reasonably diligent manner" to cure the claim of unmarketability of title is a question of fact. *See Stewart Title Guar.*, 58 F. Supp. 2d at 382. Thus, Defendant could use witness testimony and documentary evidence to attempt to establish that it is using reasonable means to cure this claim. Accordingly, the Court cannot determine, as a matter of law, that witnesses will not be required to testify in this matter.

### b. The convenience of the witnesses and access to the sources of proof favor transfer to New Jersey.

Plaintiff also contends that the cost of litigation would increase if the case were to be transferred because a large number of documents are located in Arizona and Plaintiff's counsel would have to appear *pro hac vice* in New Jersey. (Resp. at 12-13.) Defendant argues that, as the majority of the tangible evidence and witnesses are in New Jersey, the requirement to transport documents and witnesses "over 2000 miles" to Arizona would greatly increase the cost of litigation. (Mot. at 14.) Defendant also asserts that the cost associated with appearing *pro hac vice* in New Jersey is minimal. (Reply at 8-9.)

A change in venue is inappropriate where the transfer only shifts the inconvenience to another party. *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183,

- 10 -

1195 (S.D. Cal. 2007) (citing *Decker Coal*, 805 F.2d at 843). However, a court should consider the convenience of witnesses a critical factor when deciding whether to change venues. *See id.* at 1193. Thus, a court must take into account the effect of transfer on the availability of witnesses and their testimony at trial. *See id.* The ability of the forum state to use compulsory process to compel the attendance of witnesses bears on both the availability of witnesses and the ease of access to sources of proof. *Horwitz v. Sw. Forest Indus., Inc.*, 612 F. Supp. 179, 182 (D. Nev. 1985). "Whenever possible, a court should facilitate the 'live' presence of material nonparty witnesses." *Kendall U.S.A., Inc. v. Cent. Printing Co.*, 666 F. Supp. 1264, 1268 (N.D. Ind. 1987) (citing *Hotel Constructors, Inc. v. Seagrave Co.*, 543 F. Supp. 1048, 1051 (N.D. Ill. 1982)).

Defendant has identified several witnesses who might be required to testify in this matter. With the exception of Greg Crane, these witnesses "reside and/or work in the northern New Jersey metropolitan area." (Mot. at 13-14.) On its Rule 26(a) Initial Disclosure Statement, Plaintiff also listed a Horizon employee, two attorneys of Defendant, and Greg Crane as witnesses who will be required to testify in the action. (Reply at 5.) Greg Crane appears to be the only witness that resides in Arizona. (Resp., Ex. 1 at ¶ 2.) The New Jersey non-party witnesses could not be compelled to testify if this case were retained in Arizona. Fed. R. Civ. P. 45 (providing that a non-party cannot be compelled to attend trial unless served within the district or within 100 miles of the place of trial). Finally, the documentary evidence pertaining to the Loan Policy and Endorsement is located in the New Jersey area. (Reply at 9.) Although Plaintiff identified a large number of documents that are located in Mesa, Arizona, Plaintiff stated that it has already provided these documents to Defendant. (Resp. at 12.) Plaintiff has not identified any other sources of proof that are located in Arizona. If this matter were to be litigated in Arizona, all relevant documentary evidence in the case would have to be shipped from New Jersey. Accordingly, although Plaintiff will incur additional expenses litigating in New Jersey (i.e. payment of a *pro hac vice* fee for Arizona counsel and retention of a New Jersey firm), the costs associated with obtaining

1  witness testimony and documentary evidence weigh in favor of transferring the action to
2  New Jersey.
3    After considering all of the relevant factors, the Court concludes that Defendant has
4  successfully shown that the convenience of parties and witnesses and the interests of justice
5  favor transfer of venue to the United States District Court for the District of New Jersey.

6    **B.**  **Motion to Dismiss for *Forum Non Conveniens***

7    A federal court can dismiss an action on the ground of *forum non conveniens* when
8  trial in the forum state would be unduly oppressive to the defendant or would cause
9  administrative or legal problems for the Court. *See Sinochem Int'l Co. v. Malaysia Int'l
10 Shipping Corp.*, 127 S.Ct. 1184, 1190 (2007). A party moving for dismissal on the basis of
11 *forum non conveniens* bears the burden of demonstrating: "(1) the existence of an adequate
12 alternative forum; and (2) that the balance of relevant private and public interest factors favor
13 dismissal." *Creative Tech. Ltd. v. Aztech Sys. PTE., Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995)
14 (citing *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir.
15 1990)). An alternative forum is adequate if Defendant is subject to process in the other
16 jurisdiction and the available remedy is not "clearly unsatisfactory." *Id.* at 701. An
17 inadequate forum is one that does not permit litigation on the subject matter of the dispute.
18 *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981); *Creative Tech. Ltd.*, 61 F.3d at
19 701.

20   For federal courts, Congress has codified the doctrine of *forum non conveniens* under
21 28 U.S.C. § 1404(a), allowing a federal court to transfer, rather than dismiss, an action if
22 another federal court is the appropriate venue. *Sinochem Int'l*, 127 S. Ct. at 1190-1191. "The
23 common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts]
24 only in cases where the alternative forum is abroad' and perhaps in rare instances where a
25 state or territorial court serves litigational convenience best." *Id.* at 1190 (citing *Am.
26 Dredging Co. v. Miller,* 510 U.S. 443, 449, n.2 (1994)).

27   Since this case involves two domestic parties, Defendant must prove that this case
28 is one of the "rare instances" in which the best forum would be a state court. Defendant has

- 12 -

not identified any exceptional circumstances that would indicate that the New Jersey state court (rather than the federal court) is the most appropriate forum for this action. Accordingly, Defendant has not shown that dismissal, rather than transfer, is appropriate in this case.

**IT IS ORDERED** granting Defendant's Motion to Transfer (Doc. 6), and transferring this matter to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

**IT IS FURTHER ORDERED** denying Defendant's Alternative Motion to Dismiss for *Forum Non Conveniens* (Doc. 6).

DATED this 20th day of November, 2007.

_____
Susan R. Bolton
United States District Judge